1                    United States District Court

2                  Southern District of California

3

4    UNITED STATES OF AMERICA,        )
                                      )
5                    Plaintiff,       )
                                      )
6         vs.                         ) Case No. 10-CR-4246 JM
                                      ) Status Hearing
7    BASAALY SAEED MOALIN,            ) Thursday, June 16, 2011
     MOHAMED MOHAMED MOHAMUD,         )
8    ISSA DOREH,                      )
     AHMED NASIR TAALIL MOHAMUD,      )
9                                     )
                     Defendants.      )
10   _____)

11

12                Before the Honorable Jeffrey T. Miller
                      United States District Judge

13

14

15

16

17

18

19

20   Official Interpreter:    Ahmedei Farah, CCI

21   Official Court Reporter: Debra M. Henson, CSR, RPR
                              U.S. Courthouse
22                            940 Front Street, Suite 5190
                              San Diego, CA  92101
23                            (619) 238-4538

24

25                Record produced by stenographic reporter

```
 1   Appearances

 2   For the Government:      Laura E. Duffy
                             UNITED STATES ATTORNEY
 3                           William P. Cole
                             Caroline P. Han
 4                           ASSISTANT U.S. ATTORNEYS
                             880 Front Street, Suite 6293
 5                           San Diego, CA  92101

 6   For the Defendants:
     (Mr. Moalin)            Joshua L. Dratel, Esq.
 7                           OFFICE OF JOSHUA L. DRATEL
                             2 Wall Street, Third Floor
 8                           New York, NY  10005

 9   (Mr. M. Mohamud)        Linda Moreno, Esq.
                             LINDA MORENO, P.A.
10                           P.O. Box 10985
                             Tampa, FL  33679
11
     (Mr. Doreh)             Ahmed Ghappour, Esq.
12                           LAW OFFICES OF AHMED GHAPPOUR
                             P.O. Box 20367
13                           Seattle, WA  98102

14   (Mr. A. Mohamud)        Thomas A. Durkin, Esq.
                             DURKIN & ROBERTS
15                           2446 N. Clark Street
                             Chicago, IL  60614
16

17

18

19

20

21

22

23

24

25
```

1 <u>San Diego, California - Thursday, June 16, 2011</u>

2 THE CLERK:  Calling matter 1 on calendar,

3 10-CR-4246, USA versus Basaaly Saeed Moalin.

4 MR. DRATEL:  Good afternoon, your Honor.  Joshua

5 Dratel for Mr. Moalin.

6 THE COURT:  Okay.  Thank you, Mr. Dratel.  Good to

7 see you.  Thank you.

8 THE CLERK:  Mohamed --

9 MR. COLE:  Good afternoon, your Honor.  William

10 Cole and Caroline Han for the United States.

11 THE COURT:  Thank you.

12 THE CLERK:  Mohamed Mohamed Mohamud.

13 MS. MORENO:  Yes.  Good afternoon, your Honor.

14 Linda Moreno on behalf of Mr. Mohamud.

15 THE COURT:  Thank you, Ms. Moreno.

16 THE CLERK:  Issa Doreh.

17 MR. GHAPPOUR:  Good afternoon, your Honor.  Ahmed

18 Ghappour on behalf of Mr. Doreh.

19 THE COURT:  All right.  Thank you, sir.

20 THE CLERK:  Ahmed Nasir Taalil Mohamud.

21 MR. DURKIN:  Good afternoon, Judge.  Tom Durkin on

22 behalf of Mr. Mohamud.

23 THE COURT:  Okay.  Mr. Durkin, so you've come in

24 for Holly Hanover in this case?

25 MR. DURKIN:  I have, Judge.

1        THE COURT:  Okay.  Did you file a substitution by

2   any chance?  I didn't see --

3        MR. DURKIN:  I believe I did.  I believe I filed a

4   substitution and an appearance.

5        THE COURT:  Okay.  All the others have filed

6   motions to enter into the case as retained counsel.  Did you

7   submit a motion for an order substituting in as retained

8   counsel?

9        MR. DURKIN:  I believe I did, Judge.  I believe it

10  was an agreed order.

11       THE COURT:  I know the last time we were together,

12  Ms. Hanover was here and you weren't in the case at that

13  time.  I think this is the first time we've actually met.

