LAURA E. DUFFY
United States Attorney
WILLIAM P. COLE
CAROLINE P. HAN
Assistant United States Attorney
Cal. State Bar No. 186772/250301
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7859/5220
Email:   William.P.Cole@usdoj.gov
         Caroline.Han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. Case No. 10CR4246-JM |
| Plaintiff, | RESPONSE IN OPPOSITION TO DEFENDANT BASAALY MOALIN'S MOTIONS TO: |
| v. | |
| BASAALY MOALIN (1), | (1)   SUPPRESS EVIDENCE OBTAINED PURSUANT TO SEARCH WARRANT; |
| Defendant. | (2)   SUPPRESS POST-ARREST STATEMENT; |
| | (3)   COMPEL PRODUCTION OF ADDITIONAL REPORTS; |
| | (4)   JOIN CO-DEFENDANT'S MOTIONS; AND |
| | (5)   FILE FURTHER MOTIONS |
| | Date: February 9, 2012 |
| | Time:   9:00 a.m |

    COMES NOW the plaintiff, United States of America, by and through its counsel, Laura E. Duffy, United States Attorney, and William P. Cole and Caroline P. Han, Assistant U.S. Attorneys, and hereby files its Response and Opposition to Defendant Basaaly Moalin's above-captioned motions.

//

**I.**

**INTRODUCTION**[1/]

Defendant Moalin moves this Court to suppress evidence obtained pursuant to a search warrant, and to suppress his post-arrest statement. He further seeks an order compelling the Government to produce additional information regarding a specific report provided to him in discovery. Because probable cause existed for the search warrant, and because Moalin was properly advised of his <u>Miranda</u> rights, his motions to suppress should be denied. And because the United States has already provided the discoverable information concerning the report in question, Moalin's motion to compel should be denied.

**II.**

**STATEMENT OF FACTS**

**A.   The Superseding Indictment**

On October 22, 2010, a federal grand jury handed up a five-count Indictment against defendants Basaaly Saeed Moalin ("Moalin"), Mohamed Mohamed Mohamud ("Mohamud"), and Doreh. The Indictment charged all defendants with the following offenses:

Count 1:     Conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A;

---

[1/]     Defendant Moalin also filed a Motion to Suppress Evidence Obtained Pursuant to the FISA Wiretap. The Court agreed that the United States would file its response to that motion on a different schedule. The United States anticipates filing the response on or about February 13, 2012.

| | |
|---|---|
| Count 2: | Conspiracy to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B; |
| Count 3: | Conspiracy to kill in a foreign country, in violation of 18 U.S.C. § 956; and |
| Count 4: | Conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956. |

The Indictment also charged defendant Moalin with one count of providing material support to terrorists, in violation of 18 U.S.C. § 2339A (the only substantive count alleged in the Indictment).

On November 3, 2010, defendant Moalin was arraigned on the Indictment.

On January 11, 2011, the grand jury handed up a Superseding Indictment including the same counts, but adding defendant Ahmed Nasir Taalil Mohamud ("Nasir") as a fourth defendant on Counts 1 through 4.

**B.   Factual Summary**

As described in the Superseding Indictment, al-Shabaab is a violent and brutal militia group that uses intimidation and violence to undermine Somalia's Transitional Federal Government (TFG) and its supporters.  On or about February 26, 2008, the United States Department of State designated al-Shabaab as a Foreign Terrorist Organization (FTO).  Until his death by missile strike on May 1, 2008, Aden Hashi Ayrow was one of al-Shabaab's most well-known and infamous leaders.

Prior to their arrests, Moalin was a San Diego-based cab driver, Mohamud was Imam of a San Diego mosque largely serving the Somali community, and Doreh was an employee of the now-defunct Shidaal Express, a money services business that transferred funds to Somalia.   Nasir was an Anaheim-based cab driver.   Beginning on a date unknown, but continuing to at least August 5, 2008, these defendants conspired together–and with others known and unknown–to provide money to al-Shabaab and others engaged in violent attacks on the TFG and its supporters.

