**JOSHUA L. DRATEL**
Admitted *Pro Hac Vice*
**ALICE L. FONTIER**
California State Bar No.229994
DRATEL & MYSLIWIEC, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
Telephone: (212) 732-0707

Attorneys for Basaaly Moalin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER )**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-4246 (JM) |
| Plaintiff, | Date: February 9, 2011<br>Time: 9:00 a.m. |
| v. | |
| BASAALY MOALIN (1), *et. al.*, | **REPLY TO GOVERNMENT'S OPPOSITION TO BASAALY MOALIN'S MOTIONS** |
| Defendant. | |

**INTRODUCTION**

This Reply Memorandum of Law is submitted on behalf of Defendant Basaaly Moalin in support of his pretrial motions to (1) suppress evidence obtained pursuant to a search warrant; (2) suppress Mr. Moalin's post-arrest statement; (3) compel production of *Brady* material; (4) join Mr. Moalin's co-defendants's motions; and (5) grant leave to file further motions.[1]

Mr. Moalin incorporates the Statement of Facts and Memorandum of Points and Authorities as set forth in his initial papers. This Reply will not address each of the Points made in the initial motions, however this does not constitute a waiver or concession of any of the Motions. For the reasons set forth below each of the government's arguments in opposition to Mr. Moalin's motions is unavailing and this

---

[1] This Reply does not address Mr. Moalin's motion to suppress evidence obtained pursuant to a FISA wiretap, to which the government has not yet filed any opposition.

Court should grant Mr. Moalin's motions in their entirety.

# ARGUMENT

## POINT II[2]

**ANY EVIDENCE RECOVERED PURSUANT TO THE SEARCH WARRANT EXECUTED AT MR. MOALIN'S RESIDENCE SHOULD BE SUPPRESSED BECAUSE THE INFORMATION IN THE WARRANT APPLICATION WAS STALE**

Mr. Moalin moves to suppress all evidence seized pursuant to the November 1, 2010, search of his residence, located at 3810 Winona Avenue #116, San Diego, California. As set forth in the initial motion, the warrant was not based on probable cause because the information in the warrant application was stale, with the most recent fact related to Mr. Moalin occurring nearly *two years* before the application was submitted. As a result, the evidence seized pursuant to the search, and any fruits thereof, must be suppressed. The government's arguments to the contrary are unavailing.

The government essentially ignores two critical facts, (1) Mr. Moalin moved from his residence after all of the information in the search warrant application was gathered; and (2) subsequent to the information in the search warrant application, and prior to the search, the government determined that Mr. Moalin did not ideologically support *al Shabaab*. These facts render the two year old information in the search warrant stale and negate the magistrate judge's finding of probable cause. Indeed, these facts, coupled with the two year time span, make the probability that contraband or other evidence would be found in Mr. Moalin's residence at the time that the search was conducted so unlikely, that reliance on the search warrant was unreasonable.

A. *The Search Warrant Was Not Supported by Probable Cause*

The search warrant application contained information which dated through December, 2008. However, the search of Mr. Moalin's home was not conducted until November 1, 2010. The government's opposition merely summarizes the facts as set forth in the search warrant application and does not explain how the facts gathered in 2008 tend to provide probable cause for a search in 2010.

---

[2] The Points in the Reply are numbered in accordance with those in the initial motions even though this Reply will not address each point, and without regard for the numbering of the points in the government's opposition.

     For instance, the government asserts that surveillance of Mr. Moalin established probable cause for the search warrant. Government's Opposition at 10. However, the surveillance was conducted in 2008, while Mr. Moalin lived in a different location. Indeed, according to the search warrant application, the surveillance established Mr. Moalin's routine in 2008, which made it likely that evidence would be kept in his home. Affidavit in Support of Search Warrant, attached to Basaaly Moalin's Motions as Exhibit 5, at ¶ 65. There is nothing in the search warrant application, nor does the government point to any facts, that tend to establish that Mr. Moalin had a similar routine in November, 2010.

     Mr. Moalin changed residences after the surveillance was conducted and prior to the search. There is nothing in the search warrant application, or in the government's opposition, that demonstrates that Mr. Moalin moved all of his belongings. The government's assumption that Mr. Moalin moved every record, document, and belonging, from one residence to the next is pure speculation and does not amount to probable cause.

