**JOSHUA L. DRATEL**
Admitted *Pro Hac Vice*
**ALICE L. FONTIER**
California State Bar No.229994
JOSHUA L. DRATEL, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
Telephone: (212) 732-0707

Attorneys for Basaaly Moalin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER )**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 10-CR-4246 (JM) |
| Plaintiff, | ) | |
| v. | ) | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY MOTION |
| BASAALY MOALIN, | ) | |
| Defendant. | ) | |

TABLE OF CONTENTS

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

THE FRUITS OF ELECTRONIC SURVEILLANCE
AND ANY OTHER MEANS OF COLLECTION
CONDUCTED PURSUANT TO THE FOREIGN
INTELLIGENCE SURVEILLANCE ACT SHOULD
BE SUPPRESSED BECAUSE THEY WERE
OBTAINED IN VIOLATION OF THE STATUTE
AND/OR THE FIRST AND FOURTH AMENDMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.   *The Government's Perfect Record In FISA Litigation*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.   *The Government's Objections to Disclosure of the FISA Materials
     to Defense Counsel Possessing Security Clearance Are Without Merit.* . . . . . . . . . . . . . . 2

C.   *Determination Whether the FISA Materials Are Exculpatory Requires
     Disclosure to Cleared Defense Counsel to Assist the Court's Review.* . . . . . . . . . . . . . . . 3

D.   *Defense Cannot Adequately Address the Validity of the FISA Electronic
     Surveillance and Searches In This Case, and Assist the Court In Making
     An Accurate Determination, Absent Disclosure of the Underlying FISA Materials.* . . . . . . . . . . . . 4

E.   *The Government's Arguments Regarding FISA Minimization
     Would Defeat the Purpose of the Exclusionary Rule In Its Entirety.* . . . . . . . . . . . . . . . . . 5

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Introduction**

This Reply Memorandum of Law is submitted in response to the government's February 17, 2012 Memo of Law (hereinafter "Gov't Memo") in opposition to Mr. Moalin's motion to suppress evidence (and any fruits thereof) obtained pursuant to electronic surveillance and/or searches conducted pursuant to the Foreign Intelligence Surveillance Act (hereinafter "FISA"). Much of the government's opposition does not require rejoinder, having been anticipated in Mr. Moalin's Initial Memo of Law.

As a result, this Reply will focus on certain aspects of the government's opposition that illustrate the fatal defects in the government's arguments, and why Mr. Moalin's motion for suppression, and/or disclosure of the underlying FISA materials (the warrants, applications, and supporting declarations), and/or for an evidentiary hearing, should be granted.

**ARGUMENT**

**THE FRUITS OF ELECTRONIC SURVEILLANCE AND ANY OTHER MEANS OF COLLECTION CONDUCTED PURSUANT TO THE FOREIGN INTELLIGENCE SURVEILLANCE ACT SHOULD BE SUPPRESSED BECAUSE THEY WERE OBTAINED IN VIOLATION OF THE STATUTE AND/OR THE FIRST AND FOURTH AMENDMENTS**

A.   *The Government's Perfect Record In FISA Litigation*

The government makes much of its perfect record with respect to two aspects of FISA litigation: (1) that no court has ever disclosed to the defense the FISA applications, affidavits, and warrants (*see* Gov't Memo, at 18, 24-25, 29 n. 32, 57); and (2) that no court has ever suppressed FISA-generated evidence. *Id*., at 19, 40, 57.

Of course, an objective observer would conclude that the government's perfect record in (2) is a direct result of its perfect record in (1). After all, in the adversary process, denying your opponent the opportunity to confront the facts is a rather reliable means of ensuring success. Who would not have a perfect litigation record under such circumstances? Indeed, the government's perfect record in FISA litigation proves too much, and not what the government intended by citing to it. Perfect litigation records, like preordained election results in totalitarian regimes, are sure indicators that something is wrong with the process.

**B.** ***The Government's Objections to Disclosure of the FISA Materials to Defense Counsel Possessing Security Clearance Are Without Merit***

The government makes several arguments opposing disclosure of the FISA materials [pursuant to 50 U.S.C. §§1806(f) & (g)] to defense counsel, all of whom in this case possess appropriate levels of security clearance. All of those arguments are insupportable, and defy logic and law.

For example, the government, in its Memo at 19, claims that disclosure is not necessary because the FISA materials provided by the government are "well-organized and easily reviewable by the Court *in camera* and *ex parte*." Yet that is not the reason for disclosure. Accuracy and reliability of a decision are not dependent on the level of organization of materials submitted by a party. Rather, reliability and accuracy are functions of the adversary process. *See* Mr. Moalin's Initial Memo of Law, at 26-29.

