**JOSHUA L. DRATEL**
Admitted *Pro Hac Vice*
**ALICE L. FONTIER**
California State Bar No. 229994
JOSHUA L. DRATEL, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
Telephone:  (212) 732-0707

Attorneys for Basaaly Moalin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER )**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 10-CR-4246 (JM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OF LAW IN |
| | ) | SUPPORT OF JOINT REQUEST |
| BASAALY MOALIN, *et. al* | ) | FOR "SAFE PASSAGE" |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Introduction**

This Joint Memorandum of Law is respectfully submitted in support of defendants Basaaly Moalin, Mohamed Mohamed Mohamud, Issa Doreh, and Ahmed Nasir Taalil Mohamud's, request for the government to provide a letter of "safe passage" to the seven defense witnesses that are scheduled to be deposed pursuant to Rule 15, Fed.R.Crim.P., in Djibouti between November 11 and 15, 2012.

**Statement of the Facts**

The seven prospective defense witnesses are Somali nationals, Najib Mohammad, Farah Shidane, Abukar Dahir Mohamed, Sheik Abdur Rahman, Sharif Qorey, Osman Isse Nor, and Hassan Mohamud Guled.  Each of these witnesses has agreed to be deposed in Djibouti, between November 11 and 15, 2012. The witnesses cannot obtain travel documents to the United States, and/or are not willing to travel to the United States to appear in Court.  However, each of the witnesses has made arrangements to appear in Djibouti to take part in the sworn depositions.

1

As set forth in the October 23, 2012, letter to the Court from Joshua L. Dratel, attached hereto as Exhibit 1 (the facts and statements set forth in this letter are incorporated herein), defense counsel has sought a letter of "safe passage" for each of the witnesses.  The government, despite previously stating on multiple occasions that safe passage "would not be a problem" has now reversed its position.  Accordingly, the defense now requests an Order compelling the government to issue a letter of safe passage.

Alternatively, the defense moves, for all of the reasons set forth in the initial Motion for Depositions, for an Order allowing the Rule 15, Fed.R.Crim.P., of Farah Shidane to occur in Somalia.  The government can participate by video conference, should it refuse to attend the deposition in Somalia.

### ARGUMENT

**"SAFE PASSAGE" IS NECESSARY TO GUARANTEE THAT THE DEFENDANTS RECEIVE A FAIR TRIAL AND IS CRITICAL TO THEIR SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE**

Seven relevant, material, and potentially exculpatory defense witnesses are Somali nationals, who currently reside in Somalia.  Since August 21, 2012, pursuant to an Order of the Court, defense counsel and the government have been conferring with each other as well as with Magistrate Judge Gallo, in an effort to schedule the taking of the defense witness testimony by deposition pursuant to Rule 15, Fed.R.Crim.P.

One witness, Farah Shidane, is a citizen of Somalia, but has dual nationality with Djibouti.  Mr. Shidane,  unlike the other witnesses, is also alleged to be an unindicted co-conspirator in this case.  For these reasons, the defense specifically sought a letter of safe passage for Mr. Shidane.  The safe passage letter would guarantee that the United States government would not arrest or otherwise detain Mr. Shidane because he appeared at the deposition in Djibouti.  A sample "safe passage" letter is attached hereto as Exhibit 2.  The government has stated that it "would make no promises" to any of the witnesses.  Accordingly, this request is for safe passage for all seven witnesses.

The defense is not requesting immunity or anything that would afford the witnesses license to commit perjury, or to avoid the consequences of admissions that might otherwise inculpate them.  The defense simply must insure that coming forward as material witnesses for the defense in Djibouti will

not—in and of itself—cause the witnesses to be arrested or otherwise detained while they are in Djibouti either in connection with their testimony.

### A.      *"Safe Passage" Is Necessary to Guarantee a Fair Trial*

The Sixth Amendment guarantees the defendant the right "to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor[.]" *U.S. Const, amend. VI*. The Supreme Court has explained that "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967).

The fact that the witnesses are not subject to compulsory process because they are in Somalia does not alter the defendants's Sixth Amendment rights. Rule 15, Fed.R.Crim.P., is the remedy for obtaining the testimony of material witnesses that are not subject to subpoena power. A copy of defendants' Rule 15 Motion and Reply motion are attached hereto as Exhibit 3 and 4 respectively (the facts and arguments set forth in the Motion and Reply are respectfully incorporated herein). For all of the reasons set for in the Motion for Depositions, the witnesses are all material to the defense  The government's assertion that the witnesses are traveling to Djibouti voluntarily, and accordingly should not receive "safe passage," is misleading. Defense counsel moved to take depositions of the witnesses in Somalia, where there would be no need for "safe passage," but the government objected to that locale. As a compromise, all parties agreed — at the government's request and for safety reasons — to conduct the depositions in Djibouti.

