LAURA E. DUFFY
United States Attorney
WILLIAM P. COLE
CAROLINE P. HAN
Assistant United States Attorney
Cal. State Bar No. 186772/250301
Federal Office Building
880 Front Street, Room 6293
San Diego, California   92101-8893
Telephone: (619) 546-6762/6968
Email:    William.P.Cole@usdoj.gov
          Caroline.Han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Crim. Case No. 10CR4246-JM |
|---|---|---|
| Plaintiff, | ) | **DECLARATION OF WILLIAM P. COLE IN SUPPORT OF SUPPLEMENTAL BRIEF IN OPPOSITION TO REQUEST TO COMPEL "SAFE PASSAGE" FOR THIRD-PARTY WITNESSES IN A FOREIGN NATION** |
| v. | ) | |
| BASAALY MOALIN, et al. | ) | |
| Defendants. | ) | Date: October 25, 2012<br>Time: 7:00 a.m<br>Judge: Hon. William V. Gallo |

I, William P. Cole, declare and state:

1.    I am an Assistant United States Attorney assigned to the above-captioned matter.

2.    On August 22, 2012, Judge Miller denied defendants' motion for Rule 15 depositions in Somalia.

3.    That same day, counsel for all parties (with the exception of Mr. Durkin) met with this Court in chambers to confer on alternatives.   The defense proposed depositions in Djibouti, representing that the witnesses could easily enter Djibouti.

4.    I stated that, before abandoning the notion of the witnesses testifying at trial, the defense should determine whether any of the witnesses would voluntarily come to the United States under any

circumstances, so that we could determine what those circumstances may be. I did not promise to meet any such condition, but wanted to know if there were any.

5. After the meeting in chambers, defense counsel met with Assistant United States Attorney Caroline Han and me at the United States Attorney's Office. During that meeting, Mr. Dratel stated that he had a sample "safe passage" letter from a New York case that he could provide me. I told him that I had no experience ever dealing with safe passage, but I would be happy to take a look at the letter. I did not promise or state that I either would or could guarantee safe passage to any witness. Mr. Dratel subsequently sent me via e-mail the sample safe passage letter, a copy of which is attached hereto as Exhibit 1.

6. At a subsequent status conference with this Court, the defense reported that no witness was willing to travel to the United States under any conditions whatsoever. Accordingly, I never even determined the advisability or feasability of assuring safe passage for testimony at trial.

7. In advising that no witness would come to the United States under any circumstances, the defense continued to propose Djibouti as the deposition location. The United States expressed reservations about Djibouti and inquired whether Kenya was feasible. The defense expressed some doubt about the witnesses' ability to travel to Kenya, but stated they would explore this. However, at the next status conference, the defense reported that the witnesses did not know if they could enter Kenya, that the visa process was indeterminate, and that it may require bribes. To my recollection, this ended any discussion of Kenya as a deposition location.

8. The defense has since claimed that, during an August 29, 2012 telephone call with Mr. Durkin and Ms. Linda Moreno, I stated that the United States had no intention of requesting a provisional arrest warrant for any of the witnesses in Kenya, and that I indicated that, if needed, I could overcome any issue regarding safe passage to Kenya. In candor, I cannot recall the substance of that particular conversation or its context. However, assuming I stated that my office had no intention of seeking provisional arrest warrants in Kenya, I do not believe that I ever guaranteed safe passage to and from Kenya – something I had no experience with in any prior case, and something I would not do in a terrorism matter without appropriate authorization. In any event, the defense quickly informed the Court and my office that Kenya was not a viable option.

9. Furthermore, I never made any promise or guarantee of safe passage to or from Djibouti for any proposed deponent. In fact, prior to October 10, 2012, I do not recall any defense counsel ever asking my office to guarantee safe passage to any witness in Djibouti. And, despite the numerous status conferences with the Court, I cannot recall the defense ever informing the Court that the witnesses would only travel to Djibouti if the United States promised safe passage, nor can I recall the defense even alluding to this as a potential issue. Rather, my recollection is that the defense consistently indicated that the witnesses could and would voluntarily appear in Djibouti for the depositions.

10. However, on October 10, 2012, Mr. Durkin called me to ask whether I could provide safe passage assurances for the Djibouti depositions. I informed him that while I could tell him that my office did not presently have any process on the proposed deponents,

3

I did not know that I could guarantee safe passage and that I would get back to him. The next day, I sent Mr. Durkin an e-mail informing him that my office was not in a position to give any assurances to the deponents as to safe passage, and that our understanding was that the witnesses were appearing there voluntarily.

11. Neither Ms. Han nor I have ever had any contact or communication with any of the proposed deponents.

I declare under penalty of perjury that the foregoing is true to the best of my knowledge, recollection and belief.

Dated: October 26, 2012

_____
WILLIAM P. COLE