# EXHIBIT 1

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,          )
                                   )
              PLAINTIFF,           )     CASE NO. 10CR4246-JM(WVG)
                                   )
VS.                                )     SAN DIEGO, CALIFORNIA
                                   )
BASAALY SAEED MOALIN,              )     MONDAY,
MOHAMED MOHAMED MOHAMUD,           )     OCTOBER 29, 2012
ISSA DOREH,                        )     7:00 A.M.
AHMED NASIR TAALIL MOHAMUD,        )
                                   )
              DEFENDANTS.          )
_____    )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING RE: SAFE PASSAGE

BEFORE THE HONORABLE WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE


CAMERON P. KIRCHER
CSR NO. 9427, RPR, CRR, RMR
880 FRONT STREET, ROOM 4290
SAN DIEGO, CALIFORNIA  92101
PHONE:  (619) 239-4588
E-MAIL:  CPKIRCHER@GMAIL.COM


COMPUTER-AIDED TRANSCRIPTION

2

APPEARANCES:

FOR THE GOVERNMENT:        LAURA E. DUFFY, U.S. ATTORNEY
                          BY:  WILLIAM P. COLE, ESQ.
                               CAROLINE P. HAN, ESQ.
                          ASSISTANT U.S. ATTORNEY
                          880 FRONT STREET
                          SAN DIEGO, CALIFORNIA  92101


FOR DEFENDANT MOALIN:      LAW OFFICES OF JOSHUA DRATEL
                          ATTORNEYS AT LAW
                          BY:  JOSHUA L. DRATEL, ESQ.
                               ALICE L. FONTIER, ESQ.
                          2 WALL STREET
                          3RD FLOOR
                          NEW YORK, NEW YORK  10005


FOR DEFENDANT MOHAMUD:     LINDA MORENO
                          ATTORNEY AT LAW
                          PO BOX 10985
                          TAMPA, FLORIDA  33679


FOR DEFENDANT DOREH:       AHMED GHAPPOUR
                          ATTORNEY AT LAW
                          PO BOX 30267
                          SEATTLE, WASHINGTON  98102


FOR DEFENDANT MOHAMUD:     DURKIN & ROBERTS
                          ATTORNEYS AT LAW
                          BY:  THOMAS A. DURKIN, ESQ.
                          2446 NORTH CLARK STREET
                          CHICAGO, ILLINOIS  60614

COMPUTER-AIDED TRANSCRIPTION

3

SAN DIEGO, CALIFORNIA – MONDAY, OCTOBER 29, 2012

7:00 A.M.

THE COURT:  ALL RIGHT.  GOOD MORNING, EVERYONE.
THIS IS BILL GALLO ON THE LINE.

THIS IS THE CASE OF THE UNITED STATES VS. MOALIN,
ET AL., 10CR4246.  PRESENT IN THE COURTROOM ARE MR. COLE AND
MS. HAN, AND THEN WE HAVE THE OTHERS ON THE LINE.  I'LL MAKE
THE APPEARANCES FOR THE PARTIES, JUST TO MAKE SURE THAT I'VE
GOT THE LINEUP CORRECT.

AS I INDICATED, MS. HALL –– OR MR. COLE AND MS. HAN
ARE PRESENT IN COURT.  ON THE LINE I BELIEVE WE HAVE
MR. DRATEL; IS THAT CORRECT?

MR. DRATEL:  YES, YOUR HONOR.

THE COURT:  OKAY.  GOOD MORNING.

MR. DRATEL:  GOOD MORNING.

THE COURT:  MS. FONTIER.

MS. FONTIER:  YES.  GOOD MORNING, YOUR HONOR.

THE COURT:  GOOD MORNING.

MR. GHAPPOUR.

MR. GHAPPOUR:  GOOD MORNING, YOUR HONOR.

THE COURT:  GOOD MORNING.

MS. MORENO.

MS. MORENO:  HELLO, JUDGE.

THE COURT:  GOOD MORNING.

AND MR. DURKIN.

COMPUTER–AIDED TRANSCRIPTION

4

MR. DURKIN:  GOOD MORNING, JUDGE.

THE COURT:  GOOD MORNING.

ALL RIGHT.  SO FOR THOSE OF YOU ON THE EAST COAST, I HOPE YOU'RE SURVIVING FRANKENSTORM.  AND IF YOU NEED TO EVACUATE AT ANY TIME DURING THE HEARING, JUST LET ME KNOW.

ALL RIGHT.  ON TAP FOR THIS MORNING -- WE ARE ON THE RECORD AND PRESENTLY WE DO HAVE A COURT REPORTER IN THE COURTROOM, WHO IS TAKING DOWN EVERY WORD.  SO IF THERE IS A NEED FOR A QUICK TURNAROUND ON A TRANSCRIPT, I BELIEVE WE'LL BE ABLE TO ACCOMPLISH THAT FOR EITHER SIDE WHO MAY DESIRE TO HAVE ONE.

WE'RE HERE TODAY TO DISCUSS AND RESOLVE THE ISSUE OF SAFE PASSAGE.  DEFENDANTS HAVE BROUGHT TO THE COURT'S ATTENTION LAST WEEK THAT THE SAFE PASSAGE ISSUE WITH RESPECT TO AT LEAST ONE WITNESS WHO IS TO BE DEPOSED AND PERHAPS OTHERS WAS DISCUSSED IN THE PAST BETWEEN THE ATTORNEYS FOR BOTH SIDES, AND I'M GOING TO LET THE DEFENSE GO FIRST ON THIS ISSUE, BECAUSE I BELIEVE IT'S THEIR MOTION FOR THIS TO BE RESOLVED.

SO WHO SPEAKS FOR THE DEFENSE ON THIS?

MR. DRATEL:  WELL, YOUR HONOR, I SPOKE LAST TIME. THIS IS MR. DRATEL.

THE COURT:  GO AHEAD.

MR. DRATEL:  UNFORTUNATELY, I DON'T HAVE MY LETTER WITH ME BECAUSE I HAVE NOT BEEN ABLE TO GET TO MY OFFICE

5

BECAUSE OF THE STORM.  AND I'LL JUST SPEAK FROM -- GENERALLY, AND IF ANYONE WANTS TO SUPPLEMENT, THAT'S FINE.

OUR POSITION IS THAT WE HAVE BEEN ENDEAVORING WITH THE COURT AND THE GOVERNMENT TO ACCOMPLISH THESE DEPOSITIONS IN DJIBOUTI IN ONE -- IN ONE EXCURSION ESSENTIALLY, AND TO DO IT AS EFFICIENTLY AS POSSIBLE WITH A SIGNIFICANT DEVOTION OF RESOURCES FROM ALL THREE POINTS; FROM THE DEFENSE, FROM THE COURT, FROM THE GOVERNMENT.  AND JUST RECENTLY THE GOVERNMENT HAD SHIFTED ITS POSITION WITH RESPECT TO THE QUESTION OF WHAT WOULD OCCUR IN DJIBOUTI WITH RESPECT TO THE WITNESSES, AT LEAST ONE WITNESS IN PARTICULAR, IN TERMS OF THE UNITED STATES' ACTIONS.

