**JOSHUA L. DRATEL**
Admitted *Pro Hac Vice*
**ALICE L. FONTIER**
California State Bar No. 229994
JOSHUA L. DRATEL, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
Telephone:  (212) 732-0707

Attorneys for Basaaly Moalin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER )**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 10-CR-4246 (JM) |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO ADMIT VIDEOTAPED FOREIGN DEPOSITIONS |
| BASAALY MOALIN, *et. al* ) | |
| Defendant. ) | |

**Introduction**

This Joint Memorandum of Law is respectfully submitted in support of defendants Basaaly Moalin, Mohamed Mohamed Mohamud, Issa Doreh, and Ahmed Nasir Taalil Mohamud's, Motion to Admit the Videotaped Foreign Depositions.

**Argument**

**THE COURT SHOULD ADMIT THE SIX FOREIGN DEPOSITIONS TAKEN PURSUANT TO RULE 15, FED.R.CRIM.P.**

Pursuant to Court order, foreign depositions of six defense witnesses were taken in Djibouti.  The six defense witnesses – Najib Mohamed, Abukar Dahir Mohamed, Sheik Abdur Rahman, Sharif Abdi, Osman Isse Nor, and Hassan Mohamud Guled – are all material witnesses who are unavailable to testify at

1

trial.  Accordingly, the defendants respectfully request that the video testimony of each of the six witnesses be admitted at trial.

Pursuant to Rule 15, Fed.R.Crim.P., the admissibility of depositions are controlled by the ordinary rules of evidence.  Fed.R.Crim.P. 15(f) ("An order authorizing a deposition to be taken under this rule does not determine its admissibility.  A party may use all or part of a deposition as provided by the Federal Rules of Evidence.").  The Federal Rules of Evidence state that all "relevant evidence is admissible." Fed.R.Evid. 402.  The Rules define relevant evidence as any evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed.R.Evid. 401.  Accordingly, as long as the testimony of the witnesses is relevant, it is admissible.  Rule 402, Fed.R.Evid.

When the government seeks to admit videotaped depositions, and the defense did not have an opportunity to personally confront the witness, Courts have held that the depositions are still admissible if the witness is unavailable. *See United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998).   Here the same concerns are not raised because the defendants waived their confrontation clause rights, and because attorneys for both parties were present at the taking of the depositions.  Each witness was subject to cross-examination by the government.

Nonetheless, each of the witnesses is unavailable to testify.  All six of the witnesses are Somali nationals, residing in Somalia, and as such are beyond the subpoena power of the Court.  Five of the witnesses – all but Hassan Guled – stated that they are unwilling to travel to the United States to testify.  Accordingly all five of these witnesses are unavailable. *Medjuck*, 156 F.3d at 920.

Hassan Guled stated that he would be willing to travel to the United States to testify.  Accordingly, the defense provided Mr. Guled with funds to obtain a travel visa and directed Mr. Guled to apply for a visa at the United States Embassy in Djibouti.  Mr. Guled did so, but was informed that the Embassy required a letter from the United States Government that they were requesting a visa to obtain Mr. Guled's testimony at trial.  The government, through Assistant United States Attorney Caroline Han, declined to provide this letter.  In addition, the government stated that they would not argue that Mr. Guled was available for trial. *See Letter of Caroline Han,* dated November 30, 2012, attached hereto as Exhibit 1. Accordingly, Mr. Guled is also unavailable to testify at trial.

Thus, the Court must determine only whether the witnesses's testimony is relevant.  As set forth here, each of the six defense witnesses offers testimony that "has a[] tendency to make a fact more or less probable than it would be without the evidence[.] Fed.R.Evid. 401.

