LAURA E. DUFFY
United States Attorney
WILLIAM P. COLE
CAROLINE P. HAN
Assistant United States Attorney
Cal. State Bar No. 186772/250301
STEVEN P. WARD
Trial Attorney
D.C. Bar No. 395410
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 546-6762/6968
Email:    William.P.Cole@usdoj.gov
          Caroline.Han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Crim. Case No. 10CR4246-JM |
|---|---|---|
| Plaintiff, | ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' MOTION TO:** |
| v. | ) | **(1) PRECLUDE DURESS, COERCION OR NECESSITY DEFENSE;** |
| BASAALY MOALIN, et al. | ) | **(2) EXCLUDE WITNESSES FROM THE COURTROOM, EXCEPT CASE AGENT;** |
| Defendants. | ) | **(3) PRECLUDE REFERENCES TO PUNISHMENT;** |
| _____ | ) | **(4) ADMIT CERTIFIED PUBLIC RECORDS;** |
| | ) | **(5) PRECLUDE EVIDENCE OF PRIOR "GOOD ACTS";** |
| | ) | **(6) PRECLUDE PITY OR SYMPATHY EVIDENCE;** |
| | ) | **(7) PERMIT GOVERNMENT WITNESS TO TESTIFY UNDER PSEUDONYM;** |
| | ) | **(8) PERMIT UNITED STATES TO RECALL WITNESSES;** |
| | ) | **(9) PERMIT REFERENCES TO AL QAEDA** |
| | ) | |
| | ) | Date:  January 10, 2013 |
| | ) | Time:  9:00 a.m |
| | ) | Judge: Hon. Jeffrey T. Miller |
| | ) | |
| | ) | |

**I**

**STATEMENT OF THE CASE**

On June 8, 2012, the grand jury returned a Second Superseding Indictment charging defendants Basaaly Saeed Moalin ("Moalin"), Mohamed Mohamed Mohamud ("Mohamud"), Issa Doreh ("Doreh"), and Ahmed Nasir Taalil Mohamud ("Nasir") with: conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A(a) (Count 1); conspiracy to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count 2), and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(2)(A) and (h) (Count 3).

The Second Superseding Indictment also charges Moalin with providing material support to terrorists, in violation of 18 U.S.C. § 2339A(a) (Count 4) and defendants Moalin, Mohamud, and Doreh with providing material support to a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B(a)(1) and 2 (Count 5).

Trial for all defendants is set for January 28, 2012.

**II**

**ARGUMENT**

**A.    The Court Should Preclude a Defense
Based on Duress, Coercion or Necessity**

The United States moves to preclude any defense based on the theories of duress, coercion, or necessity, including the preclusion of any evidence, testimony, comments, or arguments before the jury pertaining to these defenses.

**(1)   Defense of Duress or Coercion**

"We have long held that a defendant is not entitled to present a duress defense to the jury unless the defendant has made a prima

2

facie showing of duress in a pre-trial offer of proof." United States v. Vasquez-Landaver, 527 F.3d 798, 802 (9th Cir. 2008) (citation omitted).  To rely on a defense of duress or coercion, Defendant must establish a prima facie case that:

1. there was an immediate threat of death or serious bodily injury to the defendant if the defendant did not commit the crime;

2. the defendant had a well-grounded fear that the threat of death or serious bodily injury would be carried out; and

3. the defendant had no reasonable opportunity to escape the threatened harm.

United States v. Leal-Cruz, 431 F.3d 667, 669 n. 1 (9th Cir. 2005); see also 9th Cir. Model Crim. Jury Instr. 6.6.  If Defendant fails to carry his burden of establishing a prima facie case, "evidence of duress is not relevant" and any evidence or testimony thereon should be excluded.  Vasquez-Landaver, 527 F.3d at 802, 804 ("While the constitutional right to testify permits a defendant to choose whether or not to take the witness stand, it does not authorize a defendant to present irrelevant testimony.").

Absent a sufficient, pre-trial, prima facie proffer, the Court should preclude any evidence, testimony, statements or arguments concerning duress or coercion.

