UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BASAALY MOALIN, et al.,<br><br>　　　　　　Defendants. | Case No. 10CR4246-JM<br><br>**ORDER RE: DEFENDANTS' JOINT MOTION FOR COURT ORDERED REMEDIES** |

On January 28, 2013 Defendants Basaaly Moalin, Mohamed Mohamed Mohamud, Issa Doreh and Ahmed Nasir Taalil Mohamud (collectively "Defendants") filed a motion entitled "Defendant's (sic) Joint Motion for Court Ordered Remedies to Address the Government's violation of Brady v. Maryland ("Motion")." The Government opposes the motion. To remedy the alleged Brady violations, Defendants seek to have the Government produce several documents or categories of documents. Each document or category of documents is discussed in turn.

Elimination of Redactions, the Emails

At issue are four pages of redacted emails between the Government's linguist and FBI Special Agent Michael Kaiser. (Defendants Exh. 1). Three are dated in 2008 and one from 2010. In the first 2008 email, the linguist writes, "Someone told me that Shiqalow might be an aka for Ayrow." In response, FBI Agent Kaiser stated "That is correct. It is a slurred together version of Sheikh Ayrow." Two years later, in April 2010, the linguist noted that the name of Aden Ayrow was used in the header

for certain summaries even though Moalin called the other person in the conversation "Shiqalow" and inquired about the discrepancy. In another 2008 email the linguist responds to an email from FBI Agent Kaiser that "As for Basaaly's statement that he spoke personally with Mukhtar Robow, we do not have any calls that sustain that claim. So, we cannot give you any explanation for that statement." The linguist also noted that "Basally, however, sometimes appears to brag about things." In the last 2008 email, the linguist stated, regarding an unidentified conversation, "I think it's administration related." He also added that the people involved in the calls "only expressed support for regional development and not anti-TFG." He also stated that the rise of power of the Hawiye clan "is the root of the problem that Somalia is facing today." Defendants argue that this shows that the linguist is biased against the Hawiye clan.

Defendants argue that the emails between the linguist and Agent Kaiser discussing the identity of Sheik Ayrow as Shiekalow are Brady material because the identity of the individual on the recorded conversations is a material issue. In response, the Government states that it does not intend to ask either its linguist or any FBI agent to offer an opinion of whether Sheikalow is Aden Ayrow and notes that the transcripts of the audio calls do not facially identify Sheikalow as Ayrow. Seen in this light, the Government concludes that the emails are not Brady materials.

At the outset the court notes that the Government has an on-going duty to disclose "evidence favorable to an accused . . . whether the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady remains the touchstone for the Government's disclosures.

In order to determine whether the redacted portions of the emails constitute Brady material, the court requests that the Government submit unredacted versions of the emails for in camera review. Upon receipt and review of the unredacted emails, the court will revisit this issue.

The Linguist's Biographical/Psychological Assessment of Moalin

Defendants seek the production of a general assessment questionnaire completed by the linguist wherein he stated, among other things, that Moalin "tends to exaggerate when dealing with other Somalis, he's bothered by the suffering and destruction in Somalia, etc." Defendants seek to discover information about the linguist's opinions of Moalin's motivation and personality traits.

1   In response, the Government responds that there is no discovery rule requiring the production
2   of the information sought by Defendants
3   While the opinions of a linguist concerning an individual's personality, behavior, and attitudes
4   may be of little value on the issue of what Defendants characterize as a "psychological profile" of
5   Moalin, (Motion at p.13:10), the court grants the motion to a limited extent because such evidence may
6   show bias on the part of the witness. The Government shall produce the linguist's unredacted response
7   to question numbers 89-93. Alternatively, the Government may submit the unredacted responses to
8   the court for in camera review.

Mr. Moalin's Notebook

   One box of documents seized from Moalin's apartment contains a blue notebook. The
notebook contained Post-its, apparently authored by the linguist, concerning statements in the notebook.
Defendants also represent that the notebook was not listed on the inventory of the box. Some of the
Post-its placed on the notebook by the linguist identify "list of donors," "home project" and identifies
the names of two of the Djibouti deponents and lists possible problems and solutions in the region.

   In response, the Government states that it advised Defendants in November 2010 that it could
inspect the contents of the box. Defendants did not ask to review the documents until January 2013.
It also represents that the Post-its were by a different linguist than the one discussed above.

   The court denies this part of the motion as moot because Defendants have obtained access to
the notebook and the Post-its and Defendants fail to demonstrate that the Post-its constitute Brady
material.

The contents of the "1A Envelope"

   In a Form 302, reference is made to placing documents in the "1A envelope." Included is a
document identifying about 80 names on the ledger and listed donations of $25,750. Defendants
contend that they "believe" this envelope may contain exculpatory evidence.

   The court denies this portion of the motion because Defendants fail to establish any basis for
its production other than as a possible fishing expedition.

The Line Sheets

   Defendants seek discovery of the line sheets for conversations recorded pursuant to FISA. The

Government originally stated that no such line sheets exist. However, some of the Jencks materials reveal that line sheets may have existed for some, if not all the telephone calls. The absence of line sheets has purportedly made discovery more difficult for Defendants.

As addressed on several previous occasions, the court denies the motion because Government represents that such line sheets do not exist and it is under no duty to independently create such line sheets.

Finally, the court respectfully takes exception to Defendant Moalin's reference to his "as yet undecided December 9, 2011, pretrial motion for . . . Brady materials." (Ct. Dkt. 92). Since the earliest of the approximately 14 pre-trial conferences, the court has monitored the status of discovery, constantly importuning the Government to provide all discovery, including Brady, as soon as practicable. The court is confident the Government has constantly felt the court's pressure to provide this material. Moreover, the Government is under a legal duty to provide Brady material on its own. To suggest that Brady material is outstanding because the court has been lax in this regard mischaracterizes the efforts and prior orders of this court. The court invites counsel to review transcripts of all prior hearings and, if it provides comfort to counsel, this court, once again, orders the Government to provide all outstanding Rule 16 discovery, including Brady material, to Defendants forthwith.

In sum, the Motion is granted in part and denied in part.

**IT IS SO ORDERED.**

DATED: January 30, 2013

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties