1                    United States District Court

2                  Southern District of California

3

4   UNITED STATES OF AMERICA,        )
                                     )
5                     Plaintiff,     )
                                     )
6      vs.                           ) Case No. 10-CR-4246 JM
                                     ) Jury Trial/Day 9
7   BASAALY SAEED MOALIN,            ) Friday, February 8, 2013
    MOHAMAD MOHAMAD MOHAMUD          )
8   ISSA DOREH,                      ) Volume 9
    AHMED NASIR TAALIL MOHAMUD,      )
9                                    )
                      Defendants.    )
10  _____ )

11

12              Before the Honorable Jeffrey T. Miller
                   United States District Judge

13

14

15

16

17

18

19

20  Official Interpreters:   Ayderus Ali, CCI
                             Fanik Jama, CCI
21

22  Official Court Reporter: Debra M. Henson, CSR, RPR
                             U.S. Courthouse
23                           221 W. Broadway, Suite 5190
                             San Diego, CA  92101
24                           (619) 238-4538

25
                  Record produced by stenographic reporter

```
 1    Appearances

 2    For the Government:        Laura E. Duffy
                                 UNITED STATES ATTORNEY
 3                               William P. Cole
                                 Caroline P. Han
 4                               ASSISTANT U.S. ATTORNEYS
                                 Steven P. Ward, Trial Attorney
 5                               U.S. DEPARTMENT OF JUSTICE
                                 880 Front Street, Suite 6293
 6                               San Diego, CA  92101

 7    For the Defendants:
      (Mr. Moalin)              Joshua L. Dratel, Esq.
 8                              Alice Fontier, Esq.
                                OFFICE OF JOSHUA L. DRATEL
 9                              2 Wall Street, Third Floor
                                New York, NY  10005
10
      (Mr. M. Mohamud)          Linda Moreno, Esq.
11                              LINDA MORENO, P.A.
                                P.O. Box 10985
12                              Tampa, FL  33679

13    (Mr. Doreh)               Ahmed Ghappour, Esq.
                                LAW OFFICES OF AHMED GHAPPOUR
14                              P.O. Box 20367
                                Seattle, WA  98102
15
      (Mr. A. Mohamud)          Thomas A. Durkin, Esq.
16                              Janis Roberts, Esq.
                                DURKIN & ROBERTS
17                              2446 N. Clark Street
                                Chicago, IL  60614
18

19

20

21

22

23

24

25
```

1          San Diego, California - Friday, February 8, 2013

2          (Defendant A. Mohamud is being assisted by a Somali

3     interpreter.)

4               THE COURT:  Good morning, ladies and gentlemen.

5     Thank you for your promptness.  Looks like the rain has held

6     off for a little bit, which is nice.  And we are ready to

7     resume with reading I assume.  Mr. Dratel, is that what we

8     have at this time?

9               MR. DRATEL:  Well, I was finished, your Honor, so

10    Mr. Ward was going to --

11              THE COURT:  Very good.  Mr. Ward, cross-examination

12    of Mr. Chang?

13              MR. WARD:  Yes, your Honor.

14                         Christopher Chang

15    was called by the defense, was previously sworn, and

16    continued to testify as follows:

17                         Cross-Examination

18              BY MR. WARD:  Q.  I just have a few questions about

19    some of the transcripts that you read with Mr. Dratel

20    yesterday, and I realize you don't have them up in front of

21    you, but to the extent I have questions, I'll try and use the

22    Elmo.

23    A.  Okay.

24    Q.  And you do have a monitor next to you also; do you see

25    that?

1   A.   Yes.

2   Q.   Okay.  Now, Mr. Chang, you don't speak Somali, right?

3   A.   No, I don't.

4   Q.   Okay.  And you didn't have any role in the translation

5   and that portion of the preparation of the transcripts; is

6   that correct?

7   A.   That's correct.

8   Q.   Okay.  And notwithstanding that, as like an investigator

9   in performing paralegal duties on the case, did you see

10  versions of the transcripts prior to the point at which they

11  were edited and presented yesterday in court?

12  A.   I have, yes.

13  Q.   Okay.  Turning to Government's exhibit -- excuse me --

14  Defense Exhibit TT-130.

15          MR. DRATEL:  May I give a copy of this to the

16  witness?

17          MR. WARD:  Yes, thank you.

18          BY MR. WARD:  Q.  Now, this TT-130 is the defense

19  version of the January 1st call that's Government's Exhibit

20  130, and it's a call between the defendant Basaaly Moalin and

21  the individual identified as Sheikalow; is that correct?

22  A.   Correct.

23  Q.   And in this call Sheikalow, who has identified himself as

24  al-Shabaab in other calls --

25          MR. DRATEL:  Objection, your Honor.

1          THE COURT:  The objection is sustained.

2          BY MR. WARD:  Q.  Well, if we could go to

3    Government's Exhibit 136.

4          THE COURT:  There may be a reference -- I think

5    it's just to the form of the question, Mr. Ward.  There may

6    be a reference to other transcripts where Sheikalow is

7    identified as al-Shabaab or there's a cross-reference, but I

8    don't -- go ahead and state the ground for your objection,

9    please, Mr. Dratel.

10          MR. DRATEL:  Well, I have several objections.  One

11    is that we're just going to have another session of reading

12    all the tapes; that's beyond the scope of direct.

13          THE COURT:  Well, I don't think that's --

14          MR. DRATEL:  Well, he's referring now to another

15    tape we didn't talk about yesterday at all with Mr. Chang.

16          THE COURT:  I have Exhibit 130 referred to in

17    direct examination yesterday.

18          MR. DRATEL:  He just referred to -- he said

19    referring to another, he said 136, one other tape that was

20    not discussed at all.  I mean he said --

21          THE COURT:  The objection is sustained.  I thought

22    it was a reference to 130.

23          MR. WARD:  Thank you, your Honor.

24          BY MR. WARD:  Q.  Mr. Chang, in the portion of

25    TT-130 that the defense submitted that is in addition to what

1    the government put in its exhibit, it starts out at the --

2    towards the bottom of page 3, Do you have any news from the

3    other side.  Do you see that there?

4    A.  Yes, I do.

5    Q.  Okay.  And as you follow over to the next page, the

6    individual -- well, in your transcript it's "unknown male,"

7    but it's Sheikalow, right?

8    A.  Correct.

9    Q.  Do you agree with me that he's giving an update of what's

10   been going on with al-Shabaab in this area?

11             MS. MORENO:  Objection.

12             MR. GHAPPOUR:  Objection.

13             MR. DRATEL:  Objection.  Is he agreeing with

14   al-Shabaab?  I mean the witness is a reader, and --

15             THE COURT:  Well, it calls for speculation --

16             MR. DRATEL:  Yes.

17             THE COURT:  -- and it calls for a conclusion.

18   Sustained on that ground.

19             BY MR. WARD:  Q.  Well, at the top of the page,

20   page 4, does it read, Shabaab guys replied if you were ready

21   to fight, you could come out earlier when the foreigners were

22   here?

23   A.  Yes, it does say that.

24   Q.  Okay.  And further down does it say, Today all of you

25   need each other, including the reliberation fighters, Shabaab

1   and people?  True?

2   A.  Further down into the government's translation.

3   Q.  No, I'm talking about on your -- the transcript that's

4   TT-130, about the middle of the page.

5   A.  Yes, it does say that.

6   Q.  Okay.  And about two blocks further down, there's another

7   reference to Shabaab:  That is where the reliberation and

8   Shabaab both gets most of their support; is that correct?

9           MR. DRATEL:  Objection, your Honor.  That's not

10   part of the additional material; that's part of the original

11   government translation.