14       MR. DURKIN:  I believe -- I believe I filed -- I

15  know I filed a written substitution motion --

16       THE COURT:  Okay.

17       MR. DURKIN:  -- and I'm a member of the bar with

18  the California court, so -- I don't have the --

19       THE COURT:  Very good.  Okay.  Let the record show

20  that all defendants are present at this time as well.  Thank

21  you, Mr. Durkin.  Okay.  Last time we were here, back in

22  early April, we were using that as an opportunity to take the

23  pulse of the case, to assess the progress of the case.  I

24  believe at that time --

25       THE CLERK:  Your Honor, I think the interpreter

1      needs a minute to put on the headphones.

2                THE COURT:  Oh, certainly.  Please.

3                THE INTERPRETER:  He's not interested.  He can --

4                THE COURT:  No one --

5                THE INTERPRETER:  He says he understands.  He says

6      he's not interested --

7                THE COURT:  All right.  I have a hard time

8      remembering who was actually using the services of the

9      interpreter last time; I think there was more than one of the

10     gentlemen here using the services.  Are all four of you --

11     counsel, are all of your clients wishing to proceed this

12     afternoon without the services of the Somali-speaking

13     interpreter?

14               MR. DRATEL:  Mine is, your Honor.  I haven't had a

15     problem with that.

16               THE COURT:  Okay.  And I do appreciate that,

17     Mr. Dratel.  Mr. Moalin, is it your desire to proceed in

18     English without any interpretation today?

19               DEFENDANT MOALIN:  Yes, Honor.

20               THE COURT:  Okay.  And, Ms. Moreno, what about your

21     client, Mr. Mohamud?

22               MS. MORENO:  Yes, your Honor.  I don't believe he

23     needs the services of the translator.

24               THE COURT:  All right.  Is that true, Mr. Mohamud?

25               DEFENDANT M. MOHAMUD:  Yes, sir.

1            THE COURT:  All right.  Mr. Ghappour, how about

2  your client, Mr. Doreh?

3            MR. GHAPPOUR:  Yes, your Honor, he does not need

4  the services of an interpreter.

5            THE COURT:  Mr. Doreh, is that true?

6            DEFENDANT DOREH:  Yes, your Honor.

7            THE COURT:  All right.  Very good, sir.  Thank you.

8  And then Mr. Durkin, how about your client, Mr. Ahmed Nasir

9  Taalil Mohamud?

10            MR. DURKIN:  He does not need an interpreter.

11            THE COURT:  Is that true, sir?

12            DEFENDANT A. MOHAMUD:  Yes, your Honor.

13            THE COURT:  Okay.  Very good.  Well, I think we

14  should have one standing by just in case any of these

15  gentlemen wish to proceed by changing their minds and

16  utilizing the services of our interpreter today.  Okay.

17            Last time we were together -- Mr. Cole, if I can

18  address you at this point, and Ms. Han -- we were discussing

19  the status regarding discovery.  You indicated that you had

20  about 120 pertinent calls or intercepts, as you put it at

21  that time, and something like 1800 calls or intercepts that

22  had been provided to the defense pursuant to your discovery

23  obligations.  Anything further along those lines?  Any

24  further developments, any further discovery that's come to

25  light that you have provided?

1          MR. COLE:  No, your Honor.  We still intend to turn

2     over witness statement or Jencks-type material later on.  We

3     do expect to turn over some subscriber information for phone

4     numbers and some toll records, which we're gathering now, but

5     no other voluminous or significant amount of discovery that

6     we anticipate right now.

7          THE COURT:  Okay.  And what I'd like to do is hear

8     from counsel how they're doing with respect to moving through

9     this discovery.  It's a voluminous amount of business here.

10    Mr. Dratel, how are you doing?

11         MR. DRATEL:  Well, your Honor, we're making our way

12    through the material.  There is some question as we go

13    through it as to whether or not certain material that looks

14    like it ought to be there is not there in terms of some -- in

15    some ways in terms of time frames and other issues, which we

16    don't want to bring to the Court right now, but what we want

17    to do ultimately is perhaps catalog that, talk about it with

18    the government, and see if it's going to be produced.  If

19    it's not going to be produced --

20         THE COURT:  Okay.  And that's another matter, and I

21    appreciate you bringing it up.  What I'm trying to do here is

22    to approach this is in a very organized way, dealing with

23    these issues or these concerns separately and distinctly.

24    What I'm trying to gauge right now is where you all are in

25    terms of going through the discovery, whether we need to set

1    another status conference just to do what we're doing today,

2    to monitor the progress of the case, and, if so, exactly when

3    we should set that.  So, Mr. Dratel, I assume you haven't

4    consumed all of these calls, including the pertinent calls or

5    what's been described as pertinent by Mr. Cole and all of the

6    other calls.