Moalin maintained direct telephone contact with Ayrow and coordinated money transfers with him.   At Ayrow's urging, the defendants collected money for al-Shabaab and transferred it to Somalia through the Shidaal Express.   The defendants routinely used phony sender and/or recipient names to make structured money transfers.   Moalin, Mohamud, and Doreh used their considerable connections and influence within the San Diego area and elsewhere (including St. Louis) to collect and transmit the funds.   Nasir provided funds from Orange County for inclusion in the transfers to Somalia.   The defendants financed al-Shabaab both before and after its formal designation as an FTO.

When Ayrow died in May 2008, the defendants continued to collect funds and transmit them to Somalia to support violence against the TFG and its supporters.   First, Moalin sought out new contacts within al-Shabaab, including an individual named Omar Mataan, to maintain the flow of funds from San Diego to al-Shabaab.   Second, the defendants

provided funds to an individual named Farah Yare to support other militia fighting alongside al-Shabaab.

The illicit transfers made through the Shidaal Express include at least the following:

| Date: | Amount: |
|-------|---------|
| 1/1/08 | $1,950 |
| 1/1/08 | $1,950 |
| 2/13/08 | $1,300 |
| 2/13/08 | $700 |
| 4/23/08 | $1,900 |
| 4/23/08 | $1,100 |
| 7/15/08 | $1,250 |
| 7/15/08 | $1,030 |
| 7/23/08 | $1,860 |
| 7/23/08 | $1,650 |
| 8/5/08 | $860 |
| 8/5/08 | $350 |

Also, in early January 2008, Moalin provided Ayrow with use of one of Moalin's properties in Somalia. During a January 3, 2008 telephone call with Ayrow, Moalin provided Ayrow with detailed directions to the house, told him how to get the key, and explained how Ayrow could hide weapons in the attic or yard. Moalin even offered to have trees delivered to the property to place over equipment that Ayrow could bury in the ground. Moalin warned that the property's drawback was that its location and tall trees made it easily identifiable from far away. Ayrow dismissed the concern, observing that the house would only be used at night.

5

The audio recordings are rife with discussions of violence and terrorist attacks. For example, on January 20, 2008, Ayrow told Moalin that "we planted a land mine for Abdi Qaybdid [a pro-government militia leader] who was traveling on that road; he was almost hit." Ayrow also described an attack against Somalia's Prime Minister and Deputy Prime Minister, stating: "As soon as they arrived at the Presidential palace, we hit them with 12 mortar shells." The two continued to talk, and Moalin stated: "God is great. God is great. It is something to be thankful of the fact that you are capable to deny them the opening of new offices and to work as a functioning government." During this same call, Ayrow instructed Moalin to tell defendant Mohamud that "he must let us know the amount of money we can expect every month, even if it is one hundred dollars." Ayrow stated: "[W]e want to support the insurgent with it. Whatever he can afford."

Later, when the conspirators grew concerned that law enforcement may be onto them, Moalin told Nasir that "we will lay low for awhile." The following exchange ensued:

Nasir:   Like say, stop the talking.

Moalin:  No but we will lay low of course.
         We can still support the orphans
         and – you know? – people in need
         and –

Nasir:   Yes.

```
 1              Moalin:  -we  will  conduct  our  actions
 2                       along  that  method;  we  will  go
 3                       under that pretense now.
 4              Nasir:   Yes,  we  are  helping  the  poor.
 5                       They  do  not  know  it  is
 6                       bullets;  that  is  the  way  it  is,
 7                       you know?
 8              Moalin:  Sure.
 9
```

10      **C.   Search Warrant for Moalin's Residence**

11      On October 29, 2010, United States Magistrate Judge Jan

12 M. Adler issued a search warrant for Moalin's residence,

13 located at 3810 Winona Avenue #116, San Diego, California,

14 authorizing a search for evidence of violations of the same

15 statutes charged in the Superseding Indictment. [Docket No.