     The government's reliance on *United States v. Greany*, 929 F.2d 523 (9th Cir. 1991), is misplaced. *Greany* is so factually dissimilar that it is inapposite. In that case, an informant stated that two years prior to the date of the search he had performed remodeling work on the defendant's home to make it suitable for growing marijuana. *Id*. at 524. On the day that the search warrant was issued, the agent visited the residence and confirmed that the defendant still resided there, by checking the registration on the car parked in front of the house. *Id*. This information coupled with the fact that the house had been remodeled, the long-term nature of the growing process, and the informant's statements, was deemed sufficient to overcome the two year delay between the remodeling and the search. *Id*. at 525. Here, unlike in *Greany*, the agent did not confirm that the two year old information was still viable, or search the home that had been under surveillance, instead a search warrant was issued for a separate residence. Moreover, the possession of receipts and documents is not similar to a marijuana growth operation, in that documents are easily disposable.

     The government also asserts that "there was probable cause to believe that Moalin's support for al-Shabaab or other violent militia in Somalia continued beyond that date [August 5, 2008]." Government's Opposition at 10. This argument fails for two reasons, (1) even if true, this does not provide probable cause to search his residence, and (2) the information is false, the government, through the San Diego FIG,

had previously determined that Mr. Moalin did *not* ideologically support *al Shabaab*.

The government confuses the standard for whether probable cause to arrest Mr. Moalin existed with the probable cause necessary to issue a search warrant. Whether the government could establish probable cause to believe that Mr. Moalin had committed the charged offenses is immaterial to the issuance of the search warrant. Thus, the question of whether Mr. Moalin supported *al Shabaab* is not at issue in the determination of whether probable cause existed to support the search warrant. To issue a search warrant the government must provide facts "sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." *Greany*, 929 F.2d at 524-25, *citing United States v. Hendricks,* 743 F.2d 653, 654 (9th Cir.1984).

In addition, the government's assertion that Mr. Moalin supported *al Shabaab* beyond 2008 is directly contradicted by its own assessment of him. In April, 2009, the San Diego Field Intelligence Group ("FIG") issued an assessment of Mr. Moalin in which it determined that Mr. Moalin "is not ideologically driven to support al-Shabaab[.]" FIG Assesment, attached to Moalin Motions as Exhibit 1. Indeed, the San Diego FIG determined that his support was limited to Aden Ayrow, who was from the same clan as Mr. Moalin, and who was killed on May 1, 2008. *Id.* The government's assertion that Mr. Moalin continued to support *al Shabaab* on November 1, 2010, is misleading and contradicted by its own assessment. Thus, the Court should not rely on this claim in its evaluation of whether the search warrant was based on probable cause.

    **B.**    *The Good Faith Exception Does Not Apply*

The government argues that even if the magistrate judge lacked probable cause to issue the search warrant, suppression is not warranted because the good faith exception applies. Government Opposition at 12. In *United States v. Leon*, 468 U.S. 897, the Supreme Court established the good faith exception to the warrant requirement. There, the Court held that, even if a warrant was later found to be improper, so long as the officers relying on the warrant conducted the search in an objectively reasonable manner then suppression is not warranted. *Id.* at 922. The Ninth Circuit has explained that if the affidavit establishes a colorable argument for probable cause, then reliance on it is reasonable. *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007).

Here, the affidavit contained no information that linked Mr. Moalin's current residence to the

information that was sought.  The agent's mere assertion "that there is probable cause to believe that Moalin would continue to keep the items[,]" Search Warrant Application at ¶ 64, is insufficient to establish even a colorable claim of probable cause.  Reliance on such baseless assertions was not reasonable.

For the reasons set forth above, and in the initial motion, the information in the search warrant application was insufficient to establish probable cause, or even a colorable claim thereof, accordingly, Mr. Moalin respectfully moves this Court for suppression of all documents and other tangible evidence seized pursuant to the November 1, 2010, search executed at 3810 Winona Avenue, Apt. #116, San Diego, California.  *See Segura v. U.S.,* 468 U.S. 796, 804 (1984) ("[e]vidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion").

**POINT IV**

**THE GOVERNMENT SHOULD BE COMPELLED
TO PRODUCE EXCULPATORY MATERIAL AND
INFORMATION REFERRED TO IN THE FIG ASSESSMENT**

The government's opposition to Mr. Moalin's request for exculpatory material referred to in the San Diego FIG assessment (Exhibit 1 to Mr. Moalin's initial motion papers) misapprehends the nature of what constitutes exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, as well as the extent of the government's obligation to produce such information to the defense.

For example, in claiming that the FIG is not exculpatory because it also contains *in*culpatory information, *see* Government Opposition, at 14, the government fails to recognize the nature of *Brady* material.  Even assuming *arguendo* that the FIG is inculpatory, a document is not analyzed *en toto* to determine whether it is on balance exculpatory or inculpatory.  Rather, exculpatory information *within* a document is *Brady* material regardless of the overriding character of the document, or whether the document also contains *in*culpatory aspects.  *See e.g. United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("That the information withheld may seem inculpatory on its face in no way eliminates or diminishes the government's duty to disclose evidence of a flawed police investigation.").