In addition, the government claims that disclosure is unnecessary because the materials are "'relatively straightforward and not complex.'" Gov't Memo, at 20, *citing United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010). Yet, again, that is not a hallmark of accuracy or reliability. An unopposed argument that is simple suffers from the lack of an adversary just as much as does a complicated presentation.

Indeed, the government's resistance to disclosure to defense counsel possessing the requisite security clearance(s) is based not on principle but rather on the anomalous and anachronistic interplay – or more appropriately, the *lack* of interplay – between FISA and the Classified Information Procedures Act (hereinafter "CIPA"), 18 U.S.C. App. III. FISA was enacted prior to CIPA, at a time when no statutory framework or authority existed for provision of classified information to qualified defense counsel. CIPA and FISA have not been harmonized since, but that does not defeat the obvious logic of the current situation: concerns about the classified nature of FISA materials are obviated by resort to CIPA.

In addition, utilization of CIPA for handling classified information and material even in circumstances not technically covered by the statute has been endorsed by the Fourth Circuit. For example, in *United States v. Moussaoui*, 382 F.3d 453, 476-77 (4th Cir. 2004), the Court agreed with the District Court's use of CIPA as a framework for addressing issues of access to classified information even though CIPA did not formally apply. The same result should obtain in the FISA context.

Also, CIPA §4, cited by the government in its Memo, at 21 n. 28, and which provides a mechanism for the government to provide classified material to the court for a determination whether the material

need be divulged to the defense, is not analogous, since those materials §4 excludes from disclosure are *not* discoverable (because they are neither relevant nor material), while here in all other circumstances (*i.e.*, Title III eavesdropping warrants, and ordinary search warrants) the warrant applications and underlying affidavits are certainly required to be produced to the defense.[1]

Moreover, absent any empirical or even anecdotal support, the government, in its memo at 23, contends that "disclosure of information may lead to an unacceptable risk of compromising the intelligence gathering process, and determining whether foreign agents, spies, and terrorists are capable of piecing together a mosaic of information that, when revealed, could reasonably be expected to harm the national security of the United States."

Yet that proposition is completely inapposite here because counsel have already been qualified to review Top Secret classified information (and even above that level in some instances) – a designation no different or diminished than that which authorizes the prosecutors' or Court's access to the very same materials. Defense counsel herein are not comprised of "foreign agents, spies, and terrorists[,]" and do not seek any public dissemination of the FISA materials, but merely that they be treated subject to CIPA, like any other classified material.

Indeed, there has not been a single instance of leakage of classified material as a result of implementation of CIPA protocols. That, of course, is contrasted starkly with the abundant history of leaks of classified information emanating from government sources, and which appear in newspapers (and sometimes lead to criminal prosecution). *See, e.g., United States v. Kiriakou*, 1:12 MJ 33 (E.D.Va.) (January 23, 2012).

**C.    *Determination Whether the FISA Materials Are Exculpatory Requires Disclosure to Cleared Defense Counsel to Assist the Court's Review***

The government maintains that "there is no exculpatory information among the FISA materials[.]" Gov't Memo, at 29. However, since the government has already asserted the position that the June 15, 2011, FBI San Diego Field Intelligence Group Assessment (hereinafter "FIG Assessment"), attached as

---

[1] In its Memo, at 22, the government also attempts to rely on the "need to know" principle to deny disclosure. However, "need to know" is a bureaucratic concept, and does not dictate determinations that must be consistent with due process and fair procedure, and/or that reflect accurate and reliable decision-making.

Exhibit 1 to the December 9, 2011 Declaration of Joshua L. Dratel, Esq., does not contain exculpatory information, that characterization does not inspire confidence in the government's ability to recognize exculpatory material.

Also, it will be impossible for the Court to make an adequate determination without assistance from defense counsel in evaluating the material and its relevance and materiality to the defense in this case.[2]

**D.  *Defense Cannot Adequately Address the Validity of the FISA Electronic Surveillance and Searches In This Case, and Assist the Court In Making An Accurate Determination, Absent Disclosure of the Underlying FISA Materials***

The government's opposition runs 60 pages, and contains 144 redactions – 66 in the text, and another 78 in the footnotes. Whatever a challenge to FISA-generated evidence represents under those circumstances, it is not the adversary process. Yet the government nevertheless obtusely insists that defense counsel's inability to specify the defects in the FISA process in this case is somehow dispositive of those claims.