The testimony of each of the witnesses is material and necessary to the defense. A fair trial is not possible without the testimony of these witnesses. This is particularly true of Farah Shidane, who will offer exculpatory factual information pertaining to his receipt and use of funds transferred from the defendants.

### B.      *The Court Can Order "Safe Passage"*

As set forth in the October 23, 2102, letter to the Court, the government has recently changed its position regarding "safe passage." The government's sudden reversal and refusal to offer any of the witnesses safe passage is an effort to constrain the fact-finding process improperly. The witnesses are

essential to the defendants' right to a fair trial, and, as the Ninth Circuit has recognized in *United States v. Puchi*, 441 F.2d 697, 701 (9th Cir. 1971) – by affirming a District Court Order providing safe passage for defense witnesses, and finding no abuse of discretion – that the *courts* have authority to grant safe passage.

In an analogous context, the Ninth Circuit has long held that the Court can Order the government to offer use immunity to defense witnesses,

> under certain circumstances, such as where the refusal to testify is occasioned by prosecutorial misconduct, [and] use immunity for defense witnesses is necessary to protect and enforce a defendant's due process right to a fair trial.

*United States v. Lord*, 711 F.2d 887, 890 (9th Cir 1983). *See also United States v. Westerdahl*, 945 F.2d 1083 (9th Cir. 1991).

The Circuit's rule is premised on that established by the Third Circuit in *United States v. Herman*, 589 F.2d 1191 (3rd Cir. 1978). In *Herman*, the Third Circuit also recognized an alternate theory for provision of immunity by the Court, *id*., at 1204, and stated that

> a case might be made that the court has inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense. The Supreme Court has authorized such grants in suppression hearings where the defendant's testimony is necessary in order to determine whether a violation of his fourth amendment rights has occurred. *Simmons v. United States*, 390 U.S. 377 (1968).

*Id.*

As the Third Circuit has explained, Court-imposed immunity differs from immunity granted by statute (through the prosecutor) two respects:

> [f]irst the need for "judicial" immunity is triggered, not by prosecutorial misconduct or intentional distortion of the trial process, but by the fact that the defendant is prevented from presenting exculpatory evidence which is crucial to his case. Second, the immunity granted is a court decreed immunity; it is not achieved by any order directed to the executive, requiring the executive to provide statutory immunity.

*Gov't of Virgin Islands v. Smith*, 615 F.2d 964, 969-70 (3d Cir. 1980).

Here, the defense does not request immunity, which provides even greater protection than sought herein. Rather, the defense seeks a lesser remedy:  an Order directing the United States to provide safe

passage to and from the depositions in Djibouti.  As noted above, the Ninth Circuit has recognized that the Court can issue such an Order.  *See Puchi*, 441 F.2d at 701.

**C.**  ***Judicial Economy Is Best Served By Conducting All of the Foreign Depositions at the Same Time and Place as Scheduled***

As the Court is well aware, the parties and the Court have been in the process of scheduling the depositions of all seven defense witnesses since August 2012.  The logistics of conducting depositions of witnesses in Djibouti are tremendously difficult to arrange, and the commitment of resources – judicial, prosecutorial, and defense – devoted to conducting the deposition in Djibouti justifies making appropriate provisions for them *all* to be conducted during this trip.  Farah Shidane is a critical defense witness.  If he does not receive safe passage to and from Djibouti, the defense seeks an alternate means of obtaining his deposition.  Those alternatives include deposing him in person in Somalia, or deposing him in Somalia, with the Court and government on video conference.  Either one of these options is not likely to occur between November 11-15, 2012.  Delaying the deposition of Farah Shidane, will necessitate a second trip to Western Africa, which could jeopardize the current January 28, 2013, trial date that defendants (and presumably) do not want to adjourn under any circumstances.

**Conclusion**

For all the reasons set forth above, and in all papers previously filed, it is respectfully submitted that the defendants's joint motion for safe passage for the seven defense witnesses, should be granted in its entirety.

Dated: October 26, 2012
    New York, New York

Respectfully submitted,
  S/ JOSHUA L. DRATEL

**JOSHUA L. DRATEL**
**ALICE L. FONTIER**
DRATEL & MYSLIWIEC, P.C.

*Attorneys for Basaaly Moalin*

10cr4246 (JM)