WE HAD INITIALLY TALKED ABOUT THE POSSIBILITY OF SAFE PASSAGE TO THE UNITED STATES.  THAT WAS OBVIATED BY THE FACT THAT THE WITNESSES WOULD NOT COME TO THE UNITED STATES. WE TALKED ABOUT THE POSSIBILITY OF SAFE PASSAGE TO KENYA.  WE TALKED ABOUT DJIBOUTI.  WE TALKED ABOUT THE FACT THAT -- WE WOULD ACKNOWLEDGE THAT THE U.S. COULD NOT BIND THE GOVERNMENT IN DJIBOUTI, BUT THAT CERTAINLY THE UNITED STATES COULD BIND ITSELF.

AND THEN SUDDENLY THOSE DISCUSSIONS BROKE OFF WITH A CATEGORICAL POSITION BY THE U.S. THAT THEY WOULD NOT COMMIT TO ANYTHING UNTIL WE KNOW WHAT WITNESSES, IN PARTICULAR A CO-CONSPIRATOR, AN UNINDICTED CO-CONSPIRATOR, MR. SHIDANE --

THE REPORTER:  I'M SORRY.  WAIT, WAIT, WAIT.

COMPUTER-AIDED TRANSCRIPTION

6

THE COURT: MR. DRATEL, SINCE WE DO HAVE A COURT REPORTER IN THE COURTROOM, AND BECAUSE WE ARE USING A TELEPHONE, SOMETIMES THE PRONUNCIATION OF CERTAIN WORDS, PARTICULARLY NAMES, MAY NOT BE AS CLEAR AS WE WOULD HOPE TO MAKE SURE WE CAPTURE THE RECORD CORRECTLY.

SO COULD YOU PLEASE PRONOUNCE AND SPELL THE NAME OF THE WITNESS THAT YOU ARE REFERRING TO, WHO IS THE UNINDICTED CO-CONSPIRATOR, WHO YOU JUST MENTIONED.

MR. DRATEL: YES. S-H-I-D-N -- I'M SORRY. S-H-I-D-A-N-E. I'LL JUST CALL HIM MR. SHIDANE FOR PURPOSES OF OUR DISCUSSION TODAY.

SO HIS SITUATION IS THE MOST PROBLEMATIC, BECAUSE HE'S AN UNINDICTED CO-CONSPIRATOR, WHO CONCEIVABLY -- WELL, WHO COULD CONCEIVABLY HAVE EXPOSURE. THE OTHER WITNESSES ARE NOT UNINDICTED CO-CONSPIRATORS AS FAR AS WE'VE BEEN TOLD, OR AS FAR AS WE KNOW, AND WE DON'T KNOW WHETHER THAT'S GOING TO BE AN ISSUE OR NOT, AND WE DON'T THINK SO. WE THINK WE CAN GET THOSE WITNESSES TO DJIBOUTI AND BACK. WE'RE JUST NOT SURE ABOUT MR. SHIDANE RIGHT NOW BECAUSE OF THE FAILURE OF THE GOVERNMENT TO PROVIDE THE SAFE PASSAGE, WHICH HAS BEEN DONE IN OTHER CASES.

WE'VE PROVIDED THE GOVERNMENT A LETTER, I THINK WE PROVIDED IT TO THE COURT AS WELL AS AN EXHIBIT, IN OUR -- TO OUR LETTER. AND IF I'M -- I THINK SO. DID WE DO THAT?

THE COURT: YES.

7

MR. DRATEL:  OKAY.  THANK YOU, YOUR HONOR.

AND SO THIS IS NOT SOMETHING THAT IS REINVENTING THE WHEEL.  THIS IS JUST DOING SOMETHING THAT IS PART OF THE PROCESS OF MAKING SURE THAT THE DEFENDANTS GET A FAIR TRIAL. THIS IS ALL PART OF THE PROCESS OF ENSURING THAT WE HAVE THE OPPORTUNITY TO HAVE A DEFENSE IN A CASE IN WHICH THE GOVERNMENT IS CHARGING THIS CRIMINAL CONDUCT WITH RESPECT TO PEOPLE WHO ARE HALF A WORLD AWAY, IN AN AREA THAT IS EXTRAORDINARILY INACCESSIBLE TO US, AND IN WHICH WE DO NOT HAVE THE ABILITY TO WIRETAP, TO GET FOREIGN GOVERNMENT INTELLIGENCE OR ALL THOSE THINGS WE CAN'T DO.  WE HAVE TO GET THESE WITNESSES TO TESTIFY SO THAT WE CAN HAVE A SHOT AT THIS TRIAL.

AND THIS IS AN EXTRAORDINARILY IMPORTANT WITNESS. THIS IS SOMEONE WHOM THE GOVERNMENT CLAIMS -- WE'RE TALKING ABOUT MR. SHIDANE NOW.  THIS IS SOMEONE WHOM THE GOVERNMENT CLAIMS IS AN UNINDICTED CO-CONSPIRATOR; YET, WE HAVE EXTRAORDINARILY CONTRARY INFORMATION ABOUT HIM AND HIS RELATIONSHIP WITH THE SOMALI GOVERNMENT AS IT EXISTS RIGHT NOW AND AS IT EXISTED THEN, HIS RELATIONSHIP WITH AL-SHABAAB, NOT AS AN AL-SHABAAB OPERATIVE, BUT AS THE CONTRARY, THE OPPOSITE, AS AN AL-SHABAAB TARGET.  SO WE NEED TO GET THAT INFORMATION IN THE RECORD IN FRONT OF A JURY SO WE CAN HAVE A FAIR TRIAL.

THE COURT:  ALL RIGHT.  ANYBODY ELSE?

8

MR. DRATEL: AND I WOULD SUGGEST THAT THE COURT, JUST LIKE THE NINTH CIRCUIT PERMITS THE COURT TO ORDER IMMUNITY, WHICH IS REALLY TO ME A FAR GREATER -- IS CONFERRING A FAR GREATER -- IS A FAR GREATER EXERCISE THAN SIMPLY SAFE PASSAGE IN THIS CONTEXT, THAT WE WOULD HOPE THAT WE COULD DO THAT AND GET MR. SHIDANE THERE FOR THE TESTIMONY; AND IF NOT, THAT WE SHOULD BE DOING IT SOME OTHER WAY FROM SOMALIA DOWN THE ROAD AS QUICKLY AS POSSIBLE IN A MANNER THAT THE GOVERNMENT CAN PARTICIPATE IN ANY WAY THEY LIKE, BY VIDEO, THEY CAN GO TO MR. SHIDANE, WHATEVER.

WE DON'T WANT -- YOU KNOW, WE DON'T WANT TO COMPLICATE THIS PROCESS ANY MORE THAN HAS ALREADY BEEN, BUT WE NEED TO FOR THE CLIENTS' CONSTITUTIONAL RIGHTS TO A FAIR TRIAL.

THE COURT: ALL RIGHT. ANYBODY ELSE FROM THE DEFENSE LIKE TO ADD THEIR THOUGHTS? NO? OKAY. ALL RIGHT.