**A.      Najib Mohamed**

Najib Mohamed is recorded on a large number of telephone calls with Mr. Moalin.  Some of these calls are included in the 120 calls the government has translated verbatim and deemed "material."  Mr. Mohammed operated a call center in Somalia.  The majority of Basaaly Moalin's calls to Somalia were placed through Mr. Mohamed's call center.  Mr. Mohammed testifed that Basaaly Moalin called almost every morning to talk to his family and other persons in Somalia.  In addition, during the Ethiopian invasion of Somalia, from 2007-2008, Mr. Mohamed testified that he provided updates on the news to Mr. Moalin.  In addition, Mr. Mohammed testified that he would place the phone in front of the radio, so that Mr. Moalin could listen to Somali newscasts directly.

This testimony is relevant to the question of how Mr. Moalin received information about events in Somalia, and whether he was directly connected to the upper echelons of *al-Shabaab*.  Mr. Mohammed also listened to recorded telephone calls between himself and Mr. Moalin and explained the content of those calls.  Further, Mr. Mohammed's testimony regarding the mechanics of his telephone call center operation is relevant to the allegation that Mr. Moalin spoke directly to Aden Ayrow.

**B.      Sheik Abdul Rahman, a/k/a "Geedow Qorow"**

Mr. Rahman is the current Governor of Dhusamarreb and Chairman of the Development Council. Mr. Rahman is also Mr. Moalin's  brother-in-law.  He worked with the Ilyes Foundation to develop schools in Dhusamarreb. The Ilyes Foundation is responsible for constructing and administering over 30 schools in central Somalia.  The schools are funded in large part by support from the diaspora.  Mr. Rahman testifed about Mr. Moalin's support of the Ilyes Foundation, both morally and financially.  Mr. Rahman also testified that *al-Shabaab* is opposed to the development of schools and local government.

In addition, Mr. Rahman, will testified about the events that occurred in Dhusamarreb during and after the 2008 period when *al-Shabaab* invaded and briefly took control of the region.  Mr. Rahman actively fought to defend against *al-Shabaab*, and successfully regained control of the region.  Following the defeat of *al-Shabaab*, Mr. Rahman was one of the leaders of the group that formed *Ahlu Suna Wa*

*Jameea* (hereinafter "*Ahlu Suna*").

Mr. Rahman also testified that *Ahlu Suna* used Mr. Moalin's house as an office and residence for several months for various of its members while *Ahlu Suna* was actively defending the region from *al-Shabaab*.  *Ahlu Suna* still uses Mr. Moalin's house for meetings because it is one of the larger residences in Gurieel.  Mr. Rahman additionally testified that he has been, and continues to be an *al-Shabaab* target.  In fact, he has been the intended target of *al-Shabaab* roadside bomb attacks.

The testimony regarding the Ilyes Foundation is relevant because the foundation is discussed in various recorded calls.  The testimony regarding *Ahlu Suna* is relevant to the allegations that Mr. Moalin and the other defendants supported *al-Shabaab*, and whether they specifically intended to support terrorism.

### C.       Abukar Dahir Mohamed

Mr. Mohamed is the TFG's current Advisor of Higher Education and Culture.  He is a personal friend of and close advisor to former TFG President Sheik Sharif.  Mr. Mohamed has been a part of the TFG since Sheik Sharif was first elected.  He was previously the Director General of the Ministry of Higher Education and Culture.

Prior to working for the TFG, Mr. Mohamed was a leader of the local administration of Gelgaduud.  He is also one of the foremost leaders of the UIC.  Mr. Mohamed was also the chairman of the Gelgaduud region's development council.  In that capacity he was responsible for the construction and administration of local schools.

Mr. Mohamed formed the Ilyes Foundation in 2007.  Ilyes is funded in large part by Formal Private Education in Somalia (FPENS) (fpens.net).  However, Ilyes also relies on donations, which are primarily provided by the Somali diaspora.  Ilyes has constructed and administers 31 schools in central Somalia.  One of these schools is located in Gurieel.

Mr. Mohamed and Mr. Moalin have been friends since they were children.  Mr. Mohamed testified that Mr. Moalin has always supported him and the development of Gurieel both as a friend and financially.  In fact, Mr. Moalin was one of the largest financial contributors to the construction and administration of the school in Gurieel.