**(2)  Defense of Necessity or Choice of Evils**

"[I]t is an open question whether federal courts ever have authority to recognize a necessity defense not provided by statute." United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 490 (2001).  The notion is particularly dubious in the context of a statutorily-defined terrorism offense.  Yet even if theoretically permissible, "[a] district court may preclude a necessity defense where 'the evidence, as described in the defendant's offer of proof,

3

is insufficient as a matter of law to support the proffered defense.'" United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1991) (citation omitted).  To present the "defense of necessity, or choice of evils," a defendant has the burden of establishing a prima facie case:

> (1)  that he was faced with a choice of evils and chose the lesser evil;
>
> (2)  that he acted to prevent imminent harm;
>
> (3)  that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and
>
> (4)  that there were no other legal alternatives to violating the law.

United States v. Perdomo-Espana, 522 F.3d 983, 987 (9th Cir. 2008).

Absent a sufficient, pre-trial, prima facie proffer, the Court should exclude any evidence, testimony, statements or arguments concerning necessity.

**B.    The Court Should Exclude All Witnesses from the Courtroom, Except the Case Agent**

The United States moves to exclude all witnesses from the courtroom during trial, with the exception of the United States' case agent.  The parties' counsel should be entitled to the aid of someone thoroughly versed in the facts during trial.  Defense counsel can consult with the defendants in this regard, and therefore the United States should have access to its case agent.

**C.    Punishment Evidence is Irrelevant**

The United States moves to preclude reference to any potential punishment in this case, as this is irrelevant to the charged offenses or any possible defenses.  "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).  Moreover, the United States moves to preclude

4

the defense from referencing Defendant's "liberty" in a manner designed to circumvent this prohibition. For example, the Court should preclude the defense from arguing that the United States "asks you to take Defendant's liberty away and put him in jail."

**D. The Court Should Admit Certified Public Records**

Copies of public records certified as correct by the custodian or other authorized person are self-authenticating and require no extrinsic evidence of authenticity. Fed. R. Evid. 902. Furthermore, such records are not excluded by the rule against hearsay. Fed. R. Evid. 803(8); United States v. Loera, 923 F.2d 725, 730 (9th Cir. 1991).

Here, the United States will introduce certified public records from: (1) the Orange County Transportation Authority (taxicab licensing records pertaining to Nasir); (2) the San Diego County Sheriff's Department, Licensing Division (taxicab licensing records pertaining to Moalin); (3) the United States Department of State (Moalin's Passport Application); and (4) the United States Department of Homeland Security (Nasir's N-400 Application for Naturalization). See Exhibits 1-3.[1] The United States will introduce these records for basic biographical information, such as telephone numbers. Because these public records are certified as correct, the Court should admit them.

---

[1] The United States does not yet have available the certified copy of the passport application, but will provide it before trial. Furthermore, the United States reserves the right to seek admission of additional public records, as may become necessary before or during trial.

**E.   The Court Should Preclude Evidence of Prior
Good Acts, Such as Good Works in the Community**

The Court should prohibit defendants from arguing or eliciting testimony or evidence concerning specific instances of their prior good conduct, including charitable or other good works in the community. "Evidence of good conduct is not admissible to negate criminal intent." United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991); see United States v. Doyle, 130 F.3d 523,542 (2d Cir. 1997)(if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of Rule 405(b) would swallow the rule that proof of specific acts is not allowed).   Under Fed. R. Evid. 404(a), evidence of other acts, including other "good" acts (or the mere absence of prior "bad" acts), are "not admissible to prove the character of a person in order to show action in conformity therewith." Celaya v. Stewart, 691 F. Supp. 2d 1046 (D. Ariz. 2010), aff'd, sub nom., Celaya v. Ryan, – Fed. Appx –, 2012 WL 5505736 (Nov. 14, 2012); Fed. R. Evid. 404(a). Furthermore, even when character evidence is admissible, evidence of specific instances of conduct is not admissible unless "character or a trait of character of a person is an essential element of a charge, claim, or defense."   Fed. R. Evid. 405(b); see also Michelson v. United States, 335 U.S. 469, 477 (1948) ("The witness may not testify about defendant's specific acts or courses of [good] conduct or his possession of a particular disposition or of benign mental and moral traits.").