12           THE COURT:  Is that true -- Mr. Ward?

13           MR. DRATEL:  Yes.

14           THE COURT:  -- Mr. Ward?

15           MR. WARD:  It appears to overlap with it, yes, your

16   Honor.

17           THE COURT:  Okay.  I'll sustain the objection.

18           BY MR. WARD:  Q.  Well, but back on the page

19   number -- page number 3, before any of this conversation

20   regarding Shabaab or al-Shabaab, does the defendant Basaaly

21   Moalin kind of get the jump on Sheikalow and say, I have very

22   good and regular communication with those guys?

23           MR. DRATEL:  Objection as to form, your Honor, get

24   the jump on.

25           THE COURT:  The objection is sustained.

1           BY MR. WARD:  Q.  The question is before Sheikalow

2    gave any update or referred to al-Shabaab, did Basaaly Moalin

3    on page 3 of government -- of Defense TT-130 say, I have very

4    good -- excuse me -- I know everything about there, I have

5    very good and regular communication with those guys?

6           MR. DRATEL:  Objection; it's a compound question,

7    your Honor.  He can ask him what's in the transcript is one

8    thing, but to try to --

9           THE COURT:  I don't think it's a compound question,

10   but if all we're doing is repeating what was stated

11   yesterday, I think this is cumulative.  The transcript speaks

12   for itself and there's no need for the witness to merely read

13   again what's been read yesterday.  And to the extent that the

14   questions are asking the witness to characterize what might

15   have been said or ask for speculation, those questions are

16   not proper.

17          MR. WARD:  Thank you, your Honor.

18          BY MR. WARD:  Q.  Now, Mr. Chang, moving on to

19   government exhibit or to Defense Exhibit TT-142; do you have

20   that in front of you?

21   A.  Yes, I do.

22   Q.  Okay.  Now, this is a February 13, 2008 call, and it's

23   between Basaaly Moalin and the defendant Mohamad Mohamad

24   Mohamud; is that correct?

25   A.  Correct.

1   Q.  And on page 2 of TT-142 I believe on direct yesterday you

2   testified that the additional portion that begins at, He

3   asked me to send the information back to him, that that

4   provided the conversation that the government omitted from

5   its transcript, which is Exhibit 142; is that correct?

6   A.  I don't have the binder with the government calls in it,

7   so I can't sort of -- that may refresh my memory.

8   Q.  Okay.  Well, why don't I ask it to you this way.

9   Notwithstanding whether it picks up exactly where the

10  government left off or not, would you agree with me that

11  TT-142 now makes it appear like there's one continuous

12  conversation being had?

13          MR. DRATEL:  Objection, your Honor; foundation.

14          THE COURT:  The objection is overruled.  Mr. Chang,

15  you may answer that question if you are able to.

16          THE WITNESS:  Again, it's difficult to see that

17  without seeing sort of the time line from the government

18  call.

19          BY MR. WARD:  Q.  Oh, yeah.  The binder's right up

20  there.  Oh, I'm sorry.  Okay.  Just ask you to turn to 142.

21          MR. DRATEL:  Your Honor, I'm also going to object

22  based on mischaracterization of the direct testimony

23  yesterday.

24          THE COURT:  I don't know that there's a question

25  pending right now.  Let's see if there is.  Mr. Ward, you may

1    proceed with your next question.  I don't think there's one

2    pending.

3              BY MR. WARD:  Q.  Do you have 142 in front of you

4    there, Mr. Chang?

5    A.  I do.

6    Q.  Okay.  And let me catch up to you.  Do you see on page 2

7    of Government's 142 where there is at the one minute mark it

8    just Sheik Mohamad:  Ah-ha?

9    A.  Yes.

10   Q.  Okay.  Now, if you look on TT-142, it says unknown male,

11   but it says, Yes.

12   A.  Correct.

13   Q.  Okay.  Now, so I guess my question to you is whether or

14   not this additional translation that's in TT-142 picks up

15   with right after Sheik Mohamad is quoted in 142, the

16   government's exhibit, as saying ah-ha.

17   A.  I couldn't say whether it exactly drops in.  As far as I

18   know, that is the, you know, the portion that is missing from

19   this call.

20   Q.  So as far as you know, it's the portion that's missing

21   from --

22   A.  Correct.

23   Q.  All right.  And would you agree with me though that as

24   this transcript reads right now, it's looks like it's one

25   continuous conversation; is that correct?

1            MR. DRATEL:  Objection as to form.

2            THE COURT:  The objection is overruled.  You may

3    answer that.

4            THE WITNESS:  It would appear as though it's a

5    continuation of the conversation.

6            BY MR. WARD:  Q.  Okay.  And the -- I guess the

7    question that I had is do you see, oh, in about the middle of

8    the page at page 2, the unknown male responds two times in a

9    row; do you see that?

10   A.  Yes, I do.

11   Q.  All right.  So it's Basaaly:  I called him this morning

12   but was not able to get him.  Then the unknown male says,

13   Okay.  Then the unknown male says, Yes.

14   A.  Correct.

15   Q.  Okay.  And so that reading this, would you agree with me

16   that, you know, people reading this would think that the

17   person down below, who Basaaly Moalin refers to as he asked

18   me to send the information back to him, that they would think

19   it's this person identified up top as Majadhub?

20           MR. DRATEL:  Objection, your Honor; it calls for,

21   people would think.

22           THE COURT:  The objection is sustained.

23           BY MR. WARD:  Q.  Well, sir, let me ask you this.

24   Did you have an opportunity to take a look at what the --

25   what the transcript looked like before -- the transcript of

1    this call looked like before TT-142 was brought to court?

2              MR. DRATEL:  Objection as to form.  Which

3    transcript?

4              THE COURT:  I think he's referring to 142; is that

5    correct, Mr. Ward?

6              MR. WARD:  Your Honor, no, no, no.  Your Honor, I

7    have another copy of what was the defense translation of 142

8    and I have a question for the witness.

9              THE COURT:  Okay.

10             BY MR. WARD:  Q.  So, Mr. Chang, would you take a

11   look at this document here.  And does that appear to be a

12   transcript that contains --

13   A.  That contains?

14   Q.  -- that contains a more fulsome translation of the

15   conversation that's in TT-142?

16   A.  And this appears to be from just having a glance at it

17   alongside TT, it appears to be the same -- same conversation.

18   Q.  Okay.  And you recognize that as having been prepared by

19   the translator that's working for the defense?

20             MR. DRATEL:  Objection, your Honor; foundation.

21             THE COURT:  The objection is overruled.  You may

22   answer.

23             BY MR. WARD:  Q.  I mean if you recognize it.

24   A.  I recognize it because these are how our -- many of our

25   -- the translations that the defense team had prepared, this

1   is what they looked like, so yes, I recognize it in that

2   respect.

3   Q.  All right.  Now, I have to admit I gave you my only copy.

4   If you don't mind, I just want to direct your attention to

5   one block here at the bottom of -- do you see that at the

6   bottom of page 2?

7   A.  Yes, I do.

8   Q.  Okay.  Now, it's the last block there, and it reads, But

9   I saw the other man.  I told how it is need and I repeated

10  for him.  He asked me to send the information back to him

11  again.  Now, does that appear in TT-142?

12  A.  I would say that in TT-142 the line appears which is very

13  similar, but it's not exactly the same as the one that you've

14  given me.

15  Q.  Where is that in TT-142?

16  A.  In TT-142 Basaaly says, He asked me to send the

17  information back to him again, which is what is said in page

18  2 of the document that you've just given me.

19  Q.  If you don't mind, let me just read alongside you since

20  that's my only copy.  Now, I'm not talking about this, I'm

21  talking about the defense transcript.

22  A.  Yes, yes.

23  Q.  Okay.  And when we look at it, the unknown male says,

24  Okay.  Is that correct?

25  A.  Correct.

1    Q.  You following along with me?  Right after Okay, does the

2    defense transcript read, But I saw -- I saw the other man?

3    A.  It doesn't.  It reads, Unknown male:  Yes.  If that's

4    what you're referring to.