7            MR. DRATEL:  That's correct, your Honor.  And I

8    think another status conference -- we've caucused among

9    ourselves about what we think based on people's schedules,

10   trial schedules, and that -- we think we came up with

11   August -- that second week of August, maybe August 9 or

12   August 11.

13           THE COURT:  Okay.  Well, we'll work on that, we'll

14   work on that in just a moment in terms of setting a date, but

15   thank you for the update as where you are in digesting some

16   of this material, Mr. Dratel.  And, Ms. Moreno, I imagine

17   your status is the same as indicated by Mr. Dratel?

18           MS. MORENO:  It is, your Honor.

19           THE COURT:  Okay.  And then Mr. Ghappour?

20           MR. GHAPPOUR:  Yes, your Honor.

21           THE COURT:  Okay.  And Mr. Durkin?

22           MR. DURKIN:  Judge, that's essentially correct,

23   although since I -- most of the discovery I have I got from

24   Ms. Hanover.  I'm preparing an inventory, and it's almost

25   complete.  I'm going to send it to the government to make

1   sure that everything I got from Ms. Hanover is in fact what

2   they turned over and if there's other stuff.  I also had a

3   conversation this week with Ms. Han regarding an additional

4   statement of my client that she says will be forthcoming.

5           THE COURT:  All right.  And you've signed the

6   protective order?

7           MR. DURKIN:  Yes.

8           THE COURT:  Okay.  I believe last time we were

9   together, there was -- you all were going to meet after the

10  status conference so that you all could sign the protective

11  order and have all of this discovery material released to

12  you.  So we're all good on that -- on that level as well.

13  Okay.  Very good.

14          MR. DURKIN:  There's also, if I could, Judge --

15          THE COURT:  Yes.

16          MR. DURKIN:  -- one other issue.  The government --

17  I spoke to Mr. Cole yesterday about -- I was provided a DVD

18  of a videotaped two-and-a-half-hour interview of my client, a

19  custodial interview after his arrest.  I asked whether or not

20  there were any 302s or other memorializations.  Mr. Cole was

21  kind enough to tell me that they're waiting on a transcript

22  and they will give me that transcript when they get it but

23  they don't have it yet.

24          THE COURT:  Okay.  All right.  Thank you.  Now, in

25  terms of the declaration of complexity, after our last -- our

1   last hearing, that came in, the joint motion -- Mr. Cole, you

2   prepared that; appreciate that -- and you all signed off on

3   it.  I don't know if you were in the case at that time, Mr.

4   Durkin; were you?

5              MR. DURKIN:  Yes, Ms. Hanover did, and I'll adopt

6   that.

7              THE COURT:  Okay.  Very good.  So an order went out

8   the next day, as I'm sure you know, so the case has been

9   declared complex for purposes of the Speedy Trial Act, and so

10  time will be tolled under the act until further order of the

11  Court.

12             Those are primarily the matters that I wanted to

13  cover here at the threshold.  We've talked about discovery;

14  you've indicated there's not much more to be provided.  What

15  you will be providing, Mr. Cole, I'm sure you have a handle

16  on at this point.  Let me address any concerns from defense

17  counsel.  Counsel, do you have any concerns at this point

18  that we need to discuss?

19             MR. DURKIN:  Judge, we have one concern, and it's

20  fallen upon me to discuss it since I'm the new guy on the

21  block.

22             THE COURT:  That's what happens.

23             MR. DURKIN:  I know.  Mr. Cole and I have had some

24  email correspondence concerning an investigator that worked

25  for the appointed lawyer for Mr. Ghappour's client I believe,

1    and in the discovery -- in the discovery materials or the

2    file I received from Ms. Hanover, I received like three disks

3    of information that was shared amongst the lawyers from --

4    with that investigator.  It's my understanding -- and he's in

5    the room today -- his name is Efraim Lapuz, L-a-p-u-z, and he

6    is a former DEA agent, if I'm not mistaken, who I believe had

7    some contact with the Joint Terrorism Task Force that worked

8    on this investigation.

9              Mr. Cole had initially indicated that he thought he

10   was going to file the motion to disqualify Mr. Lapuz, but --

11   he has since decided against doing that, but he did indicate

12   to us that he had concerns with respect to whether or not Mr.