16 92-6.] On October 31, 2010, federal agents executed the

17 search.

18      **D.   Post Arrest Statements by Moalin**

19      On October 31, 2010, at about 7:00 a.m., Moalin was

20 arrested at the San Diego airport, prior to boarding a

21 flight.  At about 7:20 a.m., he was advised of his Miranda

22 rights by Federal Bureau of Investigation (FBI) Special

23 Agent Michael Kaiser. [United States Ex. 1 at 4-5.] Agent

24 Kaiser informed Moalin of the offenses for which he was

25 under arrest, and explained that he had an arrest warrant.

26 He described for Moalin the nature of evidence against him

27 (including that Moalin's calls had been intercepted), and

28 he explained that Moalin could face thirty years to life in

prison if convicted. [Id. at 5-7] Moalin stated that he did not understand, and he was offered a Somali interpreter. He stated that he did not need an interpreter and he asked Agent Kaiser to repeat the Miranda warnings.  After hearing the warnings again, Moalin expressed his understanding and waived his Miranda rights in writing at 7:30 a.m.  [Docket No. 92-4.] The interview then commenced.

### III.

**THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE**

Moalin concedes that the search warrant for his residence was reasonable in scope and execution.  But he contends that it lacked probable cause because of alleged staleness.  For the reasons set forth below, his motion should be denied.

"A magistrate's determination of probable cause is not reversed unless it is clearly erroneous." United States v. Dozier, 844 F.2d 701, 706 (9th Cir. 1988).  "[T]he passage of time is not necessarily a controlling factor" in determining whether the information in a search warrant affidavit is stale. United States v. Foster, 711 F.2d 871, 878 (9th Cir. 1983).  Rather, the court considers the type of criminal conduct and the type of evidence sought.  Id.

Here, the search warrant affidavit set forth extensive facts establishing probable cause to believe that Moalin engaged in conspiracy to provide material support to terrorists, conspiracy to provide material support to a foreign terrorist organization, conspiracy to kill in a foreign country, and conspiracy to launder monetary

instruments. [Docket No. 92-7, at ¶¶ 18 - 57.]  Moalin does not challenge that basic fact.  Furthermore, the affidavit devoted many paragraphs to the specific reasons for probable cause to believe that evidence of Moalin's offenses would still be found within his residence. [Id. at ¶¶ 58-69.]  For example:

- There was evidence that Moalin's fundraising activities were extensive, including a network not only in the United States, but stretching to Canada and Europe, suggesting that Moalin would have needed to maintain records or lists of persons who had contributed or pledged to contribute. [Id. at ¶ 58.]

- Moalin had specifically referred to keeping lists of donors and contact information. [Id.] Indeed, in late November 2008, before leaving on an international trip, Moalin asked an associate to safeguard a contact book including names and numbers Moalin did not want on his cell phone (presumably because he did not want authorities to find the contact information on the phone when he entered or exited the United States). [Id. at 61.]

- The warrant sought copies of any hawala transaction receipts, because records of routinely conducted hawala transactions in Moalin's own name would provide circumstantial evidence of his knowledge of the illegal nature of the transactions that he made in false names, and there was ample probable cause

to believe that Moalin would have continued to make hawala transfers to Somalia. [Id. at ¶ 60.]

- Although the indictment charged conspiracies only to on or about August 5, 2008, there was probable cause to believe that Moalin's support for al-Shabab or other violent militia in Somalia continued beyond that date. [Id. at ¶¶ 61, 64.] A search warrant is not artificially limited by any dates alleged in the indictment; the United States was entitled to search for evidence of any offense extending, or committed, beyond such dates (or for any items created after August 5, 2008, that would provide evidence of the offenses).

- The affiant observed, based on training, experience and belief, that phone books, ledgers and contact lists are generally kept in a person's home, and are often kept for long periods of time. [Id. at 62.]