In addition, the government further misunderstands *Brady* material by claiming that Mr. Moalin's motive, discussed in the FIG, is not relevant in this case because "motive is not an element of any offense charged in the indictment."  *See* Government Opposition, at 14.  While exculpatory material need not

negate an element of the offense in order to qualify as *Brady* material, *see Brady*, 373 U.S. at 87 (requiring the production of all *favorable* material relevant to guilt *or punishment*); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (requiring the production of information that may be used for impeachment); *and Kyles v. Whitley*, 514 U.S. 419, 420 (1995) (prosecution must disclose evidence that would allow "the defense to attack the thoroughness and even the good faith of the investigation"), here Mr. Moalin's motive in sending money to Somalia is inextricably tied to his intent, which is of course an element of the charged offenses (and any conspiracy charge).  If Mr. Moalin's motive in sending money to Somalia was not to aid *al Shabaab*, a jury could reasonably infer that he did not intend to provide material support to *al Shabaab*, or engage in any conspiracy to kill persons overseas.

      Also, the exculpatory material referred to in the FIG is relevant because of the date on which *al Shabaab* was designated a Foreign Terrorist Organization ("FTO"), February 26, 2008.  To the extent the information in the FIG establishes that any support Mr. Moalin may have provided to *al Shabaab* ceased prior to February 26, 2008, that would also be exculpatory, and subject to production to the defense.

      Moreover, the government's contention that it need not provide any information or material beyond what is contained in the FIG is erroneous.  Merely alerting the defense that exculpatory information or material exists, without providing any detail that could enable the defense to use such information at trial, does *not* satisfy the government's obligations under *Brady*.  *See e.g. Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (*Brady* violation where, the prosecution disclosed the witnesses prior convictions but did not provide a RAP sheet or other supporting documents).

      For instance, the government could not simply inform the defense that there existed an eyewitness who exonerated the defendant without disclosing that eyewitness' identity.  Nor could the government notify the defense that a letter exculpating the defendant existed without producing the letter itself.  Here, the government must, in order to satisfy its *Brady* obligations, provide the underlying sources, details, and documents that form the foundation and basis for the FIG's exculpatory statements and conclusions.

      Thus, the government's attempts to narrow *Brady* material are unavailing, without support in the law or the facts of this case, and ultimately are without any merit.  As a result, the government should be compelled to produce any and all exculpatory information and materials referred to in the FIG assessment.

      Accordingly, for all the reasons set forth above, and in Mr. Moalin's initial motion papers, the

government should be compelled to produce the materials enumerated in Mr. Moalin's initial motion papers. *See* Mr. Moalin's Initial Motion Papers, at 34-36.

### POINT V

### MR. MOALIN RESPECTFULLY JOINS IN THOSE MOTIONS BY HIS CO-DEFENDANTS THAT INURE TO MR. MOALIN'S BENEFIT

The government opposes Mr. Moalin's request to join his co-defendant's motion because Mr. Moalin did not specify which motions he would join. Government's Opposition at 15. Mr. Moalin now joins all motions filed by all of his co-defendants. Specifically, in addition to joining the request for a Bill of Particulars, to which the government does not object, Mr. Moalin joins Mr. Mohamed Mohamud's motions to (1) compel production of *Brady* material; and (2) strike surplusage. Mr. Moalin also joins Mr. Ahmed Mohamud's motions for, (1) early return of trial subpoenas; (2) preservation of notes; (3) production of rule 404(b) material; (4) immediate disclosure of favorable evidence; (5) pre-trial hearing concerning co-conspirators' statements; (6) relief from prejudicial joinder; and (7) stay of the proceedings.

### CONCLUSION

Accordingly, for the foregoing reasons, and for those reasons set forth in Mr. Moalin's and his co-defendant's motions, Mr. Moalin respectfully requests that the Court grant the motions in their entirety.

Dated: 20 January 2012
New York, New York

Respectfully submitted,

S/ Joshua L. Dratel
JOSHUA L. DRATEL
ALICE L. FONTIER
DRATEL & MYSLIWIEC, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005

*Attorneys for Basaaly Moalin*

To: THE HON. JEFFREY T. MILLER
UNITED STATES DISTRICT JUDGE

WILLIAM COLE
CAROLINE HAN
ASSISTANT UNITED STATES ATTORNEYS

10-CR-4246 (JM)