However, that is not the case when defense counsel is compelled to argue in a vacuum devoid of factual context to which only the government and the court have access. As the Fourth Circuit has recognized in a closely analogous context – discerning what exculpatory evidence a witness solely within the government's control, and to whom the defense is denied access, can provide – when a defendant is deprived of such access, the burden to be specific with respect to the material in question must be relaxed accordingly. *See United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004), *citing United States v. Valenzuela-Bernal*, 458 U.S. 858, 870-71, 873 (1982).[3]

In particular, the government's failure to disclose its response to Mr. Moalin's motion with respect

---

[2] Today defendants have also filed *ex parte* a Memo of Law relating to the Court's review of material the government provided the Court pursuant to CIPA §4. *See* Docket # 131. It is respectfully submitted that the Court apply the same factual considerations and legal principles to its review of the FISA materials for purposes of determining whether they should be disclosed to defense counsel pursuant to §1806(f) & (g).

[3] Also today defendants have filed a separate Memo of Law objecting to the government's *ex parte* submission pursuant to CIPA §4. *See* Docket # 131. It is respectfully requested that the analysis and discussion of *ex parte* submissions, and their disfavored status, particularly in criminal prosecutions, be incorporated by reference herein and applied to this motion as well. *See* Docket # 131, at 4-5.

to §1805(a)(2)(A)'s admonition "that no United States person may be considered a foreign power . . . solely upon the basis of activities protected by the first amendment . . ." deprives the Court of an ability to make an accurate determination, especially in light of the government's pregnant remark that "not all speech-related activities fall within the protection of the First Amendment." Gov't Memo, at 46 (citation omitted).

E. *The Government's Arguments Regarding FISA Minimization Would Defeat the Purpose of the Exclusionary Rule In Its Entirety*

The government's approach to minimization in the FISA context, set forth in its Memo, at 50-56, would, for all practical purposes, simply license the government to avoid minimization altogether. For example, the proposition that only the interceptions (or seized items) that were not properly minimized need be suppressed eviscerates the minimization requirement, and the exclusionary rule itself, entirely. Under such a doctrine, there would be zero incentive to minimize, as only the limited intercepts that should have been minimized – ostensibly not pertinent in the first place (which is why the failure to minimize – would be excluded from evidence.

Thus, law enforcement would literally have "nothing to lose" by failing to minimize. *See United States v. Simels*, No. 08-CR-640 (JG), 2009 WL 1924746, at *14 (E.D.N.Y. July 2, 2009) (in Title III context, rejecting government's argument that only those interceptions that were not properly minimized, and which therefore captured privileged attorney-client communications, should be suppressed, and instead suppressing entire wiretap).

In addition, contrary to the government's assertion, in its Memo, at 12, the Court cannot properly infer that every FISA warrant incorporates every previous and subsequent FISA warrant's minimization protocols. Rather, consistent with the Fourth Amendment, each FISA warrant must be evaluated on its individual merits. Otherwise, the government's approach would eliminate the individual nature of the warrant requirement, and would convert the warrant(s) in this case to a general warrant. Indeed, the government does not cite any authority in support of its position.[4]

---

[4] Nor should the government be permitted to import into the FISA process the doctrine of "good faith," either in the minimization context or generally with respect to probable cause. *See* Gov't Memo, at 55, 39-40. FISA already includes significantly reduced standards of probable cause, minimization, and judicial review. Adding the "good faith" doctrine to that mix would dilute the statutory protections of FISA – designed to place *some* brake, however slight and

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully submitted that Mr. Moalin's motion for suppression, and/or disclosure of the underlying FISA materials (the warrants, applications, and supporting declarations), and/or for an evidentiary hearing, should be granted.

Dated: 9 March 2012
      New York, New York

Respectfully submitted,

S/Joshua L. Dratel
Joshua L. Dratel
DRATEL & MYSLIWIEC, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707
jdratel@dratelmys.com

– Of Counsel –
Joshua L. Dratel
Alice L. Fontier

*Attorneys for Defendant Basaaly Moalin*

To:    THE HON. JEFFREY T. MILLER
        UNITED STATES DISTRICT JUDGE

        WILLIAM COLE
        CAROLINE HAN
        ASSISTANT UNITED STATES ATTORNEYS

---

impervious to review – to the point at which a meaningful challenge will be rendered impossible. *See also Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2440 (2011) (Breyer, J., dissenting) (criticizing "trend" of good faith exception swallowing the exclusionary rule); *Herring v. United States*, 555 U.S. 135, 157 (2009) (Ginsberg, J., dissenting) (criticizing the Court's "further erod[ing] " the rule).