MR. COLE OR MS. HAN.

MR. COLE: YES. THANK YOU, YOUR HONOR.

WE HAVE LOOKED AT THIS CLOSELY. WE'VE CONSIDERED IT IN THE CONTEXT OF THE TYPE OF CASE THAT IT IS. IT INVOLVES A THIRD COUNTRY. THE UNITED STATES SIMPLY IS NOT GOING TO MAKE ANY ASSURANCES IN THIS TYPE OF A CONTEXT WHERE A GROUP OF WITNESSES, INCLUDING AN UNINDICTED CO-CONSPIRATOR, WILL BE TRAVELING TO A THIRD COUNTRY. WE ARE GOING -- WE HAVE WORKED HOPEFULLY WELL, AND COOPERATIVELY TO WORK OUT THE LOGISTICAL

COMPUTER-AIDED TRANSCRIPTION

9

ARRANGEMENTS TO HELP MAKE THIS HAPPEN. WE CERTAINLY HAVE NO INTEREST IN SEEING IT NOT HAPPEN.

BUT AT THE SAME TIME, AS A MATTER OF POLICY, WE ARE NOT GOING TO APPEAR -- FOR ONE THING, WE'RE NOT GOING TO APPEAR TO BE SPONSORING THESE WITNESSES OR VOUCHING FOR THEM IN ANY WAY TO A THIRD-PARTY GOVERNMENT. I KNOW THE DEFENSE MAY NOT SEE THAT AS AN ISSUE OR CONCERN, BUT THE UNITED STATES IS NOT GOING TO BE MAKING ASSURANCES TO A GROUP OF WITNESSES IN A TERRORISM CASE WHO ARE HEADED TO A THIRD COUNTRY, PARTICULARLY WHERE ONE OF THEM IS AN UNINDICTED CO-CONSPIRATOR IN A TERRORISM CASE. IT'S SIMPLY NOT GOING TO HAPPEN. IT WOULDN'T HAPPEN EVEN IF I WANTED IT TO. IT WILL NOT BE AUTHORIZED. AND SO WE ARE NOT GOING TO BE ABLE TO DO THAT.

THERE WERE LOTS OF DISCUSSIONS ALONG THE WAY HERE IN EXPLORING, IN THE CONTEXT THAT NEITHER MS. HAN OR MYSELF HAVE EVER LITIGATED IN, THE NOTION OF DEPOSITIONS OVERSEAS IN THIS TYPE OF A MATTER, IN THIS TYPE OF A CIRCUMSTANCE. THERE WERE PRELIMINARY DISCUSSIONS ABOUT THEM COMING TO THE U.S. IN THAT CONTEXT, THERE WAS DISCUSSION OF SAFE PASSAGE. THERE HAS BEEN DISCUSSIONS ABOUT A LOT OF THINGS IN THE CONTEXT THAT WERE ALL PRELIMINARY. AND AS WE SAW HOW THIS SHAPED UP AND FORMED, THERE HAS NEVER BEEN A COMMITMENT TO PROVIDE THESE WITNESSES SAFE PASSAGE ANYWHERE. AND WE CANNOT MAKE THAT COMMITMENT, NOT AUTHORIZED TO MAKE THAT COMMITMENT.

10

AND WE BELIEVE THAT UNDER THE NINTH CIRCUIT LAW THAT WAS JUST REFERRED TO, THERE IS NO -- THERE IS NO BASIS FOR -- TO COMPEL THE UNITED STATES TO PROVIDE THESE ASSURANCES. THERE SIMPLY HAS BEEN NO SHOWING OF ANYTHING. ONE, THERE ARE NO CASES IN THE NINTH CIRCUIT THAT EVEN LAY OUT A TEST FOR COMPELLING SAFE PASSAGE. THE CLOSEST ANALOGY THAT MR. DURKIN REFERRED TO IS THE COMPELLED USE IMMUNITY. AND EVEN THERE, UNDER THE TWO PRONGS OF THE STRAUB TEST, THERE JUST SIMPLY IS NO BASIS HERE TO COMPEL IT. THERE IS SIMPLY NOTHING HERE THAT WOULD RAISE A SITUATION WHERE SAFE PASSAGE WOULD BE COMPELLED.

WE INTEND TO NOT STAND IN THE WAY OF ANYONE SHOWING UP, BUT WE DON'T INTEND TO DO ANYTHING FURTHER IN TERMS OF INDUCING THEM TO SHOW UP.

MS. MORENO: IF I MAY SPEAK. THIS IS LINDA MORENO.

THE COURT: MS. MORENO, YOU'RE GOING TO HAVE TO SPEAK UP.

MS. MORENO: OKAY. I'M GOING TO DO MY VERY BEST. IS THAT GOOD? IS THAT BETTER?

THE COURT: SLIGHTLY. GO AHEAD.

MS. MORENO: THE PROBLEM IS THAT MR. COLE DOESN'T TELL THE WHOLE STORY, NEITHER IN HIS REPRESENTATION TO THE COURT JUST NOW OR IN HIS ATTACHED DECLARATION TO THE MOTION FILED ON THE 26TH OF OCTOBER.

COMPUTER-AIDED TRANSCRIPTION

11

WHAT HE FAILED TO ADDRESS IN THAT DECLARATION, AND WHICH WAS REALLY PART OF THE INCENTIVE FOR US TO BRING THIS TO THE COURT'S ATTENTION, WAS THE CONVERSATION THAT HE HAD WITH MR. DURKIN AND WITH ME ON OCTOBER THE 12TH WHERE HE TOLD US THAT THERE WAS MORE THAN ONE OF THE WITNESSES WHO HAD VULNERABILITY, THAT THEY NEEDED TO -- THEY SHOULD GET THEIR OWN LAWYER, THAT HE COULDN'T PROMISE WHAT HE WAS GOING TO DO ONCE WE GOT TO DJIBOUTI.

NOW, QUITE FRANKLY, IN OUR MINDS, LOOKING AT THAT VERY SOBERLY, THAT WAS THE FIRST TIME THAT WE FELT THAT THERE WAS REALLY -- AND I'M NOT TRYING TO BE DRAMATIC HERE. BUT WE FELT THAT THE WITNESS MIGHT BE SLIGHTLY YOU COULD SAY VULNERABLE, I WOULD SAY THREATENED, IN SOME FASHION.

NOW, WE DID NOT WANT TO SPEND ALL THESE RESOURCES, TRAVEL THOUSANDS OF MILES TO A PLACE WHERE ONE OR MORE OF THESE WITNESSES COULD BE DETAINED OR ARRESTED ON ANYBODY'S AUTHORITY. THAT'S THE FIRST THING.

THE COURT: I'M SORRY, MS. MORENO. COULD YOU REPEAT THAT LAST SENTENCE.

MS. MORENO: IF I COULD REMEMBER IT, YOUR HONOR.