After the school was constructed, Mr. Moalin sponsored students.  His sponsorship included

purchasing supplies, food, and housing.  Students Mr. Moalin sponsored have attended college because of his support.  Mr. Mohamed testified that he personally received money from Mr. Moalin for this purpose during the relevant time period.

Mr. Mohamed further testified that he has always opposed *al-Shabaab*.  He was forced to flee Gurieel and reside in Somaliland in 2008 because he was a primary target of *al-Shabaab*.  He continues to be a target of *al-Shabaab* today.

This testimony is relevant to the allegations that Mr. Moalin and the other defendants supported *al-Shabaab*, and whether they specifically intended to support terrorism.

**D.     Sharif Mohamed Cabdi "Qorey"**

Mr. Qorey is heard on several intercepted calls with Mr. Moalin.  In addition, he received money from Mr. Moalin during the relevant time period.  Mr. Qorey testified that he was responsible for supervising the work on Mr. Moalin's house, and provided payments to persons performing work on the house.   In addition, Mr. Qorey testified that he gave access to the house to members of *Ahlu Suna*, and the chief of the local police – Sheikalow.

This testimony is relevant to the question of whether Mr. Moalin ever gave Aden Ayrow access to his home, as is alleged in the Indictment.  It is further relevant to the question of whether Mr. Moalin specifically intended to support terrorism.

**E.     Osman Isse Nuur**

Mr. Nuur is a member of *Ahlu Suna*.  He fought against *al-Shabaab* when it took control of Gurieel in December 2008.  He is the current Governor of Gurieel, and has been so since October 2009. Prior to becoming Governor, Mr. Nor was Deputy Chairman of Gurieel.

Mr. Nuur was working as Deputy Chairman when *al-Shabaab* invaded.  He fought to defend against *al-Shabaab* but was forced to flee for his life. Mr. Nor has been the target of four attempted murders by *al-Shabaab*.  He was the intended target of roadside bomb attacks December 12, 2009, August 9, 2010, and September 12, 2012.  A hand grenade was thrown into his house August 21, 2010.

Mr. Nuur testified that Mr. Moalin supported the local administration as well as *Ahlu Suna*.  This testimony is relevant to the questions of whether Mr. Moalin and the other defendants supported *al-Shabaab*, and whether they specifically intended to support terrorism.

**F.      Hassan Mohamud Guled, a/k/a "Sheikalow"**

The Indictment rests on the notion that Mr. Moalin had direct telephone contact with Aden Ayrow, an *al-Shabaab* official.  The government believes that the person on the calls identified as "Sheikalow" is Aden Ayrow (using an alias).  However, as Mr. Guled testified, he goes by the nickname "Sheikalow" and had multiple telephone calls with Mr. Moalin during 2007 and 2008 in which he discussed raising money to support the local administration of Gelgaduud. Mr. Guled testified that he solicited money from Basaaly Moalin for this purpose.

Mr. Guled was police commissioner of the Gelgaduud region at the relevant time.  He had many police officers working for him.  They required guns and other weapons in order to effectively repel *al-Shabaab*'s attacks on the region.  He used Mr. Moalin's house on more than one occasion for administrative purposes.

This testimony is relevant to the questions of whether Mr. Moalin and the other defendants supported *al-Shabaab*, and whether they specifically intended to support terrorism.  It is also relevant to the allegation that Mr. Moalin spoke to Aden Ayrow.

Accordingly, each of the witnesses offers relevant evidence that should be admitted at trial.

Dated: December 20, 2012
          New York, New York

                                        Respectfully submitted,

                                         S/ Alice L. Fontier
                                        **JOSHUA L. DRATEL**
                                        **ALICE L. FONTIER**
                                        DRATEL & MYSLIWIEC, P.C.
                                        2 Wall Street, 3rd Floor
                                        New York, NY 10005

                                        *Attorneys for Basaaly Moalin*