In this case, defendants may claim that they did not intend the funds that are the subject of the Second Superseding Indictment to go to terrorism or terrorist organizations.   Nevertheless, testimony concerning specific instances of a defendant's charitable or other

6

good works in the community is inadmissible to negate intent because no character trait is an essential element of the charges or defenses. Thus, such evidence is clearly barred by Fed. R. Evid. 404(a) and 405(b).   See Doyle, 130 F.3d at 542; United States v. Ellisor, 522 F.3d 1255, 1271 (5th Cir. 2008)(specific acts of good character inadmissible to prove conduct in conformity therewith).

The defendants are entitled to claim that they thought the money transfers alleged by the United States were going to charity (not al-Shabaab or terrorism), but they may not prove up specific instances of charitable or other good works elsewhere as negating their intent to finance terrorism.   Thus, the Court should enter an order precluding the introduction of such evidence.

**F.   The Court Should Preclude Pity or Sympathy Evidence**

The Court should preclude evidence that has no relevant purpose other than to evoke sympathy or pity from the jury.  United States v. Gomez, 772 F. Supp. 2d 1185 (C.D. Ca. 2011)(granting motion in limine regarding references to punishment and sympathy).   Thus, defendants should not be entitled to introduce evidence of health, upbringing, family circumstances, or financial hardships.  See Ninth Circuit Model Criminal Jury Instruction 1.1 (jurors "must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy"); United States v. Copeland, 291 Fed. Appx 94, 97 (9th Cir. 2008)(abuse as a child); United States v. St. Rose, 2011 WL 1107659 (E.D.N.Y. 2012)(immigration consequences); United States v. Thomas, 2010 WL 4553570 (S.D. Miss. 2010)  (number of children); United States v. Dochee, 2009 WL 102986 (N.D. Ill. 2009)(consequences to family).   For example, defendants should be barred from introducing evidence regarding their lives in Somalia, the circumstances that resulted in

their leaving Somalia, their family circumstances here or in Somalia, or why or how they came to the United States.

This evidence is neither relevant to the charges in the indictment nor probative of any legal defense.  On this basis, the Court should order that the defendants not introduce, refer to, or argue such factors.   See United States v. Blixt, 548 F.3d 882, 890 (9th Cir. 2008).

**G.    The Court Should Permit a Government Witness to Testify Under a Pseudonym**

The United States seeks an order allowing one witness – its Somali linguist – to testify under a pseudonym because of safety concerns.  This limitation on cross examination is well within the Court's discretion and would not violate defendants' rights under the Confrontation Clause.

The United States will call a Somali linguist employed by the FBI to testify to the English translations of the intercepted calls.  That linguist is a native of Somalia, who emigrated over 20 years ago, leaving behind many family members and relatives.  The linguist has informed us that he fears that if it were publicly known that he worked for the United States Government, let alone the fact that he testified for the United States in criminal proceedings against al-Shabaab, there is a substantial and unwarranted risk of reprisal against his immediate family, who are outside of Somalia, and his extended family who remain in Somalia.  The linguist has testified in two other terrorism trials involving material support to al-Shabaab, and in each instance has testified under a pseudonym.  Given the significant prospect that others related to the linguist would be imperiled, testimony under a pseudonym is warranted.

8

Although the Confrontation Clause guarantees the right of a defendant to confront his accusers, that "right is not unlimited." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("'[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'") (citation omitted). The Court has discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . the witness' safety . . . ." Id. (courts can "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant"); Smith v. Illinois, 390 U.S. 129, 133 (1968) (White, J.,concurring)(limitation on the right to cross-examine a witness may arise when disclosure of the information sought would endanger the physical safety of the witness or his family).

The Ninth Circuit has long recognized the use of a witness pseudonym where safety of the witness or others is a concern. See, e.g., United States v. Rangel, 534 F.2d 147, 148 (9th Cir. 1976); United States v. Cosby, 500 F.2d 405, 407 (9th Cir. 1974); United States v. Ellis, 468 F.2d 638 (9th Cir. 1972).

Courts routinely evaluate the use of a witness pseudonym by a balancing test. See, e.g., Rangel, 534 F.2d at 148; United States v. El-Mezain, 664 F.3d 467, 491 (5th Cir. 2011). In El-Mezain, a case involving material support charges, the Fifth Circuit Court of Appeals stated:

> [T]here is "no fixed rule with respect to disclosure."
> Instead, there must be a "balancing [of] the public
> interest in protecting the flow of information against the

individual's right to prepare his defense," which depends on "the particular circumstances of each case."