5    Q.  No, no, no.  Exactly, correct.  I get it.  So in TT-142

6    what you're telling me is unknown male says yes, so -- but it

7    doesn't include this block that I just read, But I saw the

8    other man.

9    A.  But I think just from my experience with reading some of

10   these transcripts, sometimes there's someone who speaks --

11   when there's just a simple word like "okay" or "yes,"

12   sometimes, you know, he says okay, yes and he --

13   Q.  Sure.

14           THE COURT:  Well --

15           MR. DRATEL:  Your Honor, may we have a sidebar?

16           THE COURT:  No, that's not necessary at this point.

17   Mr. Ward, you're asking questions in such a way that they're

18   eliciting answers from this gentleman which go beyond what is

19   there and what is not there, and now he's talking about what

20   people typically say or what people typically mean and how

21   they typically express themselves, and I don't think that's

22   within the witness's purview at this point.

23           MR. WARD:  Sure.

24           THE COURT:  So I'm going to strike the last answer

25   and admonish the jury to disregard it.

```
 1              MR. DRATEL:  Your Honor, there's another issue that
 2   is more fundamental with respect to the Court's earlier
 3   rulings with respect to what comes in and doesn't come in;
 4   that's the basis.
 5              THE COURT:  Okay.  Okay.  Let's continue on with
 6   the questions, and we'll -- I'll see if there's a need for a
 7   sidebar, but I don't see one at this point.
 8              MR. DRATEL:  Thank you, your Honor.
 9              THE COURT:  Go ahead, Mr. Ward.
10              BY MR. WARD:  Q.  So the unknown male says, Okay.
11   In the transcript that is not in evidence, there is Basaaly
12   Moalin saying, But I saw the other man.  I told --
13              MR. DRATEL:  Your Honor, I object -- I object
14   because --
15              BY MR. WARD:  Q.  And then -- can you follow along
16   with me?
17              THE COURT:  All right.  Mr. Ward, hold on.  Hold on
18   just a moment.  I'll see counsel at the side of the bench.
19         (Following is a sidebar conference.)
20              MR. DRATEL:  Your Honor, that wasn't part of the
21   106 --
22              THE COURT:  Mr. Dratel, please, let the court
23   reporter get situated here.
24              MR. DRATEL:  Sorry, your Honor.  The part that he's
25   reading right now, it's not what we asked for as part of the
```

1   106, so if -- he knows it's a continuous conversation and

2   basically's trying to say to the jury that we left something

3   out of the transcript.  So it wasn't admitted; it's never

4   been admitted.

5                   THE COURT:  Mr. Ward?

6                   MR. WARD:  Your Honor, this just playing fast and

7   loose.  This is a section of the conversation which shows

8   that it's a separate conversation where the individual

9   referenced is Sahal, the guy who works on charity and

10  orphans, and by eliminating that and then presenting a

11  transcript to the jury that does not have ellipses to show

12  that there's omitted conversation, it's completely misleading

13  the jury as to what's going on.  And you can see that their

14  transcript picks up right there so that people when they look

15  at this think oh, well, this is a reference to what was going

16  on with the guy referred to as Majadhub, and it's perfectly

17  bracketed at the end when they go back and they start talking

18  about the Dhunkaal stuff.

19                  THE COURT:  Well, here's the situation.  First of

20  all, I think it's -- what you're trying ultimately to

21  establish here is proper.  If you want to add additional

22  material to what has been added as 106, it's proper, but it's

23  awfully cumbersome in the way its coming in with this

24  witness.  You may need to recall Agent O'Very because he's

25  the one who's been basically already identified as the

1    designated reader, and that might be a better way to do it if

2    there are a couple of passages here that came in under 106

3    and that you want to in essence add something to --

4              MR. WARD:  Right.

5              THE COURT:  -- a 106 submission which gives it a

6    little more context.  But this is really becoming cumbersome,

7    and I'll tell you, I think it's completely lost on the jury

8    at this point.

9              MR. WARD:  Your Honor, all I'm going to ask is that

10   the witness be asked to add an ellipsis or some notation in

11   that transcript that there is omitted conversation.

12             THE COURT:  Well --

13             MR. DRATEL:  Well, I'm going to make this

14   representation.  Obviously we haven't put the transcript to

15   the jury.  We'll -- of course if it's not a continuous

16   conversation, we'll reflect that.

17             THE COURT:  Well, as I indicated, I suggested one

18   way you can do this.  I assume O'Very's still --

19             MR. WARD:  He is, your Honor.

20             THE COURT:  I think with this witness you can ask

21   if there is a certain part of the transcript that did not

22   come in through the government, is not part of the 106,

23   but --

24             MR. DRATEL:  Just some conversation.

25             THE COURT:  -- but is additional conversation on

1    the same subject, and to the extent you're going to refer to

2    this same subject, make it a real neutral reference, okay, so

3    you're not asking him to characterize what the testimony was

4    or --

5              MR. DRATEL:  Or suggesting that he had something to

6    do with it.  I mean you can ask him --

7              THE COURT:  No, no, no.  I don't think -- no, he

8    hasn't indicated he was -- he participated in the preparation

9    of the --

10             MR. DRATEL:  But the way the questions are asked --

11             THE COURT:  But we have a problem because some of

12   the questions now are awkward, some of the objections are

13   pretty hypertechnical, although perhaps well-taken, and the

14   jury is completely lost is my view of this.  So I've given

15   you a suggestion the way you can do it.  Refer to a 106

16   that's been submitted, have the witness, if this be the case,

17   confirm that there was something not included even under the

18   106 transcript that followed what the general subject was,

19   and then, if you want, call O'Very back and have that come in

20   as additional material.

21             MR. WARD:  Thank you, your Honor.

22             THE COURT:  Okay.

23             MR. DRATEL:  Just on the objections, if he

24   continues to invest every question with a characterization,

25   I'm going to keep objecting.

1          THE COURT:  Well, you can object, but these

2     sidebars are really unacceptable.  We just have to keep

3     moving this process along.  All right.

4          MR. DRATEL:  Well, to understand why the whole 106

5     thing sort of dictates to us what we can put in front of the

6     jury and what we don't put in front of the jury, that's all,

7     so -- I didn't want to do anything to say that somehow the

8     transcript got changed.  It's what was admitted got changed.

9     That's what dictates what's in that transcript.

10         THE COURT:  Okay.  Are we together on how we're

11    going to proceed at this point?

12         MR. WARD:  Yes, your Honor.

13         THE COURT:  Okay.  Good.

14      (Sidebar conference concludes.)

15         BY MR. WARD:  Q.  All right.  Well, setting that

16    aside for a minute then, Mr. Chang, do you have

17    government's -- or excuse me -- Defense TT-155?

18    A.  Yes, I do.

19    Q.  And in TT-155, this is a conversation between Basaaly

20    Moalin and the defendant Mohamad Mohamad Mohamud; is that

21    correct?

22    A.  Correct.

23    Q.  And that's from April 17.  And in both of the

24    transcripts, either the government's version or the defense

25    version, there's never a mention specifically what's going

1  on, there are references to the man; is that correct?

2  A.  If you point me to where you're -- where exactly you're

3  making reference to, then I can --

4  Q.  Oh, I'm sorry.  Here on page 2 in TT-155, Moalin says, We

5  are receiving calls from there.  Do you see that?

6  A.  Yes, I can.

7  Q.  And I think you characterized this phone call on direct

8  as about fundraising or money; is that correct?

9  A.  I think that's correct.

10 Q.  And ultimately in this conversation do Sheik Mohamad and

11 the defendant Basaaly Moalin determine that they're going to

12 have 20 to 30 people meet at the mosque, on page 4?

13 A.  It appears so from the conversation.

14 Q.  Right.  I mean Basaaly Moalin says if you can get 30

15 people who trust each other, or maybe 20, ask them for a

16 little contribution.  Is that correct?