13   Lapuz's involvement in either this investigation or a related

14   investigation might become a problem should he testify under

15   18 USC Section 5, 205 -- 207 -- I'm sorry.  And that's a

16   concern of all of ours, and it's a particular concern of mine

17   since I have not even looked at any of the investigative work

18   that Mr. Lapuz has done.  But it's our thinking that we don't

19   see a problem with anything that Mr. Lapuz had done in the

20   past as him being disqualified under this case, but

21   obviously -- and we would like to hire him jointly to work

22   for us, but we have limited funds and we certainly can't --

23   we really can't afford to duplicate the work that he's

24   already done, and we certainly don't want to end up having

25   him go six months down the road, for example, and then

1    somehow be barred from testifying.

2         Mr. Cole and I discussed this very amiably

3    yesterday.  I think -- I'd like to think it's something we

4    can resolve, but I'm wondering if we can just get it resolved

5    on the record now because it's a very important issue to us

6    going forward in terms of our trial preparation.

7         THE COURT:  Mr. Cole, would you like to respond?

8         MR. COLE:  Yes.  Well, it's an awkward situation,

9    your Honor, but I don't think it is one that we can resolve.

10   I don't really think it's a matter for -- and here's why.

11   When I first saw Mr. Lapuz in the courtroom, the first time I

12   saw him appear in this case, I told Mr. Troiano that day --

13   Mr. Troiano was the one who'd retained him -- I said hey,

14   this is a problem, Mr. Lapuz was on the joint terrorism task

15   force while this case was being investigated, he accessed the

16   computer files in this case, he talked with these agents

17   about the investigation, and he even gave an opinion as to

18   whether a warrant ought to be executed or not.  And that

19   didn't feel good to me.  I let Mr. Troiano know I thought it

20   could be a problem.  I decided ultimately in looking at the

21   matter -- we decided ultimately in looking at the matter

22   that -- it's a little bit of a strange area; we're not

23   talking about disqualifying counsel, we're talking about a

24   behind-the-scenes investigator -- and we decided that we were

25   not going to bring a motion and make this a side issue in

1   this case.  However, I simply felt it prudent for me to let

2   counsel know who were asking me about it that there is a

3   criminal statute that talks about somebody who has

4   participated personally and substantially in a matter making

5   any appearance back before the U.S. government with respect

6   to that matter, and I acknowledged that there could be a

7   dispute by Mr. Lapuz as to whether his participation was

8   substantial or not, but that wasn't an issue for me.  I've

9   washed my hands of this essentially is what I'm saying.  I'm

10  not moving to disqualify him, but if he were to move from

11  behind the scenes to appearing before this Court or any other

12  U.S. agency and communicating about the matter, he ought to

13  at least be aware that he should seek his own counsel or

14  think about that himself before he does that.  That was my

15  only intent in communicating that, and I don't really see how

16  it can be resolved here because I'm certainly not in a

17  position to immunize him for if he did or did not violate a

18  statute.  And I'm not saying -- and he hasn't done anything

19  yet that would violate it as far as I'm concerned, so that's

20  where we're at.

21          THE COURT:  Well, okay.  I don't know that we're

22  going to resolve anything on the record, as you put it, Mr.

23  Durkin, a little bit earlier.  Obviously I'm not going to do

24  it on the basis of what's been presented here --

25          MR. DURKIN:  No, I --

1           THE COURT:  -- and I know you can appreciate that.

2    And you're talking about two different things as I understand

3    it; you're talking about potential criminal prosecution,

4    you're talking about disqualification.  I take Mr. Cole at

5    his representation at this particular point in time.  He said

6    he's had an opportunity to preliminarily review this to

7    determine whether or not he should bring a motion to

8    disqualify.  He says it's a murky ground, he's not sure it

9    would even apply to this kind of a circumstance, but -- I

10   don't know what washing his hands of the matter means at this

11   point -- I think a warning flag is up for both sides that

12   they need to get this addressed.  What I wouldn't want to see

13   happen is for Mr. Lapuz to be on this case with counsel --

14   all counsel pooling their resources, expending considerable

15   resources with Mr. Lapuz on this case and then sometime down

16   the road closer to trial all of a sudden we have a flurry of

17   motion work with requests for disqualification at that point

18   and where the picture for potential prosecution becomes a

19   little clearer in the mind of the government; that is

20   something that should be avoided.  So you're all aware of

21   what the circumstance is.