- The affidavit described surveillance establishing probable cause to believe that Moalin's records and belongings would likely be stored at his residence. [Id. at ¶ 65.]

- The affidavit provided probable cause to believe that evidence of Moalin's offenses would be found on electronic storage devices, and that "computer files or remnants of such files can be recovered months or years later using forensic tools[.]" [Id. at ¶¶ 66-69.]

10

Thus, Judge Adler did not err in finding probable cause.

United States v. Greany, 929 F.2d 523 (9th Cir. 1991), is instructive.  There, the defendant challenged a search warrant issued for the defendant's home, primarily based upon information that was approximately 1 1/2 to 2 years old.  The information had been provided by an informant, who stated that while doing remodeling work at the defendant's home, the informant, the defendant, and another person had a conversation about the upstairs portion of the defendant's home being used for a marijuana growing operation.  Id. at 524.  The court found that the lapse of time did not render the search warrant stale where a person could "infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time." Id. at 525.  Similarly, in this case, it was not erroneous, much less clearly erroneous, for Judge Adler to infer that the types of records and items sought by the warrant (which Moalin concedes was reasonable in scope) would likely be kept for some period of time.

Furthermore, although Moalin argues that Judge Adler erred because Moalin moved to the subject residence in May 2010, the types of information sought by the warrant were the type one would be expected to keep in his current residence, no matter where located.  In other words, nothing in the affidavit suggested there was something special about Moalin's old apartment, such that it would be the only place one would expect to find Moalin's address or contact books or lists, financial records or hawala receipts, or

electronic storage devices.  Rather, these are the types of items that one would expect a person to keep for long periods of time in his residence, wherever presently located.

Finally, even assuming there was not probable cause to support the warrant, the Court should still deny Moalin's motion to suppress, because of good faith reliance on the warrant.   Good faith reliance exists if the agent's affidavit establishes at least a colorable argument for probable cause, and the agents relied on the search warrant in an objectively reasonable manner.   <u>United States v. Krupa</u>, 658 F.3d 1174, 1179 (9th Cir. 2011).   Here, there is nothing objectively unreasonable about the agents' reliance on the search warrant issued by Judge Adler, and there was, to say the least, a colorable argument for probable cause.

## IV.

### DEFENDANT WAIVED HIS SIXTH AMENDMENT RIGHTS

Moalin concedes that he was properly advised of his <u>Miranda</u> rights.   Nevertheless, he contends that the Court should suppress his post-arrest statement because he was not specifically advised that he had been indicted.    The contention lacks merit.   FBI Special Agent Kaiser advised Moalin he was under arrest, provided him with sufficient information about the charges he faced, including the possible sentence, and advised him of his <u>Miranda</u> rights. Moalin waived those rights. Nothing more is required.

In <u>Patterson v. Illinois</u>, 487 U.S. 285 (1988), the Supreme Court held: "So long as the accused is made aware

1  of the 'dangers and disadvantages of self-representation'
2  during postindictment questioning, by use of the Miranda
3  warnings, his waiver of his Sixth Amendment right to counsel
4  at such questioning is 'knowing and intelligent.'" Id. at
5  299-300.  And in United States v. Charria, 919 F.2d 842 (2d
6  Cir. 1990), the Second Circuit specifically rejected the
7  notion that an accused must know he has been indicted to
8  waive his Sixth Amendment rights:

9      Once an accused understands that he is under arrest
       and, after receiving the Miranda warnings,
10     understands his right to remain silent, the
       potential consequences of speaking, and his right
11     to counsel, including during interrogation, he is
       fully apprised of the information needed to make a
12     knowing waiver of the sixth amendment right;
       providing him with the information that he is also
13     under indictment, the desirability of which is
       debatable, is not constitutionally required.
14

15 Id. at 848 (internal citation omitted); see also Karr, 742
16 F.2d 493, 496 (9th Cir. 1984) ("Miranda warnings suffice for
17 waiver of the Sixth Amendment.").