WE DID NOT WISH TO TRAVEL AND HAVE OUR RESOURCES, YOUR HONOR'S RESOURCES, THE GOVERNMENT'S RESOURCES EXPENDED ONLY FOR THIS TO RESULT IN A SCENARIO WHERE ONE OR MORE OF OUR DEFENSE WITNESSES WERE GOING TO BE DETAINED OR ARRESTED. WE FELT AFTER THAT CONVERSATION THAT MR. COLE MIGHT HAVE SOME

12

INFORMATION THAT SOME OF THESE WITNESSES HAD SOME CRIMINAL VULNERABILITY, AND WE ASKED FOR SPECIFICS. BECAUSE WE TOLD HIM THAT WE WERE ON TOP --

THE COURT: MS. MORENO.

MS. MORENO: I'M SORRY.

THE COURT: AGAIN, ONLY BECAUSE WE'RE USING THE TELEPHONE HERE, YOU'RE GOING TO HAVE TO SLOW DOWN AND SPEAK AS LOUDLY AS YOU CAN AND ENUNCIATE. SO WE MISSED A FEW THINGS SO GO BACK.

MS. MORENO: OKAY. I'M NOT SURE IF I COULD BE HEARD OR NOT. BUT I'M TRYING TO UNDERSCORE THAT MR. COLE HAS FAILED TO ADDRESS THE LAST COMMUNICATION HE HAD WITH DEFENSE COUNSEL ON OCTOBER THE 12TH, WHICH BASICALLY HAD HIM INDICATING TO US THAT MORE THAN ONE OF OUR WITNESSES COULD BE CRIMINALLY VULNERABLE. AND I'M QUOTING HIM, THAT SOME OF THE WITNESSES HAVE LIABILITY AND THEY SHOULD GET THEIR OWN LAWYER.

HE FURTHER SAID THAT IF THEY TESTIFIED IN THEIR DEPOSITION CONSISTENT WITH THEIR PROFFERED TESTIMONY, THEY WOULDN'T BE TELLING THE TRUTH. AND WHILE ON THAT DAY, ON OCTOBER THE 12TH, HE SAID THERE WAS NO WARRANT OR SECRET INDICTMENT OUT THERE, HE WAS NOT GOING TO GUARANTY WHAT WOULD HAPPEN ONCE THE WITNESSES WERE IN DJIBOUTI.

IS THAT CLEAR?

MR. DRATEL: ALSO --

13

THE COURT:  HOLD ON.  MS. MORENO.

MR. DRATEL:  -- MS. MORENO WAS IN THE PROCESS OF EXPANDING ON THAT WHEN --

THE COURT:  IS THIS MR. DURKIN?

MR. DRATEL:  -- WHEN YOU HAD TO ASK HER TO SLOW DOWN.

ONE OF THE OTHER THINGS IS THAT WE DID ASK THE GOVERNMENT IN WRITING AFTER THE CONVERSATION FOR INFORMATION THAT -- THAT WOULD PUT THE NEGOTIATIONS IN A DIFFERENT FRAMEWORK IN THIS SENSE.  WE DID NOT WANT TO TRAVEL HALFWAY AROUND THE WORLD, WE DID NOT WANT -- AS LAWYERS, WE DID NOT WANT TO BE PARTIES TO A SITUATION IN WHICH THE GOVERNMENT IS CLAIMING THAT THESE WITNESSES ARE ALL GOING TO LIE.

IF THEY CAN DEMONSTRATE THAT NOW, WHY BOTHER TO GO. IF THIS IS ALL --

THE REPORTER:  I'M SORRY.  WAIT, WAIT, WAIT, WAIT.

THE COURT:  MR. DRATEL.  MR. DRATEL.  MR. DRATEL. MR. DRATEL.

THE REPORTER:  I CAN'T GET IT.

THE COURT:  MR. DRATEL.  MR. DRATEL, STOP.

MR. DRATEL:  OKAY.

THE COURT:  LET ME CAUTION EVERYONE WHO IS ON THE TELEPHONE THAT YOU'RE ON THE TELEPHONE.  AND WHEN YOU START SPEAKING AT THE CYCLIC RATE, PARTICULARLY SINCE YOU'RE ON THE PHONE, AND WE'RE USING A SOUND SYSTEM HERE IN THE COURT THAT

14

WE MAY NOT BE ABLE TO CATCH EVERY WORD THAT YOU'RE SAYING IF YOU'RE GOING TO SPEAK FAST.

SO IF YOU WANT US TO GET THIS RECORD AND GET IT AS ACCURATE AS POSSIBLE, YOU'RE GOING TO HAVE TO SLOW DOWN.  I KNOW YOU'RE EXCITED, BUT SLOW DOWN.

MR. DRATEL:  THANK YOU, YOUR HONOR.  I APOLOGIZE.

THE COURT:  BACK UP.

MR. DRATEL:  I'LL TRY AGAIN.

THAT WE DID NOT WANT TO PROCEED WITH THESE DEPOSITIONS HALFWAY AROUND THE WORLD AND PUT EVERYBODY AT THE INCONVENIENCE OF MAKING THIS TRIP IF THE GOVERNMENT COULD DEMONSTRATE IN ADVANCE THAT THESE WITNESSES WERE LYING SO MUCH THAT THE GOVERNMENT IS SO CONVINCED THAT THEY ARE LYING THAT THEY ARE UNWILLING TO GIVE THEM SAFE PASSAGE, EVEN JUST TO COME AND GO FROM DJIBOUTI.

WE SAID, WELL, LET US KNOW IF THAT'S THE CASE.  IF YOU HAVE SOMETHING THAT IS SO COMPELLING, WE DON'T WANT TO JUST GO THERE AND PUT ON WITNESSES WHO YOU HAVE CONCLUSIVE EVIDENCE ARE LYING.  WE THINK THEY ARE TELLING THE TRUTH.  WE ARE OPERATING IN GOOD FAITH HERE.  THE GOVERNMENT DECLINED.  THAT'S THEIR PREROGATIVE.  THEY DECLINED.  BUT -- AND THAT'S WHAT MS. MORENO IS ALSO SAYING, WHICH I THINK SHE DID NOT ADD WHEN SHE REPEATED HER PRESENTATION.

I ALSO JUST WANT TO RESPOND TO MR. COLE IN THREE RESPECTS.  ONE IS THAT THE SAFE PASSAGE LETTER THAT I

COMPUTER-AIDED TRANSCRIPTION

15

PROVIDED WAS IN A TERRORISM CASE.  IT WAS A NARCOTERRORISM CASE INVOLVING THE COLOMBIAN FARC, THE COLOMBIAN REVOLUTIONARY ORGANIZATION.  NUMBER TWO, THERE IS NO DIFFERENT CONSTITUTION FOR TERRORISM CASES THAN THERE IS FOR OTHER CASES.  AND, THIRD, IS THAT, IN TERMS OF THE IMMUNITY TEST, WE'RE NOT ASKING FOR SOMETHING AS BLANKET AS IMMUNITY. WE ARE ASKING FOR A VERY SMALL SUBSET OF THAT.