Id. at 491 (citing Roviaro v. United States, 353 U.S. 53, 62 (1957)).

Here the United States' interest in protecting the witness's family outweighs the defendants' marginal interest in obtaining the linguist's true name.  The United States has provided the defense with the linguist's relevant translations and a transcript of his prior testimony, which describes his training and experience and demonstrates his long history with the FBI.  Therefore, the defendants are in a position to cross-examine fully regarding the accuracy of the linguist's translations, his training and experience in translating the Somali language to English, and bias.  These lines of cross examination can be developed fully without the linguist's true name. See El-Mezain, 664 F.3d at 493-94 (citing United States v. Abu Marzook, 412 F. Supp. 2d 913, 923-24 (N.D. Ill. 2006)(use of pseudonym proper because the defendant was free to cross-examine the agents "on the basis of their direct testimony or any other proper basis")); United States v. West, 2010 WL 3951941 (N.D. Ill. 2010) (allowing linguist to use a pseudonym on a declaration submitted in connection with a hearing).

Because the linguist's true name would have no impeachment value, the Court should allow his testimony under a pseudonym.

### H.   The Court Should Permit the United States to Recall Witnesses

The United States moves the Court for an order allowing the United States to recall witnesses as needed.

Granting a party permission to recall a witness is within a trial court's discretion.  Kuhn v. United States, 24 F.2d 910, 914 (9th Cir. 1928).  Here, the presentation of evidence may require witnesses to

provide testimony, and then later to be recalled to provide additional testimony about other topics.  Specifically, the United States will present the jury with relevant background information concerning Somalia, geographic locations, al-Shabaab, political officials, al-Shabaab members, and other insurgent groups.  The United States will link this information to various audio recordings present throughout the trial.[2]  Allowing witnesses to be recalled as necessary will facilitate the jury's understanding of the evidence, and should be permitted.  See United States v. Jackson, 549 F.2d 517, 528-29 (8th Cir. 1977) (trial court properly exercised discretion in allowing government to present evidence chronologically in a narcotics conspiracy case by recalling an agent to testify about individual drug transactions).

I.   **The Court Should Permit References to Al-Qaeda**

In an earlier hearing, the United States advised the Court that it would seek leave before introducing references to al-Qaeda during trial.  Because the evidence is highly probative of (1) both Ayrow's and al-Shabaab's participation in terrorism and terrorist activities and (2) defendants' knowledge of those facts, the Court should permit references to al-Qaeda.

**(1)   Factual Background on Al-Shabaab and Ayrow**

As described in the Second Superseding Indictment, Al-Shabaab is a violent and brutal militia group that use intimidation and violence to undermine Somalia's Transitional Federal Government (TFG) and its supporters.  On or about February 26, 2008, the U.S. Department of

[2]   For example, if scheduling permits, the United States may present the testimony of Matthew Bryden, an expert on al-Shabaab and Somalia, in two phases: (1) general background information about Somalia and al-Shabaab and (2) testimony and opinions about specific audio calls.

State designated "Al-Shabaab" as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and Nationality Act, as amended.

Al-Shabaab was originally formed within the Council on Islamic Courts (CIC), a Somali based group, which claimed to administer Islamic or Sharia law.  The most prominent figure of the Courts was Sheikh Hassan Dahir Aweys, an individual with links to al-Qaeda.

Al-Shabaab emerged as the core of the Courts' military strength. Aden Ayrow, a protégé of Aweys who had received training in Afghanistan, became the militia commander of the Ifka Halane court in the early 2000s.  During this time, al-Shabaab engaged in acts of terrorism, including, for example, the 2003 killing of an Italian nurse who treated tuberculosis and HIV/AIDS patients, the 2005 killing of Somali peace activist Abdulkadir Yahya, and the killings of a Swedish journalist and an Italian nun, both of which occurred in 2006. As might be expected, these activities were widely reported.