17 A.  That's correct.

18 Q.  Okay.  Then two lines down though -- and this is in a

19 portion that the government failed to put in its

20 transcript -- Basaaly Moalin says -- he says don't make it a

21 large crowd.

22        MR. DRATEL:  Objection, your Honor.  It's not --

23 it's not part of the 106.

24        THE COURT:  That's fine.  Are you saying this was

25 in the government's transcript?

1        MR. WARD:  It was not in the government's

2  transcript.  It's in the defense transcript, your Honor.

3        THE COURT:  The objection is sustained.  We're only

4  at this time keying on what is in the -- what we know is the

5  106.  You've heard references to 106 transcripts.  These are

6  the transcript editions that were provided by the defense,

7  ladies and gentlemen, just so that you have some

8  understanding of what any reference to 106 means; it's --

9  that just means the transcripts that came through the last

10  day or thus far additional transcripts submitted by the

11  defense.  Okay.  If it wasn't submitted by the government and

12  was not submitted by the defense initially, we won't get into

13  it at this point.

14        BY MR. WARD:  Q.  Okay.  Mr. Chang, going to

15  Government's TT-144.

16        MR. DRATEL:  Sorry, your Honor.  This is Defense's

17  TT-144.

18        MR. WARD:  I'm sorry.  I misspoke yet again.

19        BY MR. WARD:  Q.  Defense Exhibit TT-144?

20  A.  Yes, I have that.

21  Q.  Okay.  Now, this transcript, unlike the other transcripts

22  you testified about yesterday, that's actually the

23  government's transcript of that conversation, isn't it?

24  A.  Yes.

25  Q.  Okay.  It has the big FBI seal on it, okay?  So that was

1   Liban Abdirahman's transcript then, right?

2           MR. DRATEL:  Objection, foundation.

3           THE COURT:  The objection is overruled.  You may

4   answer that if you're able to, Mr. Chang.

5           THE WITNESS:  I don't know if that's -- if you're

6   referring to the -- your translator, I don't know the name of

7   your translator.

8           BY MR. WARD:  Q.  Okay.  But it does have that big

9   FBI seal on the front of it?

10  A.  Yes, correct.

11  Q.  Okay.  And then if you could turn to TT-131, the defense

12  version of Government's Exhibit 131; do you have that?

13  A.  Yes, I do.

14  Q.  Okay.  And, Mr. Chang, is this a January 3 call between

15  Basaaly Moalin and an individual known as Sheikalow?

16  A.  Correct.

17  Q.  And is it fair to characterize this call as a call about

18  Basaaly Moalin's house in Mogadishu?

19          MR. DRATEL:  Objection; characterization, no

20  mention of Mogadishu.

21          THE COURT:  The objection is overruled.  The

22  witness may answer the question.  The question is whether or

23  not it's fair to characterize the call in that fashion.  Mr.

24  Chang, you can answer that.

25          THE WITNESS:  I think yesterday I stated that it

1    was about his house and about general events in Somalia.  I'm

2    not -- I'm not aware of whether it's -- you know, you can say

3    that the house is in Mogadishu or not.

4            BY MR. WARD:  Q.  All right.  Well, at the bottom

5    of the transcript on page 5 -- this is a portion that was up

6    on the Elmo yesterday, but you didn't read it into the

7    record.  Did Basaaly Moalin tell Sheikalow, The only problem

8    with the house is the house is in the area that has trees.

9    If some is given directions, the house with the big trees, it

10   can be easily recognized?

11           MR. DRATEL:  Your Honor, I don't mind the question,

12   but I do mind the characterization about not being read

13   yesterday because in fact it's part of the government's

14   transcript.

15           THE COURT:  Well, the objection is overruled.  The

16   witness may answer the question.

17           THE WITNESS:  Sorry.  Could you repeat the

18   question.

19           BY MR. WARD:  Q.  I'm just asking you to confirm

20   that in defense transcript TT-131 that the defendant Basaaly

21   Moalin told Sheikalow, The only problem with the house is the

22   house in the area that has trees.  If some is given

23   directions, the house with big trees, it can be easily

24   recognized.

25   A.  Yeah, that appears in the transcript.

1    Q.  And later on does he tell him, I even -- this is Basaaly

2    Moalin telling Sheikalow -- I even used to hide that place

3    weapons and documents while I was there and the men were

4    there.

5    A.  That is correct.

6    Q.  And, Mr. Chang, can we take a look at Government's

7    Exhibit 191 -- excuse me -- Defense Exhibit TT-191.  And do

8    you have that?

9    A.  Yes, I have that.

10   Q.  It's a July 13, 2008 call?

11   A.  Correct.

12   Q.  Okay.  And is this a call where Basaaly Moalin and Issa

13   Doreh and two others are on the telephone with a man

14   identified as Farah Yare?

15   A.  That's correct.

16   Q.  And this is a call about money and things that are going

17   on in Somalia; is that correct?

18        MR. DRATEL:  Objection as to vagueness about money.

19   Not sure I understand.

20        THE COURT:  The objection is overruled.  You may

21   answer that if you're able.

22        THE WITNESS:  I think yesterday I stated that I

23   felt this call was mainly about events taking place in

24   Somalia.

25        BY MR. WARD:  Q.  Okay.  But at the bottom of page

1  2, isn't there some discussion between Basaaly Moalin and

2  Farah Yare about money and whether or not it's been received?

3  A.  That's correct.

4  Q.  Okay.  And the money is being sent to this man, Farah

5  Yare; is that correct?

6  A.  According to page 2, he states that we haven't received

7  the money you sent to us.

8  Q.  Okay.  But right before that they're talking about, you

9  know, that the money had been on its way?

10  A.  Again, I'm just reading because obviously the passage

11  is --

12  Q.  Sure.

13  A.  -- so I'm just reading to see.

14  Q.  No.  If I direct your attention to the bottom of page 3,

15  the block where Moalin says, you know, I know you're on a

16  international phone line, first, we ask you to clarify if you

17  received the stuff.  Please give us details about it.

18  A.  Right.  Yes, I can see that.

19  Q.  And Farah Yare responds, First I want to make clear we

20  haven't received the money, we haven't received it.  I'm

21  asking you to follow it up.

22  A.  That's correct.

23  Q.  Okay.  Now, later on in the portions of the call that

24  were added by the defense, at page 4 is Farah Yare talking

25  about the military engagements, the fighting that his troops

1    are engaged in?

2    A.  On page 4 of the defense transcript; is that what you're

3    referring to?

4    Q.  Yes.

5    A.  Again, I couldn't confirm if those -- if he's speaking

6    about his own -- his own troops there.  I know that, again,

7    from a general reading of it, he appears to be speaking about

8    events in Somalia.

9    Q.  Okay.  But I mean at the top of page 4, he does say, We

10   first fought and removed them from the area.  Is that

11   correct?

12   A.  Correct.

13   Q.  Do you see that?

14   A.  Correct.

15   Q.  Okay.  And down a little further below towards the

16   bottom, the last big block, it says, Our soldiers are based

17   on the mountains surrounding the city.  Do you see that?

18   A.  Yes, I can see that.

19   Q.  Okay.  And does Farah Yare, while he's on the line with

20   Basaaly Moalin and Sheik Issa Doreh, does he also talk about

21   retaliating against civilians who support the Ethiopians?

22   A.  Again, as the passages are very long, if you point me

23   towards --

24   Q.  Sure.  Do you see up in the first block on page 4 where

25   it says, It is our stand to disconnect whoever tries to make

1  relationship with them.  We destroy a bakery store who tried

2  to sell bread to them.

3  A.  Yes, I can see that.

4  Q.  Okay.  And that's in the defense portion of the

5  transcript, right?

6  A.  Correct.

7  Q.  Okay.  And further down at the bottom, is there again a

8  discussion about what happened to the two locals -- and we're

9  talking about Somalis here -- who gave supplies by using

10  smuggling routes.  Do you see that in the very last block on

11  page 4?