22           I would -- I would just suggest at this point you

23   keep one another in the loop on what your general intentions

24   are so that if something needs to be addressed sooner rather

25   than later, we can do it within the context of a noticed

1    motion where I have the benefit of your research, your

2    thinking, and ultimately what your request may be.

3             MR. DURKIN:  That's what we'll have to do then,

4    Judge, because it is our -- I want to make it clear it is our

5    intention and our desire under the circumstances,

6    particularly the circumstances of what he's done so far, to

7    use him and to have him testify.  So we will address it in a

8    motion.

9             THE COURT:  And that's at the present time.

10   Obviously you want to use him right now, you don't know

11   whether you're going to have him testify at some point, but

12   if you are going to have him testify, then you need to ask

13   yourselves some very basic questions, what areas will he get

14   into, what kind of information --

15            MR. DURKIN:  Oh, I agree, but what I'm saying --

16   and I don't want to mislead anybody here -- I don't believe

17   we can afford to use him and then not be able to use him as a

18   witness; we would have to have that flexibility, so I'd like

19   to resolve it.  We'll get a motion on file.

20            THE COURT:  Well, okay.  If it's too preliminary,

21   if it's just still too unformed and unclear because you don't

22   exactly know where you're going to go other than to say you

23   want to have him investigate or provide investigation

24   services for you and you want to have him testify to relevant

25   areas, then that may or may not be sufficient.  That's why

 1   I'm suggesting that --

 2           MR. DURKIN:  No, I understand.

 3           THE COURT:  And, you know, you're all -- I'm sure

 4   you're all cooperating on the case very well; it certainly

 5   seems like you are, and I would really encourage everyone to

 6   continue to do that.  And I think you'll find in Mr. Cole and

 7   Ms. Han people who are straight-shooters and will work with

 8   you on issues that need to be resolved early.  That's my

 9   expectation, that at least you'll bring these matters to the

10   Court in the form of noticed motions so we can address these

11   things and not have to derail any later proceedings,

12   including any trial date that might be set.

13           MR. DURKIN:  I agree.

14           THE COURT:  Okay?  All right.  Thank you, Mr.

15   Durkin.  Okay.  Anything else then before setting a further

16   status date?  I think there were a couple of dates in August

17   that were being bandied about.  Mr. Cole?

18           MR. COLE:  Nothing necessarily regarding the status

19   date, but related to that, the government would -- wanted to

20   raise the possibility of also having at least one of the

21   motion hearing dates set with sufficient advance notice, and

22   here's why.  We don't know if the defense intends to bring a

23   motion to suppress any of the FISA material, but if they do,

24   I just wanted to make the Court aware that for that

25   particular motion, our response time -- we'd ask for a pretty

1    extended response time because of dealing with the materials

2    we have to present and getting certifications and

3    declarations.  And so I want to throw that out there in

4    case -- what I don't want to have happen is if we come back

5    in two months and everyone, unbeknownst because I didn't

6    bring this up, everyone expects a motion hearing.  I'd rather

7    have everyone -- perhaps set a motion hearing after the

8    status hearing that's out in the distance so that we all can

9    know what time we have to respond to the FISA suppression if

10   one's going to be brought.

11           THE COURT:  Right.  Well, those usually happen a

12   little bit later rather than sooner, FISA suppression, so --

13           MR. COLE:  Yeah.  And again, I don't know exactly

14   where we are in counsel's mind with their preparation, but I

15   just wanted to raise the issue.

16           THE COURT:  Okay.  Well, I think at this point what

17   would be best would be to set a further status date to

18   monitor the progress of the case, allow counsel to continue

19   on with their review of all of the discovery that has been

20   provided, to perhaps get a little bit of a clearer picture on

21   where this issue with respect to Mr. Lapuz may ultimately

22   evolve, and then take care of any other matters of concern at

23   that time.  What were the two dates, counsel, that you

24   mentioned?

25           MR. DRATEL:  August 9 and August 11.  The 11th I

1    think is the -- August 8 and August 11.  That would a Monday

2    and a Thursday.

3            THE COURT:  Okay.  Mr. Cole, why don't you check

4    those dates with your calendar.

5            MR. COLE:  Your Honor, it looks like both of those

6    dates are fine with us.

7            THE COURT:  Okay.  Let's set it for Monday,

8    August 8.  I know we have out-of-town counsel coming in -- by

9    the way, it's very good to see all of you today.  I do

10   appreciate your flexibility.  I learned firsthand, as I think

11   you know, you were advised, what it's like to fly these days

12   cross-country, especially in the South.  That was quite an

13   experience, I will tell you.  So thank you for being here

14   and, as I say, your willingness to be a bit flexible with our

15   hearing date today.