18     Not surprisingly, Moalin cites no case holding that, in
19 order to waive Sixth Amendment rights, the defendant must
20 know that he has been indicted.[2/]  Because Moalin was
21 advised of the arrest warrant, the charges, the possible
22 sentence, and his Miranda rights, his waiver of those rights
23
24

_____

25     [2/]   Moalin's reliance on United States v. Kimball, 884
   F.2d 1274 (9th Cir. 1989), is misplaced.  That case did not
26 involve the question of whether, in order to waive Sixth
   Amendment rights, the accused must be told he is under
27 indictment.  Rather, Kimball involved undercover agents who
   met with an indicted defendant outside the presence of his
28 counsel and without any Miranda warnings.  Id. at 1276-77,
   1279.

13

was sufficient and there was no Sixth Amendment violation. The Court should deny his motion to suppress.

## V.

### THE COULD SHOULD DENY MOALIN'S MOTION TO COMPEL CONCERNING THE FIG ASSESSMENT

Moalin contends that the Court should compel the United States to produce additional information concerning a San Diego Field Intelligence Group (FIG) assessment.  The FIG assessment expressed opinions as to Moalin's possible motivation for funding al-Shabaab.  [Docket No. 92-3.]  For several reasons, the Court should deny the motion.

First, the FIG assessment is inculpatory, not exculpatory.  Indeed, the assessment states that Moalin "is the most significant al-Shabaab fundraiser in the San Diego Area of Operations" and he "serves as a controller for the US-based al-Shabaab fundraising network." [Id.]  It is hard to get more inculpatory than that.

Second, the portion of the assessment that Moalin focuses on concerns Moalin's possible motive for providing material support to al-Shabaab; that is, the assessment opines that Moalin was motivated by his clan affiliations rather than ideology.  But motive is not an element of any offense charged in the indictment.  Put simply, it is just as illegal to fund a terrorist organization for clan reasons, as it is to fund a terrorist organization for "ideological" reasons.  So, an analyst's subjective opinion as to Moalin's possible motive for funding a terrorist organization is not Brady.

14

Third, the United States is not aware of any other discoverable information concerning the FIG assessment that has not already been produced to Moalin.  Moalin suggests that, because the discovered document refers to an earlier document, dated April 23, 2009, the United States must produce the April 23 document.  But he cites no authority for that proposition.  Even assuming that the FIG assessment somehow constituted exculpatory information, it is the <u>information</u> that is discoverable, not the form in which the information may have been contained.

The United States understands, and will perform, its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976). Accordingly, there is no basis for a motion to compel.

## VI.

## MOALIN'S REQUEST TO JOIN OTHER MOTIONS

Moalin requests to join co-defendant motions that "inure to his benefit."  But with the exception of identifying co-defendant Doreh's motion for a bill of particulars, he fails to "specifically identify the particular motion(s) to which the joinder applies and the basis for the defendant's standing to raise such motion, where necessary."  Crim.L.R 47.1(d)(2).  Accordingly, the Court should deny his request for joinder as to any motion other the motion for a bill of particulars.  Furthermore, for all the reasons stated in the United States' opposition to Doreh's motion for a bill of particulars, the Court should deny that motion.

# VII.

## LEAVE TO FILE FURTHER MOTIONS

The United States does not object to Moalin filing further motions, provided the motions are based upon information or discovery not available to him at this time.

# VIII.

## CONCLUSION

For the foregoing reasons, the Court should deny Moalin's motions, except where unopposed.

DATED:   January 13, 2012

                         Respectfully submitted,

                         LAURA E. DUFFY
                         United States Attorney

                         s/ William P. Cole

                         WILLIAM P. COLE
                         CAROLINE P. HAN
                         Assistant United States Attorneys

                         Attorneys for Plaintiff
                         United States of America