AND IF WHAT THE GOVERNMENT IS TELLING US IS THAT THEY DON'T HAVE THE AUTHORITY IN THIS CASE, IT'S SOME DECISION MADE BY SOMEONE ELSE SOMEWHERE, THEN LET US KNOW THAT THAT'S WHAT IT IS AND WE OUGHT TO ADDRESS THAT.  IT'S NOT A QUESTION OF WHAT IS RIGHT IN THIS CASE AND WHAT DEFENDANTS ARE ENTITLED TO, BUT RATHER IT'S SOME OTHER -- AN AGENCY OR SOME OTHER PART OF THE GOVERNMENT THAT'S MAKING A DECISION THAT'S AFFECTING OUR CLIENTS' RIGHTS.  THAT'S WHAT WE THINK IS NOT A REASON NOT TO GRANT SAFE PASSAGE.

THE COURT:  GO AHEAD, MR. COLE.

MR. COLE:  YES, YOUR HONOR.

FIRST, I WANT TO SAY THAT MR. DRATEL ENDED ABOUT TALKING ABOUT WHAT THE DEFENSE IS ENTITLED TO.  THE GOVERNMENT DISAGREES THAT THEY ARE ENTITLED TO ANYTHING. THERE HAS BEEN NO SHOWING UNDER THE LAW THAT THEY ARE ENTITLED TO UNILATERALLY REQUIRE THE UNITED STATES TO PROVIDE SAFE PASSAGE.

SECONDLY, THE CONVERSATION THAT MS. MORENO REFERRED

COMPUTER-AIDED TRANSCRIPTION

16

TO, I WANT TO PUT THAT IN CONTEXT JUST TO MAKE SURE THE RECORD IS CLEAR. THE UNITED STATES WAS MINDING ITS OWN BUSINESS. I WAS SITTING IN MY OFFICE. I DID NOT REACH OUT TO MS. MORENO OR MR. DURKIN. THEY REACHED OUT TO ME AND BEGAN PRESSING ME AS TO WHETHER I WOULD GIVE SAFE PASSAGE, AND IF NOT, WHY. WE'VE HAD A VERY COOPERATIVE RELATIONSHIP IN THIS CASE. I'VE RESPECTED THEM AND ENJOYED OUR CONVERSATIONS.

I PROBABLY SHOULD NEVER HAVE ENGAGED IN THAT CONVERSATION AT ALL. I THOUGHT I COULD SPEAK WITH THEM SOMEWHAT FREELY ABOUT MY CONCERNS ABOUT THEIR WITNESSES. I NEVER SPOKE TO THEIR WITNESSES OR TO THEIR WITNESSES' REPRESENTATIVES AND HAD NO INTENTION OF DOING SO.

NOW THEY ARE SUGGESTING THAT BECAUSE THEY CALLED ME AND ASKED ME WHY I WOULDN'T GRANT SAFE PASSAGE THAT I WAS THREATENING THEIR WITNESSES. AND I TAKE EXCEPTION TO THAT. I WAS RESPONDING TO DEFENSE COUNSEL'S CALL TO ME. I DID NOT REACH OUT IN ANY AFFIRMATIVE WAY TO STIR THE POT ON THIS ISSUE WHATSOEVER. AND, OF COURSE, I'M NOT GOING TO GO FURTHER AND PROVIDE WORK PRODUCT OR MENTAL IMPRESSIONS AS TO HOW WE MAY CROSS-EXAMINE THEIR WITNESSES WHEN WE SHOW UP AT A DEPOSITION. WE HAVE NO INTENTION OF DOING THAT, OBVIOUSLY.

AND, FINALLY, THE ISSUE OF WHETHER OR NOT THEY WOULD LIE OR NOT IS IRRELEVANT BECAUSE THE SAFE PASSAGE THAT WAS REQUESTED BY THE DEFENSE HAD A CARVE-OUT FOR PERJURY ANYWAYS.

17

AND SO THIS IS NOT ABOUT WHETHER THESE PEOPLE ARE GOING TO LIE AT A DEPOSITION OR NOT. THIS HAS NOTHING TO DO WITH THAT. BECAUSE THE VERY LETTER OF SAFE PASSAGE THAT THE DEFENSE REQUESTED CARVED OUT PERJURY AND ALLOWED THE WITNESS TO BE ARRESTED FOR THAT PURPOSE.

THIS IS ABOUT THE NOTION OF PROVIDING ASSURANCES FROM THE OUTSET REGARDLESS, BEFORE THEY EVEN TESTIFY, THAT THEY CAN COME IN AND EXIT WITHOUT -- WITH A 100 PERCENT GUARANTY THAT THE UNITED STATES WOULD NOT MAKE AN ARREST. AND AS I'VE STATED, WE ARE NOT IN A POSITION TO PROVIDE THAT ASSURANCE, AND I HAVE NOT SEEN THE CASE LAW THAT COMPELS IT.

THE COURT: ALL RIGHT. THANK YOU.

LET ME OFFER MY IMPRESSIONS ON THIS. MY RECOLLECTION IS AT THE VERY FIRST MEETING THAT WE HAD AND I BELIEVE THE ONLY ONE THAT WE'VE HAD WHERE ALL COUNSEL WERE PRESENT WAS BACK IN AUGUST. IT WAS SHORTLY AFTER A HEARING THAT YOU HAD BEFORE JUDGE MILLER. THE ONLY ATTORNEY NOT PRESENT, AS I RECALL, IS MR. DURKIN. EVERYONE ELSE WAS PRESENT AND WE WERE IN MY OFFICE.

I DO RECALL THAT SAFE PASSAGE WAS ADDRESSED, MORE OR LESS IN PASSING. AND MY RECOLLECTION IS MORE IN LINE WITH WHAT MR. COLE HAS SET FORTH IN HIS DECLARATION, AND THAT IS WHAT WOULD IT TAKE TO HAVE THE SEVEN OR -- THEN, AT THAT TIME, EIGHT WITNESSES COME TO THE UNITED STATES TO TESTIFY? BASICALLY, GIVE US YOUR WISH LIST.

COMPUTER-AIDED TRANSCRIPTION

18

BECAUSE I THINK WE ALL RECOGNIZE IS THAT LIVE TESTIMONY IN FRONT OF A JURY IS BETTER THAN A VIDEOTAPED DEPOSITION. I THINK WE WOULD ALL AGREE TO THAT. AND SO HAVING THOSE WITNESSES APPEAR IN A COURT IN THE UNITED STATES TO TESTIFY ON BEHALF OF THE DEFENDANTS WOULD BE BETTER, AND SO SAFE PASSAGE WAS MENTIONED IN THAT CONTEXT OF COMING TO THE UNITED STATES.

THAT'S THE ONLY TIME THAT I RECALL, WITH THE EXCEPTION OF JUST LAST WEEK, AND PERHAPS THE WEEK BEFORE THAT IN ONE OF OUR TELEPHONIC STATUS CALLS, WHERE SAFE PASSAGE WAS EVEN RAISED. THERE CERTAINLY WASN'T ANY MENTION OF IT TO ME THAT THE WITNESSES -- THAT AS A CONDITION OF PRECEDENT TO THE WITNESSES APPEARING ANYWHERE FOR DEPOSITION OUTSIDE OF THE UNITED STATES, THAT SAFE PASSAGE HAD TO BE GUARANTEED OR PROMISED BY THE UNITED STATES, GETTING TO AND THEN FROM THE DEPOSITION UNMOLESTED BY ANY GOVERNMENT, OR AT LEAST THE UNITED STATES, THAT THERE WOULD BE NO ARREST, NO PROVISIONAL ARREST OR ANYTHING OF THE SORT.