Ayrow also gained notoriety as a result of his militia's ties to al-Qaeda, which it forged by protecting al-Qaeda figures in Somalia. In 2002, al-Qaeda figures, including Abu Taha al-Sudani, Saleh Ali Saleh Nabhan, and Fazul Abdullah Mohamed, launched attacks on an Israeli-owned hotel and Israeli passenger jet in Mombasa, Kenya. After the attacks, the group fled to Somalia where Ayrow's militia harbored them.  Two years later in August 2004, Ayrow's house was attacked by other militia leaders who were trying to apprehend one of these al-Qaeda figures, Abu Taha al-Sudani.  After his house was raided, Ayrow set up camp in an Italian colonial-era cemetery.  His fighters desecrated the cemetery and established a mosque and a

training center on the site which became known as the Salahudin Center.

Al-Shabaab emerged as its own entity when the Courts were displaced by the Ethiopians in approximately 2007. Although Aweys did not formally join Al-Shabaab at the time, Aweys remained a mentor to Ayrow.

In short, Ayrow became famous (infamous) for several reasons, including his links to Afghanistan and al-Qaeda, his links to al-Qaeda figures in Somalia, his close ties to Aweys (himself linked to al-Qaeda), and al-Shabaab's violent activities during his tenure.

**(2) Argument**

Evidence is admissible if it is relevant, meaning that it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury..." Fed. R. Evid. 403.

A district court's evidentiary's rulings are reviewed for abuse of discretion. Old Chief v. United States, 519 U.S. 172, 174 n.1 (1997). Additionally, a court's decision to admit evidence under Federal Rule of Evidence 403 is reviewed with "considerable deference". United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000).

Here, with respect to the alleged violations of 18 U.S.C. §2339A, the United States must prove that the defendants knew that the support or resources were to be used in preparation for and in carrying out violations of 18 U.S.C §956 (killing, maiming or murdering abroad) or

13

18 U.S.C. §2332a(b) (use of a weapon of mass destruction abroad). Similarly, with respect to the alleged violations of 18 U.S.C. § 2339B, the United States must prove that the defendants knew that al-Shabaab was a designated foreign terrorist organization or that al-Shabaab had engaged or engages in terrorist activity or terrorism.

Accordingly, Ayrow's widely-reported, well-known and infamous links to al-Qaeda, his past training in Afghanistan, and his harboring of al-Qaeda operatives are directly relevant to proving: (1) both his and al-Shabaab's participation in terrorism and terrorist activities; and (2) the defendants' knowledge. See United States v. Farhane, 634 F.3d 127, 160 (2d Cir. 2011) (finding that testimony about terrorist activities that occurred in Saudi Arabia, partially derived from internet articles, was properly admitted where issue for the jury was whether the defendant knew that the organization he supported was engaged in acts of terrorism). Indeed, Ayrow's fame and reputation (including in large part his links to al-Qaeda) provide powerful circumstantial evidence of defendants' knowledge. Put simply, the United States cannot adequately explain why defendants would know of Ayrow's or al-Shabaab's fame without explaining why they are famous or what they are famous for.

The Ninth Circuit has observed:

Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

Hankey, 203 F.3d at 1172 (citing United States v. Mills, 704 F.2d 1553, 1559) (11th Cir. 1983).

The United States should not be forced to present its case in a vacuum.  See United States v. Benkahla, 530 F.3d 300, 309-10 (4th Cir. 2008) (affirming admission of evidence concerning al-Qaeda in a case involving the Taliban and Lashkar-e-Taiba, holding that the "evidence required to evaluate the indictment involved a broader frame of reference," and that the testimony about a wide range of ideas, individuals and groups was necessary for the jury's understanding of the evidence).

Accordingly, while the United States has no intention of eliciting testimony concerning Osama bin Laden, September 11, 2001, or al-Qaeda attacks on United States interests, the Court should permit the United States to make references to al-Qaeda relevant to Ayrow and al-Shabaab, as described above.

DATED:     December 20, 2012

                              Respectfully submitted,

                              LAURA E. DUFFY
                              United States Attorney

                              *William P. Cole*
                              WILLIAM P. COLE
                              CAROLINE P. HAN
                              Assistant United States Attorneys
                              STEVEN P. WARD
                              Trial Attorney

                              Attorneys for Plaintiff
                              United States of America

10cr4246-JM