12  A.  Yes, I can see that.

13  Q.  Okay.  Now, right up above that -- do you recall on

14  direct testimony yesterday in response to a question from Mr.

15  Dratel -- well, actually Mr. Dratel characterized it as the

16  speaker there being some guy named Issa; do you recall that?

17  A.  I do remember him saying Issa.  I can't remember if his

18  exact phrase was some guy or --

19  Q.  Okay.  But Issa Doreh, the defendant who's sitting over

20  there, was on this telephone call, was he not?

21  A.  It appear so to be Issa Doreh, yes.

22  Q.  Okay.  And he's the individual that says, In that

23  situation do you think supplies can reach them through

24  smuggling routes?

25  A.  According to this transcript, that's correct.

1    Q.  Okay.  And then Farah Yare responds, No, no.  Before it

2    happened twice, the locals give them supplies them by using a

3    smuggling routes.  First time a clan has given them 30.

4    After we find out that, we tried to find those who gave them

5    the goats to the enemy.  They flee from the area and moved to

6    another space.  Is that what he says?

7    A.  That's what's -- moves to another place, yeah, that's

8    what's in the transcript.

9    Q.  Okay.  And then he talks about a second incident where a

10   minivan tried to deliver food?

11   A.  Correct.

12   Q.  And he says, We caught the van but the driver escaped.

13   A.  Correct.

14   Q.  Now, ultimately at the end of this conversation, do they

15   return to a discussion, according to the transcript that's

16   in, TT-191, do they return to a discussion of sending the --

17   sending money to Farah Yare in installments?

18   A.  Is this on the last page or what?

19   Q.  The last page, number 9.

20   A.  That's what it states.

21   Q.  Okay.  And he says, It's five boxes.  Right?

22   A.  Correct.

23   Q.  Okay.  And that's Basaaly Moalin there talking about five

24   boxes?

25   A.  Yes.  According to the transcripts, yes.

1    Q.  And then we go back on to Government's Exhibit 191; is

2    that correct?  That's the end of the -- that's the end of the

3    addition there?

4    A.  Yes, I believe so.  I don't have the 191 open from the

5    government binder.

6    Q.  Okay.  Well, I'll give you some time to get there.

7    A.  I don't appear to have it in this binder.  It seems to

8    go -- oh, no, I do.  One second.

9    Q.  All right.  It would be page 7 of 191.

10   A.  Okay.  Yeah, I'm on page 7.

11   Q.  Okay.  And the very first block there, it says the

12   speaker is Sheik Issa, right?

13   A.  Correct.

14   Q.  And does he say -- and this is picking up with the

15   discussion of money being sent in installments, right?  Does

16   he say, Farah Yare, it will come to you, God willing.  Don't

17   worry about that.  We're on its trail, God willing?

18   A.  We are on its trail did you say?

19   Q.  Yes.

20   A.  It doesn't appear to say we are on its trail.

21   Q.  Are you on Exhibit 191?

22   A.  Yes, I'm on 191.

23   Q.  Okay.

24   A.  Oh, yes.  Sorry.  I do see we're on its trail, God

25   willing.  Okay.

1    Q.  All right.  So -- and in both the defense transcript and

2    the government's transcript, there's a discussion of an

3    amount that's going to be sent; is that correct?

4    A.  Again, if you point me to what you're referring to then.

5    Q.  Sure.  If you could take a look at page 6 at the bottom

6    of Government's 191.

7    A.  Yes.

8    Q.  Okay.  And there's a discussion there about it will come

9    in installments, in small portions if God wills, it is five

10   cartons.

11   A.  Correct.

12   Q.  And the defense version of that reads a little bit

13   different, but it says you'll receive the money in

14   installments.  It's five boxes.  When you receive all the

15   boxes, let us know.  We're talking about $5,000 here, aren't

16   we?

17   A.  I wouldn't be able to say the amounts.

18   Q.  Okay.

19   A.  I wouldn't be able to say if it's -- I mean five boxes, I

20   couldn't confirm what that refers to.

21   Q.  If you take a look, if you would, Mr. Chang, at

22   Government's Exhibit 39, which is in evidence, and the one on

23   the Elmo actually has a check mark next to four transactions

24   that went from the Shidaal Express to Farah Yare, and these

25   are all dated after the date of this call, 7-15, 7-15, 7-23,

1    and 8-1.  And would you confirm for me that those amounts

2    1250, 1,030, 1,860, and 860 add up to $5,000?

3    A.  I'd have to work it out, but --

4    Q.  That's okay, Mr. Chang.  Withdraw the question.

5          MR. WARD:  Nothing further, your Honor.

6          THE COURT:  Okay.  Mr. Dratel?

7          MR. DRATEL:  Thank you, your Honor.

8                    Redirect Examination

9          BY MR. DRATEL:  Q.  Mr. Chang, you were asked

10   recently about the -- in the cross-examination about the --

11   something about a van delivering food that was intercepted,

12   and they're Farah Yare's account?

13   A.  Correct.

14   Q.  Do you know whether there was an Ethiopian military van

15   or not?

16   A.  I don't know.

17   Q.  Is it part of a discussion about the Ethiopian troops?

18   A.  It is.

19          MR. WARD:  Objection, your Honor; foundation,

20   characterizes the testimony.

21          THE COURT:  Well, you know the problem, the

22   difficulty I have at this point, Mr. Ward, is that several of

23   the questions that you asked were of a similar nature,

24   although I had requested that the witness not be asked to

25   characterize things, only to give a very short general non or

1  neutral statement of the subject of a transcript itself.

2  I'll allow this, Mr. Dratel, but, once again, there won't be

3  any protracted examination on --

4         MR. DRATEL:  That's my only question on that issue.

5         THE COURT:  Okay.  You may answer that, sir, if you

6  remember it and if you're able to answer it.

7         THE WITNESS:  Yes, I think that's what it was

8  referring to.

9         BY MR. DRATEL:  Q.  Thank you.  If you go to

10  Defendant's TT-144 and Government's Exhibit 144, and you were

11  asked by Mr. Ward -- well, I'll wait for everybody to get to

12  Government's 144.

13  A.  Yes, I have both of them.

14  Q.  Great.  And you were asked about Defense TT-144 as to

15  whether or not it looked like a government transcript because

16  of the various information on it, an FBI seal and all of

17  that, right?

18  A.  Correct.

19  Q.  And just to be sure, if we look at Government's 144,

20  so -- withdrawn.  So, in other words, this was a conversation

21  that appears to have been translated by the government in

22  terms of what the defense put in yesterday had previously

23  been translated verbatim by the government?

24  A.  Correct.

25  Q.  And so just to look at 144, the government's transcript

1    has three, six, nine, 11 lines I think I count -- well, 11

2    sections, 11 exchanges, probably about 15 lines; is that

3    right?

4    A.    On the version in the binder?

5    Q.    Yes, in the binder.

6    A.    Yes, that's correct.

7    Q.    And then it cuts off at 144, right?

8    A.    Correct.

9    Q.    And then what the government had previously translated,

10   the government did not introduce what was introduced

11   yesterday during your testimony, right?

12   A.    Yes, that's correct.

13   Q.    And that's continuing conversation between Basaaly Moalin

14   and Bashir Dini, right?

15   A.    Correct.

16   Q.    And the conversation that the government put in clearly

17   makes it about Aden Hashi Ayrow, right, if you look at 126.

18   Right?

19   A.    Correct.

20   Q.    And then if -- the part that the government had

21   translated but not put in includes -- if we go to page 3 of

22   the -- of the TT-144, what the defense put in yesterday -- if

23   you go to page 3, Basaaly Moalin -- and I'll play Basaaly and

24   you play Bashir Dini, this is part that the government

25   translated but did not include in its 144.  Basaaly:  Based

1   on the knowledge I have with regard to that man --

2   A.  Bashir Dini:  Yes.

3   Q.  Basaaly:  Laughing.  Let alone the Ayr and Habar Gidir

4   that you're talking about.