16           If we were to set -- I imagine you'd be coming in

17   on a Sunday -- so if we set it at ten o'clock, that will be

18   convenient for everyone?  Okay.  Then let's call it Monday,

19   August 8 at 10 a.m. for our next status hearing.  Obviously

20   time is tolled under the Speedy Trial Act between today and

21   August 8.  Mr. Durkin?

22           MR. DURKIN:  Judge, just one other matter, and it's

23   somewhat related to the travel.  I was delayed last night,

24   and I got here at 2:00 in the morning my time, midnight.  I

25   guess I got here before you did though.

1          THE COURT:  No, I got here -- we were six hours

2   late getting out of Atlanta.  It was -- for a ten o'clock

3   flight, it was a 4 a.m. departure, getting in at 6:00.

4          MR. DURKIN:  As a result of that, I then tried to

5   see my client beforehand -- I had never met him until just a

6   minute ago -- and we had a mixup with the marshals; they let

7   Mr. Dratel in instead of me.  It was supposed to be me.

8   There's a sign downstairs that says you can only visit

9   clients in the lockup downstairs after court with an order

10  from you.  Could I get 15 or 20 minutes with my client so

11  that --

12         THE COURT:  Yeah, last time we were able to work

13  that out, and I think they can make space available for you

14  downstairs.  Very good.

15         MR. DURKIN:  Thank you.

16         THE COURT:  Okay then.  We'll see you back here on

17  Monday, August 8 at 10 a.m.  Counsel, our courtroom deputy

18  brings up interesting point.  Hold on, gentlemen, if you

19  would, for just a moment.  Is it your intention to waive the

20  services of the interpreter at all times in the future or

21  would you rather have someone here?

22         MR. DURKIN:  I'd like to speak to my client before

23  I did that, Judge.

24         MR. DRATEL:  We'll let you know certainly

25  especially in advance of our August --

1           THE COURT:  Very good.  That's something that --

2    yeah, just let us know, and we'll be able to accommodate you.

3           MR. GHAPPOUR:  Your Honor, if I may, just one more

4    issue?

5           THE COURT:  Yes, Mr. Ghappour?

6           MR. GHAPPOUR:  As you know, there's been a lot of

7    community support behind the defendants.  We were wondering

8    if it was possible for the next status hearing to have an

9    overflow room.  There's about 50 members of the Somali

10   community outside.

11          THE COURT:  By an overflow what do you mean, sir?

12          MR. GHAPPOUR:  Another room where the -- the

13   hearing is teleprompted or there's a video screen.

14          THE COURT:  That's unfortunately -- you know, we've

15   had some big cases in this courthouse, and I don't know --

16   I'm trying to comb back through the recesses here and

17   remember if ever we did that before.  I can't remember

18   another time where we actually did that.

19          I know this case is very important to the

20   community, and I certainly appreciate that, and I'm aware of

21   all of the people who are present here and that the size of

22   the courtroom doesn't accommodate everyone.  I remember -- I

23   do remember being told in the past that it would be a bit of

24   a challenge for our technical people to do that, but I think

25   it's a fair request you make, and I think at this particular

1   point in time, unless I'm advised otherwise and circumstances

2   would justify it, I think we'll continue on a first-come,

3   first-served basis.  Okay.

4            MR. GHAPPOUR:  Thank you.

5            THE COURT:  If there are other -- if there are

6   other alternatives -- I don't know how difficult it would be

7   to get a speaker into the alcove here or perhaps outside the

8   courtroom; at least I'll make the inquiry, okay?

9            MR. GHAPPOUR:  Thank you very much, your Honor.

10           MR. COLE:  Thank you, your Honor.

11        (The proceedings were concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        Certificate of Reporter

2

3       I hereby certify that I am a duly appointed, qualified, and

4       acting Official Court Reporter for the United States District

5       Court; that the foregoing is a true and correct transcript of

6       the proceedings had in the mentioned cause on the date or

7       dates listed on the title page of the transcript; and that

8       the format used herein complies with the rules and

9       requirements of the United States Judicial Conference.

10

11      Dated June 24, 2011 at San Diego, California.

12

13                              _____
                                /s/ Debra M. Henson  (electronic)
                                Debra M. Henson
14                              Official Court Reporter.

15

16

17

18

19

20

21

22

23

24

25