I SIMPLY DON'T RECALL MR. COLE OR MS. HAN IN THE CONTEXT OF REPRESENTING THE UNITED STATES, AT LEAST IN MY PRESENCE, GUARANTEEING OR PROMISING SAFE PASSAGE. THAT'S POINT NO. 1.

POINT NO. 2 IS IF THERE WERE CONVERSATIONS, COMMUNICATIONS OUTSIDE OF THESE SEVERAL STATUS HEARINGS AND CONFERENCES THAT WE'VE HELD, THEN I MUST RELY UPON WHAT THE

19

ATTORNEYS ARE TELLING ME.  IF ON THE ONE HAND THERE WAS AN EXPLICIT PROMISE OR A GUARANTY OF SAFE PASSAGE, I WOULD CONSIDER THAT PROMISE MADE BY THE UNITED STATES MUCH DIFFERENTLY THAN IF THERE WASN'T.

I'VE READ THE CASES THAT HAVE BEEN CITED BY BOTH SIDES.  MOST NOTABLY THE SANTTINI CASE OUT OF THE THIRD CIRCUIT.  AND WE HAVE WHAT THE DEFENSE HAVE CITED AS THE PUCHI CASE, OR PUCHI, OUT OF THIS CIRCUIT.  I DON'T FIND THE PUCHI DECISION TO BE VERY HELPFUL, GIVEN THAT THE DISCUSSION OF SAFE PASSAGE REALLY WASN'T FULLY FLESHED OUT AS IT WAS IN THE SANTTINI CASE.

SANTTINI IS A THIRD CIRCUIT CASE AND ACCORDINGLY NOT BINDING PRECEDENT UPON THIS COURT, BUT IT IS INSTRUCTIVE I BELIEVE.  AND IN THAT CASE, CLEARLY THE COURT THERE, THE THIRD CIRCUIT CLEARLY SAID THAT THE COURT EXCEEDS ITS AUTHORITY IN ORDERING THE EXECUTIVE BRANCH TO PROVIDE SAFE PASSAGE.

TRYING TO DIG A LITTLE DEEPER INTO THE CASE LAW, I FOUND A CASE, WE FOUND A CASE, IT'S A DISTRICT COURT CASE OUT OF NEVADA.  IT'S A 2010 CASE.  IT'S UNITED STATES VS. MCKEE. AND IT CAN BE FOUND -- AND IT'S A NONREPORTED CASE.  IT CAN BE FOUND AT 2010 WESTLAW 1849330.  THAT CASE DISCUSSED SANTTINI AND TRIED -- AND DISTINGUISHED SANTTINI, ON ONE GROUND THAT IT WASN'T BINDING PRECEDENT ON ANY COURT IN THIS DISTRICT OR THE CIRCUIT, BUT IT RECOGNIZED THE COURT'S LACK

20

OF AUTHORITY TO ORDER THE GOVERNMENT TO PROVIDE ESSENTIALLY SAFE PASSAGE.

HOWEVER, IN THIS CASE, IN THE MCKEE CASE, THE COURT WENT THE OTHER WAY AND FOUND THAT AN ORDER THAT THEY HAD ISSUED PREVIOUSLY THAT THE DEFENSE -- A DEFENSE WITNESS WAS NOT TO BE ARRESTED AFTER SHE TESTIFIED ON BEHALF OF THE DEFENDANT; AND, OF COURSE, THE UNITED STATES DID EXACTLY THAT.  AND THE COURT FOUND THAT THAT WAS IN VIOLATION OF ITS ORDER.  DIDN'T DIRECTLY ADDRESS SAFE PASSAGE, BUT IT DID CITE THE SANTTINI CASE.

SO GETTING BACK TO MY SECOND POINT ABOUT PROMISES OR GUARANTEES.  SINCE THERE WAS NONE MADE IN MY PRESENCE BY THE UNITED STATES, I HAVE TO RELY UPON THE INFORMATION PROVIDED TO ME BY THE ATTORNEYS.  MR. COLE HAS STATED IN A DECLARATION THAT NO PROMISES OR GUARANTEES OF ANY KIND WERE MADE ABOUT SAFE PASSAGE, NOR HAVE I HEARD FROM THE DEFENSE THAT SUCH A GUARANTY OR PROMISE WAS MADE BY MR. COLE IN ANY OF THE PLEADINGS THAT WERE FILED OR EVEN IN ARGUMENT TODAY, BUT MERELY THAT THERE WAS DISCUSSIONS ABOUT IT.

AND SO I'M NOT GOING TO AT THIS POINT ORDER THAT THE GOVERNMENT PROVIDE SAFE PASSAGE.  ONE, I DON'T BELIEVE -- I FIND THE SANTTINI DECISION TO BE HELPFUL AND INSTRUCTIVE AND I DO NOT BELIEVE THAT THIS COURT HAS THE AUTHORITY TO AUTHORIZE OR, EXCUSE ME, TO ORDER THE UNITED STATES, THE EXECUTIVE BRANCH TO PROVIDE SAFE PASSAGE TO ANY OF THE

COMPUTER-AIDED TRANSCRIPTION

DEFENSE WITNESSES.  AND SO THAT WILL BE THE ORDER IN THIS CASE.  I'M NOT GOING TO -- I'M NOT GOING TO ORDER THE UNITED STATES TO PROVIDE SAFE PASSAGE.  I BELIEVE AN ADEQUATE RECORD HAS BEEN MADE.  THIS IS SUBJECT TO REVIEW BY JUDGE MILLER.

NOW, I WOULD HIGHLY RECOMMEND THAT IF THE DEFENSE INTENDS TO SEEK REVIEW OF THIS DECISION, THAT IT DO SO IMMEDIATELY.  I CAN SEE ON THE LAPTOP IN FRONT OF ME THAT A TRANSCRIPT WILL BE AVAILABLE HERE ALMOST IMMEDIATELY UPON THE CONCLUSION OF THIS HEARING, SUBJECT TO SOME CLEANING UP OF THE TRANSCRIPT; BUT IT WOULD BE AVAILABLE ON SHORT ORDER. I'M SURE JUDGE MILLER WILL ENTERTAIN THIS -- ANY REVIEW IF SOUGHT -- ON AN EXPEDITED BASIS, UNDERSTANDING THE URGENCY OF THE MATTER.

I DO BELIEVE THAT THE WITNESSES, DEFENSE WITNESSES IN THIS CASE OR ANY CASE, PARTICULARLY IN A SITUATION LIKE THIS, WHO VOLUNTARILY DECIDE THAT THEY WOULD LIKE TO TESTIFY, WOULD DO SO SUBJECT TO WHATEVER RISK MAY BE OUT THERE THAT THEY MAY BE ARRESTED EITHER BEFORE OR AFTER THEIR TESTIMONY. AND THAT'S TRUE IF THE CASE WAS BEING HELD HERE, OR THE TRIAL WAS BEING HELD HERE IN THE UNITED STATES AND THESE WITNESSES DECIDED TO VOLUNTARILY APPEAR HERE.