5   A.  Bashir Dini:  Go on.

6   Q.  Basaaly:  He's even beyond identifying himself as a

7   Somali.  He identifies himself a Muslim.  That is where he

8   stands.

9   A.  Bashir Dini:  Got it.

10  Q.  Basaaly:  Do you understand?

11  A.  Bashir Dini:  Very well.

12  Q.  Basaaly:  So he's not a person who's interested in clan

13  affiliations.  Right?  And that was all in the government's

14  original transcript that it decided not to put in as part of

15  144, right?

16  A.  Correct.

17  Q.  And it was put in by the defense yesterday?

18  A.  Correct.

19          MR. DRATEL:  Nothing further.  Thank you, your

20  Honor.  Thank you, Mr. Chang.

21          THE COURT:  Anything further, Mr. Ward?

22          MR. WARD:  Nothing further, your Honor.

23          THE COURT:  All right.  Was Mr. Chang going to

24  continue on at this point or is he excused?

25          MR. DRATEL:  He may be recalled, your Honor, with

 1    respect to other transcripts as we go.

 2              THE COURT:  Okay.  Are we moving to a deposition

 3    now?

 4              MR. DRATEL:  Oh, yes, yes.  I'm sorry.  Yes.

 5              THE COURT:  Mr. Chang, thank you, sir.  You are

 6    excused subject to being recalled.

 7              THE WITNESS:  Thank you.

 8              THE COURT:  All right.  All right.  I understand we

 9    have a deposition transcript to be played at this time.  And

10    Ms. Fontier, I think this is your bailiwick, and you've got

11    the laboring oar on managing the depositions.

12              MR. DRATEL:  I'm actually going to assist.

13              THE COURT:  Are you going to assist?

14              MR. DRATEL:  For logistical reasons.

15              THE COURT:  I think she's doing fine without you,

16    but I --

17              MR. DRATEL:  She's doing -- it's not for that

18    reason.  It's something more complicated that Ms. Fontier has

19    to do that I can't.

20              THE COURT:  Okay.  Ms. Fontier, why don't you tell

21    us what you have next.

22              MS. FONTIER:  Your Honor, I'm happy to get this

23    process started, but the defense next witness will be Abukar,

24    which is A-b-u-k-a-r, Dahir, D-a-h-i-r, Mohamed,

25    M-o-h-a-m-e-d, Abukar Dahir Mohamed, who was deposed during

1    the week of November 11, 2012 in Djibouti.

2            THE COURT:  Thank you.  What's the approximate

3    length of this deposition transcript?

4            MS. FONTIER:  Your Honor, this is a very lengthy

5    deposition.  The direct is approximately three hours.

6            MR. DRATEL:  We're ready, your Honor.  Proceed?

7    Thank you.

8            THE COURT:  Sure.  Thank you.

9            MR. DRATEL:  I'm going to turn it down.  Going to

10   try another volume just to see if it's all right with

11   everyone.

12       (The video recording was played.)

13           THE COURT:  We're going to have to boost that up a

14   little bit so that the interpreter can be heard, the Somali

15   interpreter.  Unfortunately, the volume's a little bit -- the

16   volume control is a little bit different as Ms. Fontier is

17   questioning the witness and then the -- it's being

18   translated.  But let me enlist the jurors in this as well.

19   We want to make sure that the volume is just right for you,

20   not too loud but sufficient that everyone can hear, so give

21   me a thumb's up when everyone can hear it without it being

22   too loud or overbearing, okay?  It's important that you're

23   hearing what the interpreter, however, is saying in English,

24   okay?

25           MR. DRATEL:  Right.  Okay, your Honor.

1          (The video recording was played.)

2              THE COURT:  Counsel, let's take our break at this

3    time; this seems a convenient time to take a break, getting

4    into TFG functioning.  And, ladies and gentlemen, 15 minutes

5    remember the admonition not to discuss the case or make any

6    decisions at this time.  Thank you.

7          (There was a break in the proceedings.)

8              THE COURT:  Okay.  We have everyone present here.

9    Very good.  We'll continue on then with the deposition.

10             MR. DRATEL:  Thank you, your Honor.

11         (The video recording was played.)

12             MR. DRATEL:  Should we get the exhibit or --

13             THE COURT:  Counsel, it's really up to you as to

14   whether you're tendering the exhibit at this time, whether

15   the testimony is dependent upon it or in reference to it.

16             MR. DRATEL:  I'll get it and then wait until it's

17   referred to, so we'll put it on the Elmo then.  Just want

18   to --

19             THE COURT:  That's fine.  What's it marked now?

20             MR. DRATEL:  C, your Honor.  Might be D, E, and F,

21   your Honor, that he's going to refer to.

22             THE COURT:  B through F?

23             MR. DRATEL:  I think D, as in Dog, through F.  This

24   is D, your Honor.

25             THE COURT:  D through F.  Any objection, Mr. Cole,

1   Ms. Han, any --

2              MR. COLE:  No objection, your Honor.

3              THE COURT:  Okay.  Brief description of documents.

4   How would you like them referred to?

5              MR. DRATEL:  The witness is going to go through

6   them, your Honor.

7              THE COURT:  That's fine.

8          (Exhibit Nos. D, E, F identified.)

9              MR. DRATEL:  There are two.  I'll just say one

10  is -- is a form with names and handwriting, and two are from

11  the ILEYS form and a list of names.  Then E is a document

12  from the ILEYS Foundation, and F is from the ILEYS; it's an

13  orphan sponsorship program.

14             THE COURT:  Okay.  Exhibits D, E, and F are

15  admitted at this time.

16         (Exhibit Nos. D, E, F admitted.)

17             MR. DRATEL:  May we proceed, your Honor?

18             THE COURT:  Please.

19             MR. DRATEL:  Okay.  Thank you.

20         (The video recording was played.)

21             MR. DRATEL:  Your Honor, if I could just -- I'd

22  like to publish the document.

23             THE COURT:  Certainly.  This is page 1 of

24  Defendant's D.  So this is --

25             MR. DRATEL:  This is page 2 of the Defendant's D --

1    this is page 3 of Defendant's D.  Thank you, your Honor.

2              THE COURT:  You're welcome.

3         (The video recording was played.)

4              MR. DRATEL:  Your Honor, publish this -- not just

5    to the jury, at least the front page.  It's in Somali.  Also,

6    your Honor, I'd like to move in translations of D, which I've

7    marked as D, Defense D-T and a translation of E as Defense

8    Defendant's E-T.

9              THE COURT:  Are there any objections?

10             MR. COLE:  No objection.

11             THE COURT:   Okay.  You say D as in Delta?

12             MR. DRATEL:  D as in Delta and then --

13             THE COURT:  So you've got Exhibits D-T, which is a

14   translation of Exhibit D, which is in Somali.

15             MR. DRATEL:  Correct.

16             THE COURT:  Okay.  And then what was the other one?

17             MR. DRATEL:  Echo-T, which is translation of

18   Exhibit E, which is what the witness was just referring to.

19             THE COURT:  Okay.  Very good.  So D-T and E-T are

20   merely translations of Exhibits D and E; is that correct?

21             MR. DRATEL:  Sorry, your Honor?

22             THE COURT:  I was asking are D-T and E-T merely

23   translations of D and E?

24             MR. DRATEL:  Correct, your Honor.

25             THE COURT:  Okay.  D and E came in earlier, D, E,

1   and F.  Those documents are in Somali?

2              MR. DRATEL:  Not F, your Honor, D and E.

3              THE COURT:  All right.  So is it necessary to even

4   have D and E in evidence?

5              MR. DRATEL:  Well, certainly there are parts of D

6   and E that are -- for example, it's cover page of the

7   foundation report.

8              THE COURT:  Okay.

9              MR. DRATEL:  And there's some notes and things like

10  that.  And with respect to D, it has the actual signatures of

11  the, you know, some fingerprints.