THIS DISTRICT, BECAUSE IT IS ON THE BORDER, HAS MANY PROSECUTIONS OF DRUG-RELATED CASES WHERE WITNESSES ROUTINELY ENTER THE UNITED STATES TO COME TO TESTIFY AND DO SO WITHOUT ANY GUARANTEES ONE WAY OR THE OTHER OF SAFE PASSAGE.  SIMPLY

22

BECAUSE SAFE PASSAGE WAS CONSIDERED AND GRANTED IN A CASE IN ANOTHER DISTRICT HERE IN THE PAST, WITHOUT KNOWING MORE ABOUT THAT CASE AND CERTAINLY AGREEING WITH THE DEFENSE THAT IT'S THE SAME CONSTITUTION THAT APPLIES WHETHER IT'S A NARCOTERRORISM CASE OR TERRORISM ON SOME OTHER LEVEL.

I THINK IT'S -- IT'S INSTRUCTIVE THAT IT OCCURRED THERE, BUT IT'S NOT BINDING THAT IT OCCURS, IT SHOULD OCCUR HERE.  CIRCUMSTANCES MAY BE ENTIRELY DIFFERENT AND NONE OF THOSE CIRCUMSTANCES HAVE BEEN PROVIDED TO THE COURT.  BUT, NEVERTHELESS, EVEN IF THE CIRCUMSTANCES WERE IDENTICAL, THE FACTS WERE IDENTICAL, THIS COURT DOES NOT BELIEVE IT HAS THE AUTHORITY TO ORDER THE UNITED STATES TO OFFER A LETTER OF SAFE PASSAGE TO ANY WITNESS, WHETHER THAT WITNESS IS AN UNINDICTED CO-CONSPIRATOR AND MAY BE MORE CRIMINALLY VULNERABLE THAN SOME OF THE OTHER WITNESSES OR NOT.

AND SO THE ORDER IS THAT THERE WILL BE NO ORDER FROM THIS COURT ORDERING THE UNITED STATES TO PROVIDE SAFE PASSAGE, AND SO THE DEFENSE MOTION TO DO SO IS HEREBY DENIED. I'VE GIVEN YOU THE CITES TO THE CASE THAT I HAVE READ AND DON'T FIND IT PARTICULARLY HELPFUL, AND THAT'S THE MCKEE CASE.  I DON'T FIND THE PUCHI CASE TO BE PARTICULARLY HELPFUL, BUT I AM INFORMED BY THE SANTTINI CASE.

ALL RIGHT.  IS THERE ANYTHING ELSE BEFORE WE SIGN OFF FOR TODAY?

MR. DURKIN: JUDGE, THERE IS ONE MATTER THAT I HAVE.

23

I HAVE FILED AN AFFIDAVIT OF MY CLIENT WAIVING HIS PRESENCE. I HAVE HAD SOME SCHEDULING ISSUES AND OTHER ISSUES THAT ARE GOING TO MOST LIKELY MAKE IT IMPOSSIBLE FOR ME TO GO, AND I'M LIKELY TO FILE AN AMENDED AFFIDAVIT OF MY CLIENT. I'VE ALREADY SPOKE TO HIM ABOUT THIS AND HE'S AGREEABLE.

I'D LIKE TO FILE AN AMENDED AFFIDAVIT, SIMILAR TO THE ONE MS. MORENO FILED, WAIVING MY PRESENCE AS WELL AND HAVING SOMEONE ELSE STAND IN.

THE COURT: AND WHO IS THIS SPEAKING?

MR. DURKIN: THAT'S MR. DURKIN.

THE COURT: ALL RIGHT, MR. DURKIN.

MS. MORENO: AND, YOUR HONOR, I WILL ALSO, BECAUSE OF SCHEDULING ISSUES, NOT BE ABLE TO ATTEND THE DEPOSITIONS. MY CLIENT WAS INFORMED OF THAT, OF THE POTENTIAL OF THAT A MONTH, FOUR WEEKS OR SO AGO. AND BECAUSE OF THE LATE DATE AND THE TENTATIVE POSSIBILITY THAT THIS TRIAL MATTER WILL RESOLVE, I WILL NOT BE ABLE TO ATTEND. AND MY CLIENT HAS BEEN SO INFORMED AND HE, TOO, HAS EXECUTED AN AFFIDAVIT.

IF THE COURT FEELS I NEED TO SUBMIT THAT AFFIDAVIT IN ADDITION TO THE FIRST ONE I SUBMITTED, I CAN DO THAT. BUT I'M STATING THAT FOR THE RECORD TODAY.

THE COURT: WELL, I WOULD APPRECIATE HAVING THOSE AFFIDAVITS AND DECLARATIONS, AMENDED DECLARATIONS ON FILE QUICKLY IF THEY HAVEN'T ALREADY BEEN FILED SO I CAN REVIEW THEM.

24

MS. MORENO: CERTAINLY.

THE COURT: ALL RIGHT. ONE LAST ISSUE THAT I WOULD LIKE TO BRING UP. IT'S NOT AN ISSUE AT ALL, BUT JUST TRYING TO REVISIT SOMETHING THAT WE DISCUSSED SEVERAL WEEKS AGO, AND THAT IS THE KIND OF OATH THAT WOULD BE GIVEN TO THESE WITNESSES AND WHETHER WE NEED TO MODIFY THE OATH AT ALL. I'M NOT ASKING THAT I HAVE THE ANSWER TO THAT RIGHT NOW, BUT THAT IS SOMETHING THAT I WANT TO MAKE SURE THAT WE HAVE LOCKED ON AND HAVE CONSIDERED AND RESOLVED.

AND HAVE WE, MR. COLE?

MR. COLE: I DON'T THINK WE HAVE, YOUR HONOR. THE UNITED STATES HAS BEEN, TO THIS POINT, ASSUMING THAT THE WITNESSES WOULD JUST TAKE THE STANDARD U.S. OATH UNDER THE CIRCUMSTANCES, SINCE YOU WOULD BE THERE TO ADMINISTER IT. HOWEVER, I KNOW EARLY ON THERE WAS REFERENCE BY MS. MORENO OR OTHERS TO PERHAPS AN ADDITIONAL, SUPPLEMENTAL OATH.

WE FRANKLY -- AT LEAST THE U.S. HAS FRANKLY LET THAT DISCUSSION LAPSE. AND I'D BE HAPPY TO REACH BACK OUT TO THE DEFENSE TO SEE IF WE CAN EXPLORE WHETHER THERE IS A NEED FOR AN ADDITIONAL OATH OR NOT.

THE COURT: I WOULD APPRECIATE THAT.

GO AHEAD.

MR. DRATEL: YOUR HONOR, THIS IS MR. DRATEL.