12             THE COURT:  Before we -- D-T and E-T are admitted

13  at this time.  Before we excuse the jury, may I see counsel

14  just for scheduling purposes?  And, ladies and gentlemen, if

15  you'll just be patient with us for a moment.

16        (Exhibit Nos. D-T and E-T identified and admitted.)

17        (Following is a sidebar conference.)

18             THE COURT:  I've been thinking perhaps we should

19  give the jury time off for good behavior this afternoon.  I

20  don't want to throw a kink into any scheduling plans, but,

21  you know, we've been going pretty hard for the entire week,

22  and this is the kind of -- the kind of evidence that really

23  requires, you know, very close attention by the jury,

24  transcripts, depos, and all that can be a little bit tedious.

25  I was thinking if we cut down on the noon hour, we could let

 1  them go early today, this afternoon.  Might give them a jump

 2  on the rain too.  I don't know how far the commutes are for

 3  some people, but they might appreciate getting a little bit

 4  of an early start.  Is it pouring now?

 5              THE CLERK:  No.

 6              THE COURT:  No?

 7              MR. DRATEL:  No, no.  I see blue.

 8              THE COURT:  Well, it's hard to tell.  But anyway I

 9  just want to get your thoughts on this.

10              MR. DRATEL:  There are probably a few minutes left

11  in this part, and there's a part 2 that's about another hour

12  and a half.  I don't know if you want to go that far, but we

13  could just go through like an hour of the next part.  Mr.

14  Durkin may want to put in his 106s before the weekend, I

15  don't know.

16              MR. DURKIN:  We can do that.

17              MR. DRATEL:  Okay.  So we can do an hour of part 2

18  then, and then --

19              THE COURT:  Let me see how the government --

20              MR. COLE:  Of course if you want to cut lunch short

21  and let them go early, that's fine, but -- let them go before

22  5:00 or 4:30 --

23              THE COURT:  Yes, that's what --

24              MR. COLE:  -- or whatever, do an early break,

25  that's fine.  We'd like to push as much as we can because I

1    really think there's a chance this case can be finished next

2    week, and to -- if we lose a lot of time along the way, more

3    of it's going to roll over to the other week.  I don't --

4    this is the longest deposition.  The next ones are relatively

5    short, and I think we can use the time and get this thing

6    done.  So I'm not worried about losing too much jury time

7    along the way, but that being said, if we shorten lunch and

8    stop early this afternoon --

9              THE COURT:  Well, I was thinking about giving them

10   an hour for lunch, from 12:00 to 1:00, have them back here at

11   1:00, and then go from 1:00 to 3:00, so basically we're just

12   losing maybe a half hour.

13             MR. COLE:  Okay.

14             MR. DRATEL:  Okay.

15             THE COURT:  So we wouldn't be taking a recess this

16   afternoon.

17             MR. DRATEL:  And I think that given the way we

18   scoped it out, I think we'll finish next week anyway.

19             THE COURT:  With everything --

20             MR. DRATEL:  Even if -- no, no, no.  I think we'll

21   finish our case next week and, as the Court initially

22   suggested, argument that following Tuesday.

23             THE COURT:  Is that what you were contemplating,

24   finishing just the evidence next week or finishing the entire

25   case?

1          MR. COLE:  I was thinking we could hopefully get

2     the case to the jury.  I mean there's a lot of days left, and

3     if we use the time --

4          THE COURT:  Well, remember there are four days next

5     week --

6          MR. COLE:  Right.  And this is the longest

7     deposition by far.

8          THE COURT:  Right.  I've been through all of them,

9     I've read them all, so but they go kind of slowly.

10          MR. DRATEL:  As well with the translation and

11     everything unfortunately.  But there's one -- well, he's got

12     another --

13          THE COURT:  Well, I tell you what.  Listen, you

14     know, a half hour's difference isn't going to make -- isn't

15     really going to make a difference whether we get everything

16     done next week or just all the evidence done next week.  So

17     I'll let the jury know what we're planning, and I'm sure

18     they'll appreciate getting on the road by three o'clock

19     rather than 4:30 or later.

20          MR. COLE:  All right.

21     (Sidebar conference concludes.)

22          THE COURT:  All right, ladies and gentlemen.  What

23     we were discussing here was the schedule just for the balance

24     of the day.  It's been a long week, and I know this type of

25     testimony -- transcripts and recordings -- require an awful

 1  lot of attention, close attention.  So what I'd like to do is
 2  this, cut the lunch recess, the noon recess down by half
 3  hour, from 12:00 to one o'clock, have you come back, and then
 4  just go from 1:00 to 3:00 this afternoon and then just stop
 5  this afternoon at three o'clock for today.  That will allow
 6  you to get back on the road to wherever your destinations
 7  are, home or otherwise.  It's supposed to be raining today,
 8  and so that would assist you in that regard.  And we're only
 9  losing about a half hour by doing that, but I think that
10  would be appropriate for us today.
11          So we'll break now, we'll restart at one o'clock.
12  We just may take a short 5-minute recess at some point this
13  afternoon just to let you stretch your legs a little bit and
14  relax, and then we'll stop at three o'clock.  So remember the
15  admonition not to discuss the case or make any decisions at
16  this time.  We'll see you at one o'clock.  Thank you.
17      (The jury left the courtroom.)
18          THE COURT:  Okay.  We're outside the presence of
19  all jurors.  And, counsel, just a very, very short reference
20  to the notice that Mr. Ghappour filed today.  Mr. Ghappour,
21  thank you again.  This really does join the issue with
22  respect to Ms. Franklin's client.  I'll be able to use this
23  in whatever proceeding goes forward.  Have you been in touch
24  with Ms. Franklin?
25          MR. GHAPPOUR:  I was thinking to -- I wanted to see

1    what you thought, your Honor.  I was thinking maybe to bring

2    her in maybe on Tuesday just for our scheduling purposes.

3              THE COURT:  Yes, you can schedule her any time.

4    Actually it would be -- probably not Monday, but Tuesday or

5    Wednesday.  Have her here at either at the beginning of the

6    day or the end of the day with her client and then we'll

7    proceed at that time.  I'll just leave that up to you to

8    arrange for that.  Keep us all in the loop in terms of when

9    we're going to slot that into our schedule.

10             MR. GHAPPOUR:  Absolutely.  Is there anything else

11   you need from me by way of filing?

12             THE COURT:  No, but this was very helpful.  Once

13   again, I greatly appreciate what you did.  And then we'll

14   just take it from there when and if she arrives with her

15   client.

16             MR. GHAPPOUR:  Thank you.

17             THE COURT:  Thank you.  Okay.  We'll see you at one

18   o'clock.

19             MR. DRATEL:  Thank you, your Honor.

20        (There was a break in the proceedings.)

21             THE COURT:  We have everyone present.  Ready to

22   proceed?

23             MS. FONTIER:  Good afternoon, your Honor.  If I

24   may, two exhibits I believe were referenced and were not

25   published to the jury.  May I begin by publishing Exhibits D

1    as well as D-T, which is the translation, and just the first

2    page of E-T, which is also the translation?

3              THE COURT:  Sure.

4              MS. FONTIER:  And I'm placing on the Elmo, on the

5    projector, which is Defense Exhibit D-T, which is the first

6    page of the translation of the document that was Exhibit D,

7    which was referenced in the video.  It begins, the Somali

8    Republic, the Ayr Clan Elders Committee in the Middle Region,

9    and then names different several different organizations.

10   It's to AYRFA (phonetic) with the political chairman of the

11   Ayr clan CC'd to the cultural chairman of the Ayr clan, and

12   it continues on.  And it states the objective is the

13   validating of the area committee administration chairman.

14   And the document that is in evidence is a three-page

15   document.  This is the first page and it is signed by the

16   people of the committee.  This is Defense Exhibit D, which

17   will be in evidence.