I THINK THE RULE PRESCRIBES THAT THE OATH BE THAT WHICH IS ACCOMMODATING OR APPROPRIATE IN THE JURISDICTION

25

THAT THE DEPOSITIONS ARE BEING TAKEN. HOWEVER, I DO AGREE WITH MR. COLE, JUST IN THE SENSE THAT SINCE YOUR HONOR IS PRESIDING THAT PERHAPS THE ORDINARY OATH IS SUFFICIENT, ALTHOUGH WE WILL LOOK INTO THAT AS WELL.

ALSO, THE QUESTION OF OBVIOUSLY WHAT OATH COMMUNICATES TO THE WITNESS APPROPRIATELY THE WITNESS' OBLIGATION, THAT'S WHAT'S MOST IMPORTANT TO ME. IN OTHER WORDS, THE WITNESS UNDERSTANDS, A, THAT HE'S BOUND TO TELL THE TRUTH, AND, B, THAT THERE ARE POTENTIAL PENALTIES IF THEY DON'T TELL THE TRUTH; SO TO ME, THAT'S THE MOST IMPORTANT.

WHETHER IT CONFORMS WITH THE ORDINARY OATH OR HAS SOME OTHER ASPECT TO IT THAT'S CULTURALLY OR GEOGRAPHICALLY DIFFERENT IN TERMS OF COMMUNICATING THAT, I THINK THOSE ARE THE TWO IMPORTANT THINGS THAT ARE IN ANY OATH, SO WE'LL WORK ON THAT TOGETHER. I DON'T PERCEIVE THAT TO BE A PROBLEM.

THE COURT: ALL RIGHT. VERY GOOD.

ALL RIGHT. NEXT WEEK ON FRIDAY IS WHEN WE'RE DEPARTING, ASSUMING THE SCHEDULE REMAINS AS IS. I WOULD RECOMMEND THAT WE HAVE ONE LAST STATUS CALL A WEEK FROM TODAY AT THE USUAL TIME, 7:00 A.M., JUST TO MAKE SURE THAT EVERYTHING IS -- ALL SYSTEMS ARE GO.

MS. FONTIER: YOUR HONOR, WE -- I AT LEAST WON'T BE AVAILABLE. I DON'T BELIEVE MR. GHAPPOUR WILL BE EITHER, AS WE'RE GOING TO BE TRAVELING TO DJIBOUTI EARLIER THAN THE GOVERNMENT, OBVIOUSLY.

26

MR. DRATEL: I'LL STILL BE HERE, YOUR HONOR. THIS IS MR. DRATEL.

THE COURT: OKAY. ALL RIGHT. WELL, LET'S -- WHOEVER CAN MAKE THE PHONE CALL, THAT'S WHO WE'LL HAVE ON THE LINE.

MR. GHAPPOUR: YOUR HONOR. I'M SORRY, THIS IS MR. GHAPPOUR.

THE COURT: YES.

MR. GHAPPOUR: I JUST HAVE ONE QUESTION.

WITH RESPECT TO ANY MOTION BY THE DEFENSE TO TAKE THE DEPOSITION OF MR. SHIDANE OR OTHER WITNESSES IN SOMALIA, ON THE BASIS OF YOUR RULING TODAY, IS THAT SOMETHING TO BE BROUGHT TO YOUR ATTENTION OR THE ATTENTION OF JUDGE MILLER?

THE COURT: I BELIEVE YOU'RE GOING TO HAVE TO BRING THAT TO JUDGE MILLER. JUDGE MILLER HAS RULED THAT DEPOSITIONS IN SOMALIA HAS BEEN DENIED. I MEAN, HE'S DENIED THAT MOTION, AND I DON'T SEE THAT I HAVE THE AUTHORITY TO REVERSE A DISTRICT JUDGE'S DECISION ON THAT.

I DO KNOW THAT HE'S REFERRED THE MATTER TO ME TO FIND ALTERNATIVE SOLUTIONS PERHAPS, BUT WITH RESPECT TO A DEPOSITION THAT OCCURS IN SOMALIA, I BELIEVE THAT'S SOMETHING YOU'LL HAVE TO BRING BACK BEFORE JUDGE MILLER.

MR. GHAPPOUR: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. MR. COLE.

MR. COLE: YEAH. JUST ONE LAST QUESTION.

27

I WANTED TO SEE IF WE COULD CONFIRM TODAY FOR EVERYBODY WITH THE DEFENSE IF WE ARE -- IF THE ROOM FOR THE DEPOSITION ITSELF HAS BEEN SECURED?  I BELIEVE IT'S GOING TO BE AT THE BAVARIA HOTEL WHERE THE DEFENSE MADE ARRANGEMENTS, BUT I JUST WANTED TO CONFIRM THAT.  WE CAN, OF COURSE, CONFIRM IT ON THE 5TH, BUT I THINK IT WOULD BE GOOD FOR THE U.S. TO KNOW SO THAT WE CAN LET PEOPLE THERE OVERSEAS KNOW WHERE THE ACTUAL LOCATION IS GOING TO BE, WHERE THE DEPOSITIONS THEMSELVES ARE GOING TO HAPPEN.

MR. GHAPPOUR:  YOUR HONOR, I'VE BEEN IN CORRESPONDENCE WITH THE BAVARIA HOTEL, AND THEY HAVE YET TO GET BACK TO ME AS TO WHETHER -- INITIALLY THEY AFFIRMED THAT WE HAD A RESERVATION FOR THE MEETING ROOM, BUT THEY HAVE YET TO GET BACK TO ME AS FAR AS PAYMENT AND OTHER ISSUES, SO I CANNOT CONFIRM THAT AT THE MOMENT.

I ALSO HAVE -- THE OTHER PROBLEM IS THAT EVERYONE IN DJIBOUTI SPEAKS FRENCH.  I DON'T.  SO I'VE GOT AN INTERN LOOKING INTO CALLING OTHER CONFERENCE AREAS IN DJIBOUTI AS A BACKUP.  AND I BELIEVE THAT MS. FONTIER IS ALSO LOOKING INTO THAT, TOO, AS A FRENCH SPEAKER.

THE COURT:  ALL RIGHT.  I WOULD ASK THAT THE DEFENSE NOTIFY MR. COLE OR MS. HAN JUST AS QUICKLY AS YOU CAN ONCE A DECISION AND CONFIRMATION OF THE LOCATION HAS BEEN REACHED.

ALL RIGHT.  ANYTHING ELSE?

MR. COLE:  NO, YOUR HONOR.  THANK YOU.

COMPUTER-AIDED TRANSCRIPTION

28

MS. FONTIER:  NO.  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  THAT'S ALL FOR TODAY.  THANK YOU.

MR. DRATEL:  THANK YOU, YOUR HONOR.

(PROCEEDINGS CONCLUDED AT 7:40 A.M.)

--O0O--

C E R T I F I C A T I O N

I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL CONFERENCE.

DATED:  OCTOBER 29, 2012, AT SAN DIEGO, CALIFORNIA.

S/CAMERON P. KIRCHER
CAMERON P. KIRCHER

COMPUTER-AIDED TRANSCRIPTION