18             THE COURT:  We have those exhibits tagged I assume.

19   I see the tags on them.

20             MS. FONTIER:  Yes, your Honor.  And then also,

21   which -- what I'm holding up is the document that was

22   referenced in the deposition as Defense Exhibit E, which has

23   also been marked.  Obviously this is a Somali document as

24   well.  The translation, which is in evidence as Defense

25   exhibit E-T, is titled Summary Report about the Agency's

1   Performance and Province's State of Affairs.  It's dated
2   September 29, 2007 in Dhusa Mareeb, Galgaduud.  And I would
3   also note, which I'll place on the Elmo as well, the original
4   document, which is not in the translation.  The header is the
5   ILEYS Foundation.  So those documents are in evidence as E
6   and E-2 -- or -T.  I'm sorry.
7            THE COURT:  Thank you.
8            MS. FONTIER:  Thank you, your Honor.  I'll now
9   resume with the deposition of Mr. Mohamed.
10       (The video recording was played.)
11           MS. FONTIER:  Your Honor, I'm just going to publish
12  Defense Exhibit F at this time.  On the Elmo is Defense
13  Exhibit F, which the witness will be referring to.  Again,
14  it's headed with the ILEYS Foundation, and it is an English
15  form, which will be in evidence as well.  This is page 1,
16  which is on the Elmo at this time.  And page 2, which is --
17  continues with the form.  I'm sorry.  For the record the name
18  on the top of the page 1 is Orphan Sponsorship Program.
19       (The video recording was played.)
20           MS. FONTIER:  This is Defense Exhibit K, which I
21  would just ask to publish as well, and obviously the witness
22  will be answering questions about it.
23           THE COURT:  Well, Exhibit K is not in evidence.  I
24  assume there's no objection.
25           MR. COLE:  No objection, your Honor.

1          THE COURT:  Exhibit K is admitted.  Ladies and

2     gentlemen, let's take that real short break we were talking

3     about just to let you stretch and relax.  It's just a minute

4     or two after 2:00.  Let's have everyone back here and ready

5     to go at ten after 2:00.  Remember the admonition.

6          (Exhibit No. K identified and admitted.)

7          (There was a break in the proceedings.)

8          THE COURT:  Okay.  Everyone is present.  Continuing

9     on.

10          MS. FONTIER:  Thank you, your Honor.  At this time

11     I would just publish for the jury what was just admitted as

12     Defense Exhibit K.  Obviously this document is in Somali.

13     Defense exhibit -- the English translation will be marked as

14     K-T I think is the system we're using now.  So as -- I don't

15     know how the Court --

16          THE COURT:  Well, it will be self-explanatory

17     coming in as K-T, so why don't you proceed with the

18     deposition then as the witness apparently will be relating to

19     certain parts of this.

20          MS. FONTIER:  Yes, to the two different tables that

21     are listed here, which will be discussed shortly.

22          THE COURT:  Thank you.

23          (Exhibit No. K-T identified and admitted.)

24          (The video recording was played.)

25          MS. FONTIER:  Sorry.  If I may just publish Defense

 1    Exhibit L.

 2              THE COURT:  Did you have questions with respect to

 3    L or was it just admitted?

 4              MS. FONTIER:  It was just admitted, your Honor.

 5              THE COURT:  Then I don't think you need to stop.

 6    Exhibit L is admitted.  You can publish at any time, but we

 7    can keep moving until 3:00.

 8              MS. FONTIER:  Yes.  Thank you, your Honor.

 9              THE COURT:  Thanks.

10         (Exhibit No. L identified and admitted.)

11         (The video recording was played.)

12              THE COURT:  Can we stop for just a moment.  How

13    long was your examination, Mr. Cole, of Mr. Mohamed?

14              MR. COLE:  Your Honor, I --

15              MS. FONTIER:  Your Honor, it's lengthy; it's at

16    least I think an hour and a half, several more portions.

17              THE COURT:  Okay.  Well, rather than cutting it off

18    after four minutes or so, I think we'll just take a break at

19    this point for the day, and for the weekend, ladies and

20    gentlemen.

21              It's three o'clock.  In a few minutes we'll recess

22    until Monday morning 9 a.m. and resume then.  So have a very

23    good weekend.  Drive safely.  Please do not discuss the case

24    amongst yourselves or with anyone else or allow yourselves to

25    form or express any opinions until the case has been

1    submitted to you.

2          Please also remember the additional admonition

3    about insulating yourself from any reports, exposure of any

4    kind dealing with the case or the issues that are involved in

5    this case or that part of the world, okay?  Very good.  Have

6    a very good weekend, ladies and gentlemen.

7          (The jury left the courtroom.)

8          THE COURT:  All right.  We're outside the presence

9    of all jurors.  It would be my suggestion when we resume on

10   Monday that we complete this deposition first thing so that

11   we at least have continuity there.  Any thoughts about that?

12         MR. DRATEL:  Your Honor, we have live witnesses

13   coming in whose schedule is somewhat tight, so we were hoping

14   to get started with the live witnesses and get them out by

15   early Tuesday.  We have them for like a day, day and a half.

16         THE COURT:  Okay.  We'll do that.  We're talking

17   just about an hour -- well, you can -- whatever agreements

18   you come to on scheduling is fine, I'll be happy to adopt

19   them.  I was thinking just for the sake of continuity it

20   might be better just to finish up a deposition.

21         MR. DRATEL:  That would have been the preference,

22   but --

23         THE COURT:  Mr. Cole is probably thinking we

24   shouldn't have stopped at three o'clock, we should have gone

25   straight on.  But you can all work it out if you're able to.

1   All right.  If there's nothing else then, you all have a very

2   good weekend.  We'll see you Monday at nine o'clock.

3          MS. HAN:  Your Honor, I just had one more

4   scheduling matter.

5          THE COURT:  Hold on.  Hold on.  Yes?

6          MS. HAN:  I apologize.  I have a motion hearing at

7   10:30 before Judge Houston on a similar wiretap kind of case

8   that I don't have co-counsel for, so I was hoping that we

9   could take our break and I'm hoping to have my case called

10  and be able to be back after the break, but I just wanted to

11  advise you of that and seek permission to --

12         THE COURT:  You want us to stop and wait for you or

13  just want to leave the courtroom for a bit?

14         MS. HAN:  Your Honor, I'll just leave if that's

15  acceptable.

16         THE COURT:  That's fine, sure.

17         MS. HAN:  Thank you.

18         THE COURT:  Very good.  We'll see you Monday

19  morning then.  Have a very good weekend, everyone.

20      (There was a break in the proceedings for the weekend

21  recess.)

22

23

24

25

1                          I n d e x

2    Witnesses                                     Page

3    **Christopher Chang**
     Cross-Examination by Mr. Ward                 1375
4    Redirect Examination by Mr. Dratel            1403

5    Abukar Dahir (Suryare) Mohamed               1408

6
                          E x h i b i t s
7
     Exhibits          Description          For ID    In Evd
8    D                 Form                 1410      1410
     E                 ILEYS document       1410      1410
9    F                 ILEYS document       1410      1410
     D-T               Translation of Exhibit D   1412   1412
10   E-T               Translation of Exhibit E   1412   1412
     K                 Police document      1420      1420
11   K-T               Translation of Exhibit K   1420   1420
     L                 Deponent's ID        1421      1421
12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>Certificate of Reporter</u>

I hereby certify that I am a duly appointed, qualified, and
acting Official Court Reporter for the United States District
Court; that the foregoing is a true and correct transcript of
the proceedings had in the mentioned cause on the date or
dates listed on the title page of the transcript; and that
the format used herein complies with the rules and
requirements of the United States Judicial Conference.


Dated January 20, 2014 at San Diego, California.

*Debra M. Henson*
                         /s/ Debra M. Henson  (electronic)
                         Debra M. Henson
                         Official Court Reporter