1              United States District Court

2            Southern District of California

3

4   UNITED STATES OF AMERICA,        )
                                     )
5                    Plaintiff,      )
                                     )
6       vs.                          ) Case No. 10-CR-4246 JM
                                     ) Jury Trial/Day 11
7   BASAALY SAEED MOALIN,            ) Tuesday, February 12, 2013
    MOHAMAD MOHAMAD MOHAMUD          )
8   ISSA DOREH,                      ) Volume 11
    AHMED NASIR TAALIL MOHAMUD,      )
9                                    )
                     Defendants.     )
10  _____ )

11

12            Before the Honorable Jeffrey T. Miller
                 United States District Judge

13

14

15

16

17

18

19

20  Official Interpreters:   Ayderus Ali, CCI
                             Fanik Jama, CCI
21
    Official Court Reporter: Debra M. Henson, CSR, RPR
22                           U.S. Courthouse
                             221 W. Broadway, Suite 5190
23                           San Diego, CA  92101
                             (619) 238-4538
24

25
              Record produced by stenographic reporter

```
 1   Appearances

 2   For the Government:        Laura E. Duffy
                                UNITED STATES ATTORNEY
 3                              William P. Cole
                                Caroline P. Han
 4                              ASSISTANT U.S. ATTORNEYS
                                Steven P. Ward, Trial Attorney
 5                              U.S. DEPARTMENT OF JUSTICE
                                880 Front Street, Suite 6293
 6                              San Diego, CA  92101

 7   For the Defendants:
     (Mr. Moalin)              Joshua L. Dratel, Esq.
 8                              Alice Fontier, Esq.
                                OFFICE OF JOSHUA L. DRATEL
 9                              2 Wall Street, Third Floor
                                New York, NY  10005
10
     (Mr. M. Mohamud)          Linda Moreno, Esq.
11                              LINDA MORENO, P.A.
                                P.O. Box 10985
12                              Tampa, FL  33679

13   (Mr. Doreh)               Ahmed Ghappour, Esq.
                                LAW OFFICES OF AHMED GHAPPOUR
14                              P.O. Box 20367
                                Seattle, WA  98102
15
     (Mr. A. Mohamud)          Thomas A. Durkin, Esq.
16                              Janis Roberts, Esq.
                                DURKIN & ROBERTS
17                              2446 N. Clark Street
                                Chicago, IL  60614
18

19

20

21

22

23

24

25
```

1          San Diego, California - Tuesday, February 12, 2013

2          (Defendant A. Mohamud is being assisted by a Somali

3     interpreter.)

4          THE COURT:  Good morning, everyone.  Looks like

5     everyone is present, jurors, counsel, parties.  Ready to go

6     with some additional deposition testimony, as I understand.

7     We're finishing up with Mr. Mohamed on redirect examination,

8     correct?

9          MS. FONTIER:  That's correct, your Honor.

10         THE COURT:  Okay.

11         (The video recording was played to the end.)

12         THE COURT:  All right, counsel.  Next?

13         MS. FONTIER:  Thank you, your Honor.  The next

14    witness for the defense will be Sheik Abdul Rahman Geedow

15    Qorow, which is Sheik, S-h-e-i-k  Abdul, A-d-b-u-l, Rahman,

16    R-a-h-m-a-n, Geedow, G-e-e-d-o-w, Qorow, Q-o-r-o-w.  And he

17    was also deposed in Djibouti during the week of November 11

18    of 2012.

19         THE COURT:  Would you please repeat the penultimate

20    portion of that name.

21         MS. FONTIER:  Geedow Qorow?

22         THE COURT:  Was that one name there?

23         MS. FONTIER:  It's --

24         THE COURT:  Geedow, before Qorow.

25         MS. FONTIER:  It's two words, Geedow, G-e-e-d-o-w,

1   and Qorow is Q-o-r-o-w.

2          THE COURT:  Okay.  So it's Sheik Abdul Rahman

3   Geedow Qorow; is that correct?

4          MS. FONTIER:  Correct, your Honor.

5          THE COURT:  All right.  And his deposition was

6   taken on what date, Ms. Fontier?

7          MS. FONTIER:  Mr. Rahman, for short, was deposed in

8   Djibouti during the week of November 11 of 2012.

9          THE COURT:  And, ladies and gentlemen of the jury,

10  as with all the other deposition testimony you've heard, you

11  are to assume that deposition testimony was given here in

12  court and consider it by the same criteria you would use for

13  all other witnesses.

14      (The video recording was played.)

15         MS. FONTIER:  Your Honor, may we have a very brief

16  sidebar to address the deposition?

17         THE COURT:  Okay.

18      (Following is a sidebar conference.)

19         MS. FONTIER:  I believe they were intending to

20  forego the cross-examination, playing it for the jury, but

21  there are portions of it that we would like to play.  It's

22  not edited in, so I don't know --

23         MR. DRATEL:  I think just play it through rather

24  than --

25         MR. COLE:  Just trying to -- we don't think we even

 1    crossed -- we did it there, we crossed just to preserve it,

 2    but we don't need any cross of this witness, so if they want

 3    some portions specifically that they think they need, we can

 4    play that portion; we could edit it and play that portion --

 5              THE COURT:  How long --

 6              MR. COLE:  -- or read that portion.

 7              THE COURT:  How long -- I appreciate your desire

 8    not to inflict further misery on the jury.  And I say that

 9    lightheartedly.

10              MS. FONTIER:  Yes.

11              THE COURT:  I think you realize that's said

12    jokingly.  This was a very short deposition.  However, that

13    being said, I know we're going to be playing substantially

14    more deposition testimony.  How long was the cross; do you

15    recall?

16              MS. HAN:  About 15 pages?  It's probably half an

17    hour.

18              THE COURT:  Was there any particular -- you

19    probably can't get to it without -- if that's possible.

20              MS. FONTIER:  I mean there's just a portion that I

21    would --

22              MR. DRATEL:  It's actually easier to just play it

23    through.

24              THE COURT:  Wow, you --

25              MR. DRATEL:  It's in the record.  We have a right

1    to put it in.  Its in the record.  I've lost this motion

2    under Rule 15, you know, where we wanted to withdraw

3    something and the government wanted to put it in -- not in

4    this case, but it's -- the law is pretty clear we can put it

5    in.

6               MS. MORENO:  I would join in that, your Honor.  I

7    would object to any editing of cross-examination of this

8    witness.

9               THE COURT:  Was there any -- after the

10   cross-examination was there any redirect?

11              MR. DRATEL:  Yes.

12              MS. FONTIER:  Yes, your Honor.

13              THE COURT:  And was it on the cross-examination?

14              MS. FONTIER:  Yes.

15              MR. COLE:  All right.  I mean we -- just so you

16   know, your Honor, there's another deposition coming that's

17   really long -- it's Hassan Guled -- and I wanted to edit the

18   cross down to about 45 just to not waste the jury's time and

19   I said only that to the defense, and they -- at least they're

20   aware of what we want to do, that we're not interested in the

21   cross-examination, but we -- we understand when they object

22   that they want the whole thing played, but we've let them

23   know in the future that's exactly what it is so we can try to

24   just not play stuff that's just --

25              THE COURT:  Well -- and I think you're raising a

1   good point.  First of all, this cross-examination can come

2   in.  It's not particularly lengthy; it may take --

3          MR. COLE:  Okay.

4          THE COURT:  -- 15 minutes or so.  But on the next

5   deposition that's apparently very lengthy -- I mean if you

6   can work together to further edit this, go ahead.  I mean as

7   long as you're not losing anything, the defense is not losing

8   anything, I completely agree with Mr. Cole.  I've said it

9   myself:  These deposition transcripts should have been edited

10  to eliminate a lot of -- frankly, to eliminate the

11  objections, all the objections and the rulings on objections;

12  that could have been done easily.  Well, maybe not always

13  because I know there's quite a bit of overlap actually as I

14  recall.  But let's just get through the process here.  If you

15  can work on the additional transcripts, do that, okay?

16        (Sidebar conference concludes.)

17          MS. FONTIER:  May I continue, your Honor?

18          THE COURT:  Yes.

19        (The video recording was played.)

20          THE COURT:  May I see counsel, please, over here at

21  the side of the bench.

22        (Following is a sidebar conference.)

23          THE COURT:  This is a total waste of time.  To

24  inflict ten minutes on the jury of what the juxtaposition of

25  the numbers in a telephone number is really asking a lot of

1   the jury.  Just listen.  I realize that the suggestion from

2   Mr. Cole came late, but not every suggestion the other side

3   makes is a bad suggestion just because it's made by the other

4   side.  So for any further depositions, if you have the time,

5   please edit this stuff out and think about -- think about the

6   jury.  This is brutal stuff.  I mean it's -- I agree with the

7   government.  I realize there may be some practical

8   considerations here, you having the time to do it and all of

9   that.  My gosh, this should have been done long before now.

10  And I know you've been working on other things, but let's

11  keep our eye on the ball here and to the extent you have to

12  edit what's left here, please do.

13          MR. DRATEL:  Your Honor, we'll get the other

14  deposition.  I just -- well, I'll say we've got these last

15  night after court and they want to take up the whole thing --

16  I can't make any suggestion as to this witness, so --

17          THE COURT:  Well, their suggestions as to reading

18  their portions they wanted to have come in, which would be

19  okay, that seems to be a reasonable alternative that you

20  might consider for other stuff.  And then you can play the

21  redirect if you want, all the redirect can come in.  I'm just

22  saying --

23          MR. COLE:  There is no redirect of this witness.

24          THE COURT:  There's no redirect?

25          MS. FONTIER:  I don't recall honestly.

```
 1              MR. COLE:  I just looked at the transcript.
 2   There's none.  We have given them -- I know it was a late
 3   suggestion from us, but we've given them the long deposition
 4   where we really could perhaps save some time.  They have it.
 5   It's marked up very clearly.  We would cut it out.  If
 6   there's some portion they don't want cut out, we can go back
 7   and revisit that.  We will make the edits so that they don't
 8   have to --
 9              THE COURT:  You can do that?
10              MR. COLE:  Our LSU is working on it now.  We can do
11   it if --
12              THE COURT:  What's an LSU?
13              MR. COLE:  Sorry.  Ray and the guys, our litigation
14   support unit.
15              THE COURT:  Okay.
16              MR. COLE:  In any event, we will work with them if
17   there is a way to cut it down.
18              THE COURT:  All right.  I want the jury to key on
19   the important stuff from both sides obviously and not ten
20   minutes on whether the 2 goes before the 5 or the 5 goes
21   before the 2.  And a lot of this is cumulative at this point.
22   There is so much answering and answering of questions in
23   these depositions, okay?  For example, let me get this
24   straight now, you testified that... if it were here in court,
25   it wouldn't come in; these objections would be sustained.
```

1    Work together, please.  I know we're limited in -- as to what

2    we can do on this one, but, please, in the future.  Thank

3    you.

4         (Sidebar conference concludes.)

5             THE COURT:  Thank you, ladies and gentlemen.  We're

6    going to continue on with this deposition testimony.

7         (The video recording was played.)

8             MS. FONTIER:  Your Honor, that would conclude this

9    witness's testimony.

10            THE COURT:  Okay.  Good timing.  It's 10:30.

11   Ladies and gentlemen, we'll take our midmorning recess at

12   this time, 15 minutes, and then resume thereafter.  Please

13   remember the admonition.  Thank you.

14        (There was a break in the proceedings.)

15            THE COURT:  Okay.  We have everyone present.  Mr.

16   Cole?

17            MR. COLE:  Yes, your Honor.  Just some housekeeping

18   for the record.  The government is withdrawing Government's

19   Exhibit 203 and 204 for the record.

20        (Exhibit Nos. 203, 204 withdrawn.)

21            THE COURT:  Very good.  All right, ladies and

22   gentlemen.  You may want to make a note of that.  By the way,

23   when you do begin your deliberations on this case, we will

24   provide you with an exhibit list.  You'll be provided with

25   one exhibit list and we'll have all of the exhibits that are

1    actually in evidence.  It's not always the case that every

2    exhibit that's referred to during the course of a trial comes

3    into evidence.  The majority do, but there are some that

4    don't come in for one reason or another, so you'll have that

5    list at a later time.  Okay.  I think we're on to some

6    transcript reading at this point; is that --

7                    MR. DURKIN:  Yes, Judge, and it'll be very

8    exciting.

9                    THE COURT:  Okay.  If you say so.  We'll take that

10   as your assurance.

11                   MR. DURKIN:  Ms. Roberts is going to read some

12   selected transcripts.  They are in a white binder that --

13   that is been passed out by your clerk to the jury, marked

14   defendant Ahmed Nasir Taalil Mohamud exhibits.

15                   THE COURT:  Okay.

16                   MR. DURKIN:  I'm going to be relegated to the role

17   of putting them up on the Elmo, and Ms. Roberts will do the

18   speaker.

19                   THE COURT:  Okay.  Ms. Roberts, are you doing both

20   parties or all parties in these transcripts?

21                   MS. ROBERTS:  I am, Judge.

22                   THE COURT:  All right.  Thank you.  And there

23   are -- as I understand, there are two exhibits toward the end

24   of the -- the end of the --

25                    MS. ROBERTS:  That's correct, Judge.  There are

1  two exhibits in the notebook, Exhibit Number-AN-53-S1 and

2  -53-S2 which will be coming in later by stipulation.  But all

3  the other exhibits AN-1 through AN-2-T, and AN-1 and AN-2-T

4  have been previously admitted.

5          THE COURT:  Okay.  Would you like to have those

6  additional exhibits at the end of the notebook admitted at

7  this point so that you don't need to --

8          MR. COLE:  So stipulated, your Honor.

9          THE COURT:  -- bother with it later?  Agreed?

10          MS. ROBERTS:  That's fine, Judge.  They are both

11  spreadsheets, summary spreadsheets, that have been extracted

12  from Government's Exhibit 53, which are the Shidaal records.

13          THE COURT:  Okay.  Then, ladies and gentlemen,

14  although they're not being referred to right now, the two

15  exhibits at the end of this particular notebook, AN-53-S1 and

16  AN-53-S2, are admitted at this time by stipulation of the

17  parties.  Okay.

18     (Exhibit Nos. AN-53-S1, AN-53-S2 identified and
admitted.)

19          MS. ROBERTS:  The first call, Judge, ladies and

20  gentlemen of the jury, AN-1-T, is from a tape recorded

21  conversation dated 12-20-07 between Basaaly Moalin and Ahmed

22  Nasir Taalil Mohamud, and it is a call that was not included

23  in the government's notebook and therefore we'll be reading

24  the whole call.

25          THE COURT:  Okay.

1        (The transcription was read.)

2            MS. ROBERTS:  The next is AN-122-T, which

3    corresponds to a clip already in evidence, the Government's

4    Exhibit 122, a phone call on December 22, 2007 between

5    Basaaly Moalin and Ahmed Nasir Taalil Mohamud.  The beginning

6    with the time stamps is the government's clip, and I will be

7    reading the portion that has been now added by the defense.

8    It begins on page 2 of 9.

9            (The transcription was read.)

10           MS. ROBERTS:  And then there was more government

11   transcript, and on page -- the bottom of page 6, there are

12   some further defense additions.  Following the time stamp

13   10:49, Basaaly says:  Let me know by the will of God.

14           (The transcription was read.)

15           MS. ROBERTS:  Next is Exhibit AN-125-T, a call from

16   December 28, 2007 between Basaaly Moalin and Ahmed Nasir

17   Taalil Mohamud -- I feel like I'm running out of steam.

18           THE COURT:  Would you like some water?

19           MS. ROBERTS:  I'm fine.  These are short, Judge.

20   -- that corresponds to Government's Exhibit 125 in your

21   notebook.  It's a government clip, and the portions that are

22   time-stamped are from the government's clip and the portions

23   without a time stamp are the defense additions, which I will

24   read.  On page 1 of 3, following a brief introduction.

25           (The transcription was read.)

1          MS. ROBERTS:  And then the tape continues with the

2    government's clip.

3          And finally, Defense Exhibit AN-127-T, a call from

4    December 29, 2007 between Basaaly Moalin and Ahmed Nasir

5    Taalil Mohamud, which corresponds to government's clip and

6    Exhibit 127.  And, again, the portions from the government's

7    clip have the time stamps; the defense additions are without

8    a time stamp.  Beginning at very beginning of the tape.

9          (The transcription was read.)

10         MS. ROBERTS:  And that's the only four we're going

11   to read in at this time, Judge.

12         THE COURT:  All right.  Thank you.  Okay.  Next,

13   Mr. Dratel, Ms. Fontier?

14         MR. DRATEL:  Yes.

15         THE COURT:  What's in store for us?

16         MR. DRATEL:  We have another deposition, your

17   Honor.

18         THE COURT:  Another deposition?  Okay.  Want to get

19   that ready and --

20         MS. FONTIER:  Your Honor, the next witness for the

21   defense will be Osman Isse Nuur.  Osman is O-s-m-a-n, Isse is

22   I-s-s-e, and Nuur is N-o-r (sic).  Mr. Nuur was also deposed

23   in Djibouti during the week of November 11 of 2012.

24         THE COURT:  All right.  Thank you.

25         (The video recording was played.)

 1           MS. FONTIER:  Your Honor, that would conclude
 2    Mr. Nuur's testimony.  And if I may just correct for the
 3    record, I spelled Mr. Nuur's last name incorrectly; it's
 4    N-u-u-r.
 5           THE COURT:  Okay.  Very good.  Thank you.  Do you
 6    have a ten-minute deposition?
 7           MS. FONTIER:  We do not.
 8           MR. DRATEL:  We can read some of our calls --
 9           THE COURT:  Okay.  We'll take advantage of that
10    time.  You'll be reading from transcripts in the blue binder?
11           MR. DRATEL:  Yes, your Honor, blue-paper binder.
12    This is TT-121, page 6.  We'll start with the defense portion
13    not introduced by government.  There's a legend in the middle
14    of the page.  Ms. Fontier will be Basaaly Moalin, and I will
15    be Issa Doreh.
16        (The transcription was read.)
17           MR. DRATEL:  Now we're going to move on to 124,
18    TT-124.  We're at page 2.
19           THE COURT:  You're skipping 123 for the time being?
20           MR. DRATEL:  Yes, for the time being.  We're not
21    going to do 124 either because that -- we're going to move to
22    TT-130 for now, your Honor.
23           MS. FONTIER:  Sorry, your Honor.  TT-130 and -131
24    were previously read by Mr. Dratel and Mr. Chang, so I
25    believe we'll be moving to TT-134.

1           THE COURT:  Okay.  So we go from 121 to 134 now?

2           MR. DRATEL:  Right.  This is a January 15, 2008

3    conversation between Basaaly Moalin and Abdulkadir.

4           MS. FONTIER:  And, again, I will read the portions

5    of the -- when the speaker is Basaaly Moalin.

6           MR. DRATEL:  And we're at page 2 of the transcript

7    at the top of the page.

8         (The transcription was read.)

9           MR. DRATEL:  Your Honor, I don't know if you want

10   to split it here or something or --

11          THE COURT:  We can stop.  We can stop now, and

12   we'll pick up let's say at 1:35, ladies and gentlemen.

13   Remember the admonition not to discuss the case or make any

14   decisions at this time.  Thank you.

15        (There was a break in the proceedings.)

16          THE COURT:  All right.  Good afternoon, ladies and

17   gentlemen.  I think we have everyone present, and we're ready

18   to resume with the reading of 134, continuing on?

19          MR. DRATEL:  Yes, 134, starting at the top of

20   page 13 of TT-134.

21          THE COURT:  I think we are ready.

22          MR. DRATEL:  I'm Mr. Abdulkadir, and Ms. Fontier is

23   Basaaly Moalin.

24        (The transcription was read.)

25          MR. DRATEL:  And that is where the defense portion

1    not introduced by the government ends.  And there's another

2    portion of the defense portion that begins at page 18 at the

3    bottom.  Again, it's Abdulkadir.

4         (The transcription was read.)

5              MR. DRATEL:  And that's the end of that call.

6              MS. FONTIER:  The next call, TT-135, was read by

7    Mr. Chang previously.  We just want to clarify before -- your

8    Honor, the next -- for the Court, the next call that we'll be

9    reading is Defense Exhibit TT-143.  This is a call between

10   Basaaly and Sheikalow.

11             MR. DRATEL:  And the date is February 14, 2008.

12             THE COURT:  Part of this has already been read, and

13   you're going to be starting on page 4; is that correct?

14             MS. FONTIER:  That's correct, your Honor.

15             THE COURT:  All right.  Let people get to that,

16   please.  Exhibit TT-143?

17             MR. DRATEL:  Yes, your Honor.

18             THE COURT:  Page 4.

19             MR. DRATEL:  Okay.  I'll be Sheikalow, and Ms.

20   Fontier again will be Mr. Moalin.

21        (The transcription was read.)

22             MS. FONTIER:  That is the end of TT-143.  TT-144

23   was previously read.  If I could have one moment to consult

24   with Mr. Ghappour.  We are now turning to defense Exhibit

25   TT-156, which this call is April 21, 2008, and involves

1   Basaaly Moalin, Issa Doreh, and Najib Mohamed.

2           MR. DRATEL:  Okay.  This is where defense portion

3   not introduced by the government starts, at the top of page

4   2.  I will be Issa Doreh and Najib Mohamed to the extent that

5   he appears in this section, and he does.  Okay.  I'll be

6   both, and I'll identify when it's not Mr. Doreh.

7        (The transcription was read.)

8           MS. FONTIER:  The defense portion that was not

9   introduced by the government ends there, and the portion

10  introduced by the government begins and continues to the end

11  of the call.  Sorry, your Honor.  One moment.

12          Your Honor, the next exhibit that we'd be reading

13  is Defense Exhibit TT-167-A.  This is dated April 30, 2008,

14  between Basaaly and Abukar.  For the record, the transcripts

15  that are labeled, and for the ease of the jury, with an A

16  number or an A or a B, the letter, they follow a transcript

17  that is in evidence such as 167, but were not themselves

18  admitted.  So this is a new call.

19          THE COURT:  Okay.

20          MR. DRATEL:  I will be Abukar.

21          MS. FONTIER:  And I will of course continue as

22  Basaaly.

23       (The transcription was read.)

24          MS. FONTIER:  That is the end of TT-167-A.  The

25  next call will be Defense Exhibit TT-167-B as in boy.  This

1   is also on the same day, April 30 of 2008, just later in the

2   day at 2102 between Basaaly and Mohamed, so again I will be

3   Basaaly.

4           MS. MORENO:  And I will be Mohamed.

5       (The transcription was read.)

6           MR. DRATEL:  I just wanted to clarify that Mohamed

7   on that call, the part that Ms. Moreno read, was not Sheik

8   Mohamad, her client.

9           MS. MORENO:  Counsel mistakenly thought it was my

10  client.

11          THE COURT:  Pardon me?

12          MS. MORENO:  Counsel mistakenly thought it was my

13  client.  It was not my client.  The government so agrees.

14  Thank you.

15          MS. FONTIER:  The next call will be Defense Exhibit

16  TT-169-A.  This is a May 1st, 2008 call.  The time is 3:22.

17  this is between Mr. Moalin and -- the speaker is not

18  identified.  This call was not played by the government.

19      (The transcription was read.)

20          MS. FONTIER:  The next call will be Defense Exhibit

21  TT-169-B.  This is also from May 1st, 2008, a few minutes

22  later at 3:31.  It involves Mr. Moalin, Maryam and Najib.

23          MR. DRATEL:  I will be both Najib and Maryam.

24      (The transcription was read.)

25          MR. DRATEL:  That's the end of that recording.

1            MS. FONTIER:  One more for the moment, your Honor.

2            MR. DRATEL:  TT-171, May 1st, 2008, Basaaly Moalin,

3    Issa Doreh, and a couple of unknown males, there will be four

4    unknown males.  I will play all the unknown males and Issa

5    Doreh.

6            MS. FONTIER:  The portion of the defense transcript

7    that the government did not introduce begins on page 2 with

8    Basaaly.

9        (The transcription was read.)

10           MS. FONTIER:  Your Honor, we would stop reading

11   here, this portion, this -- taxi discussions.  And then the

12   following portion beginning on page 9 was introduced by the

13   government for the remainder of the call or should have been

14   the government.

15           JUROR CLARK:  I think there's an error in my book.

16           THE COURT:  Well -- oh, you didn't have 171?

17           JUROR CLARK:  I have 191.

18           THE COURT:  Okay.  Then we'll get a 171 to you,

19   Ms. Clark.  Extra copy of 171 should be provided to

20   Ms. Clark.

21           MS. FONTIER:  Yes, your Honor.

22           THE COURT:  Thank you, Ms. Clark.  Was that the

23   last transcript that will be read at this time?

24           MS. FONTIER:  If I may consult with counsel for a

25   moment.

```
 1              THE COURT:  Okay.  Sure.

 2              MS. FONTIER:  We will be going back towards the

 3   beginning of the book to Defense Exhibit TT-123.  This is a

 4   call on December 28 of 2007 between Basaaly Moalin and Issa

 5   Doreh.

 6              THE COURT:  Okay.  I want to do something just to

 7   complete the record here on the last, which is 171.  You

 8   stopped reading on page 7 near the top.

 9              MS. FONTIER:  Yes, that's correct, your Honor.

10              THE COURT:  Okay.  So basically all of page 7 --

11   there's a reference to two old ladies; that's dispatch.  Why

12   don't we -- you're eliminating then -- you did not read

13   page 7, page 8, and the top three blocks of page 9; is that

14   correct?

15              MS. FONTIER:  That's correct, your Honor.  And

16   those --

17              THE COURT:  All right.

18              MS. FONTIER:  -- can be removed as well.

19              THE COURT:  Well --

20              MS. FONTIER:  Okay.  They cannot be removed.

21              THE COURT:  Well, two of them can be removed, but

22   we'll just leave them in as long as jurors know to line

23   through pages 7 and 8 of Exhibit TT-171.  Those portions were

24   not read and therefore they are not in evidence.  Okay.

25   We're going back now to --
```

1             MS. FONTIER:  Defense Exhibit TT-123, call between

2  Mr. Moalin and Issa Doreh.  I will continue on as Mr. Moalin.

3             MR. GHAPPOUR:  And I'll be Issa Doreh.

4             THE COURT:  Okay.

5             MS. FONTIER:  The beginning portion was read into

6  evidence by the government.  The portion that was -- is being

7  introduced by the defense begins in the middle of page 2.

8        (The transcription was read.)

9             MS. FONTIER:  And then the government's transcript

10  resumed for pages 4 and the top -- first half of page 5.  The

11  government -- the defense is introducing the call as it

12  continues beginning on the bottom of page 5.

13        (The transcription was read.)

14             MR. GHAPPOUR:  Your Honor, if I may just take up

15  the binder from the evidence over here.  The last block isn't

16  on our copy.

17             THE COURT:  Okay.

18        (The transcription was read.)

19             MR. GHAPPOUR:  Thank you, your Honor.

20             THE COURT:  You're welcome.  Where are we now?  How

21  many more do we have?

22             MS. MORENO:  Well, we have a number.  I was going

23  to read Exhibit TT-124, which involves my client and

24  Mr. Moalin.  TT-124 --

25             THE COURT:  So there are several.

1              MS. MORENO:  There are a number, yes, your Honor.

2              THE COURT:  Okay.  What we'll do then is we'll take

3    our break at this time.  Ladies and gentlemen, 15 minutes,

4    and we will resume thereafter.  By the way, we may not be

5    going to 4:30 today; we might stop at about four o'clock.  I

6    need to address a matter outside your presence, and so that

7    is the reason we would in all probability be stopping about

8    4:00.  So it will be pretty close to three o'clock when we

9    start, it will be about another hour for you this afternoon,

10   and then we recess for your purposes at about four o'clock.

11   Thank you.  Remember the admonition.  Gaby, why don't you

12   leave that there for Ms. Clark and Ms. Clark can take her

13   recess at this time.  Thank you, Ms. Clark.

14        (The jury left the courtroom.)

15             THE COURT:  Okay.  We are outside the presence of

16   all jurors.  Not wanting to unduly prolong the process of

17   reading a transcript, I do have the rulings ready on the last

18   submission here.  These transcripts were one TT-126, -128,

19   -136, and then two that were not identified by exhibit

20   number.  So, counsel, you ready for --

21             MS. FONTIER:  Yes, your Honor.

22             THE COURT:  -- those?  By the way, Mr. Cole, did

23   you get a chance to -- you said that on 4 and 5 --

24             MR. COLE:  Yes.

25             THE COURT:  -- the submissions under 4 and 5 --

1            MR. COLE:  Yes.

2            THE COURT:  -- you just received them, you hadn't

3     had an opportunity to look at them.

4            MR. COLE:  Right.  And they've since received

5     exhibit numbers, so I'll wait and offer Exhibit No. 140 with

6     the government's -- well, I'll at least confirm --

7            THE COURT:  Are you objecting to those?

8            MR. COLE:  TT -- your Honor, number 5 on our chart

9     is TT-140-A, it's now marked as TT-140-A, and we withdraw our

10    objection as to that one.

11           THE COURT:  Okay.

12           MR. COLE:  And on number 4 -- one second.  That is

13    TT-148-A.

14           THE COURT:  148-A?

15           MR. COLE:  Yeah, I believe that's marked as 148-A

16    now, and Mr. Ghappour can correct me if I'm wrong -- I'm

17    trying to give them to you in the same convention they're

18    using now, not just the date and time.  And we stand -- we're

19    still pressing our objection on that one.

20           THE COURT:  Okay.  Well, you know, I saw those two

21    together pretty much similar, TT-148-A.  I'll overrule the

22    objection on that.  I had them both overruled and essentially

23    for the same -- on the same rationale.

24           With respect to TT-126, I would overrule the

25    objection.  I understand that parts of it -- I sure wish

1   these could have been edited.  I don't know that much is lost

2   if some of the material that's just clearly irrelevant is

3   just left off, but in any event, I think this is okay.  This

4   is once again news from the front in general status, a

5   general status report of developments in the area.  There's

6   been plenty of those, and this just appears to be a

7   continuation of that kind of reporting.

8          I have the second exhibit there, TT-128, overruled

9   for whatever probative value it may have.  Once again just

10  discussing general developments in the area, other subject

11  matters that have been previously allowed as subject areas

12  for evidence.

13         On TT-136, it is -- the objection there would be

14  sustained as to defendant Moalin's statements Re: Farah Yare

15  and their past contact is hearsay, and it's not relevant

16  under either 404 (b) or 803 (3); that's on pages 2 and 3.

17  And then it would be overruled with respect to the material

18  on pages 8 and 9 because that's a continuation of a

19  conversation with Sheikalow.  Those would be the rulings.

20         MR. DRATEL:  Your Honor, if we don't get to that

21  one today, the other one, we'll look to try to edit it.

22         THE COURT:  If you could, yeah.  A lot of it's

23  pretty deadly stuff.

24         MR. DRATEL:  I hadn't realized we left in the

25  comparison of how they were faring with their affairs, the

1    end of that conversation.  I didn't realize we had left that

2    in.

3              THE COURT:  Yeah.  There's some other stuff too

4    about dental exams or whatever, medical appointments.

5              MR. DRATEL:  We'll work to do that, your Honor.

6              THE COURT:  Yeah.  Okay.  So what's the plan, to

7    read transcripts here from 3:00 to 4:00 or --

8              MR. DRATEL:  Sorry, your Honor.

9              THE COURT:  Reading transcripts from 3:00 to 4:00;

10   is that basically going to be it?

11             MR. DRATEL:  We have about five transcripts to

12   read, so I don't know how long --

13             THE COURT:  How much deposition testimony do we

14   have left?

15             MR. DRATEL:  We have one more deposition, just the

16   direct --

17             MS. FONTIER:  The final deposition is the one we

18   were discussing at sidebar too, Hassan Guled.  It's the

19   second lengthiest one; it's maybe two and a half hours total.

20   But I did -- I had just notified Mr. Cole that we are in the

21   process of reviewing the portions that he wishes to take out

22   and much of it we will agree to but not all of it.

23             THE COURT:  Okay.  And the LSUs are pouring over

24   that as we speak?

25             MR. DRATEL:  Well, our LSUs, which is us.

1          MR. COLE:  They deleted everything I asked them to

2    but we might to put some back based on -- based on what

3    counsel gets back to me on.

4          THE COURT:  Wish I had a couple of LSUs.

5          MS. FONTIER:  You and me both, Judge.

6          MR. DRATEL:  Yeah.  But what Ms. Fontier and I have

7    been through and then we passed it to other counsel -- which

8    is why we delayed putting on the deposition because we want

9    to get all that underway with the government before we move

10   forward.  So once all counsel have just passed on -- there

11   are at least three or four sections that the government has

12   designated that we can do without.

13         THE COURT:  Okay.  And you're working together on

14   instructions or has that started yet?

15         MR. DRATEL:  Yes, we started over lunch, your

16   Honor, and I think we made -- I would say we made good

17   progress on a number -- let's put it this way:  We identified

18   certain issues that we have been able to agree on, we

19   identified a couple of issues that we've been unable into

20   agree on that we'll revisit again later after court, and then

21   we'll tackle some of the -- sort of the -- what we didn't

22   tackle were the substantive instructions on the counts

23   themselves because of time pressures, but that we'll do after

24   court; that's --

25         MR. COLE:  Well, we only had -- we did everything

1   nonsubstantive.  All of the instructions normally with the

2   elements we got to, but we ran out of time before court.  So

3   we'll -- tonight we'll pick up the stuff that matters.

4            THE COURT:  Okay.

5            MR. DRATEL:  And most of that is straightforward in

6   the sense that I don't think that it will present complicated

7   issues.  It just may be a choice of one set of language or

8   another.

9            THE COURT:  Okay.  All right.  Well, good.  Why

10  don't you take ten minutes or so, and then we'll resume.

11       (There was a break in the proceedings.)

12            THE COURT:  Okay.  We have everyone present, and we

13  are ready to continue on.

14            MR. DRATEL:  Yes, your Honor.  Thank you.  Just

15  one -- I'd like to go back to 171 for a moment.  And I

16  apologize to the juror who did not have 171, but let's go

17  back to page 9.  And when we eliminated pages 7 and 8, we

18  inadvertently also eliminated the beginning of page 9, which

19  we're going to keep in until the defense portion stops, and

20  I'll just read those four lines myself.

21       (The transcription was read.)

22            MR. DRATEL:  And then the defense portion ends, the

23  government portion resumes.

24            THE COURT:  Thank you.

25            MS. MORENO:  Thank you, your Honor.  If the jurors

1    could kindly turn to TT-124.  Back to the beginning, TT-124.

2    This is a conversation dated December 28, 2007 and it is a

3    conversation where my client is one of the speakers, and we

4    begin on the bottom of page 2.

5         (The transcription was read.)

6              MS. MORENO:  And that is the end of that portion.

7    The next conversation is MMM-1, MMM-1.  This is a call that

8    the government did not introduce.  It is dated February 9,

9    2009 -- 2008, excuse me -- between Mr. Moalin and

10   Mr. Mohamud, my client.

11        (The transcription was read.)

12             MS. MORENO:  I'm sorry, your Honor.  It seems that

13   some of the jurors might be having problems.

14             THE COURT:  Yes.

15             JUROR JOHNSON:  Yeah, I don't have that page,

16   whatever you're reading off of.

17             JUROR DELANEY:  Yeah, under MM-1.

18             THE COURT:  Do you have MMM-1?

19             JUROR DELANEY:  I have MMM-1, page 2, but it's not

20   saying any of that.

21             THE COURT:  Okay.  What I suggest is this then,

22   just listen to the reading, and then if counsel will make a

23   note as to which pages need to be -- which additional pages

24   need to be provided -- how many people are missing page 2?

25             JUROR JOHNSON:  I'm missing the complete MM-1.

```
 1              THE COURT:  Okay.  You're missing all of MM-1.  And
 2    is anyone else missing all of MM-1?  If these -- I see no
 3    hands raised.  Okay.  Page 2?  Do we have anybody missing
 4    page 2, just page 2?
 5              JUROR DELANEY:  Well, it's the wrong page 2.
 6              THE COURT:  Okay.  So we have Ms. Delaney missing
 7    page 2.  We have Mr. Johnson missing page 2.  So we're going
 8    to need a couple of extra pages 2.  And then page 3, anybody
 9    missing page 3?  Mr. Johnson, are you --
10              JUROR JOHNSON:  I'm sorry.  I'm missing MMM-2.
11              THE COURT:  Oh, okay.  You're not missing MMM-1,
12    you're missing MMM-2?
13              JUROR JOHNSON:  Yes, sir.
14              THE COURT:  When you say -- you mean page 2 or the
15    exhibit MMM-2?
16              JUROR JOHNSON:  Exhibit MMM-2, your Honor.
17              MS. MORENO:  There are two MMM exhibits, MMM-1,
18    your Honor, and MMM-2, which is further down into the
19    binder --
20              THE COURT:  Okay.
21              MS. MORENO:  -- after a few numbers, exhibits.
22              THE COURT:  Okay.  I don't see MMM-2 myself, but
23    that may just be an oversight.  Maybe it's --
24              MS. MORENO:  If I may, your Honor, if I may just
25    put this on the Elmo because it seems that there are
```

```
 1   different pages --

 2             THE COURT:  Yeah.

 3             MS. MORENO:  -- missing.  And if I may read the

 4   whole conversation.

 5             THE COURT:  That's fine.  And for those of you,

 6   just note what you're missing from your notebook as you see

 7   what's on the -- what's on the screen you don't have, okay,

 8   so we'll trust you to make sure that you're identifying

 9   anything you don't have as you see it on the screen.

10             Counsel, may I ask you to do one thing, and that is

11   without indicating that the government did not introduce

12   this, you might just indicate that any new reading or any

13   part of a reading that was already read which you're doing

14   now, just indicate it's not in evidence until now.

15             MS. MORENO:  That's fine, your Honor.  This call is

16   not in evidence but now it is in evidence.

17             THE COURT:  Yes.

18             MS. MORENO:  Thank you.  If I may begin from the

19   beginning, your Honor?

20             THE COURT:  I'm sorry?  Yes, go ahead.

21             MS. MORENO:  If I may start from page 1.

22             THE COURT:  Just got a note, MMM-2 is behind

23   Exhibit 144?  Yeah, okay.  I see.  The tab 144 may cover the

24   tab MMM-2, okay?  That might be the problem there.

25             MS. MORENO:  Okay.  May I?
```

1          THE COURT:  Sure.

2          MS. MORENO:  We'll do the best we can, your Honor.

3   Thank you.  Just to save time, I'm not going to go back and

4   forth for the unknown male and Basaaly; I'll just begin.

5   Unknown male is my client.

6          (The transcription was read.)

7          MS. MORENO:  And then the rest of it, your Honor,

8   is about income tax, and I think we can do without that --

9          THE COURT:  Okay.

10          MS. MORENO:  -- if that's all right with the Court.

11          THE COURT:  All right.

12          MS. MORENO:  Thank you.

13          THE COURT:  So what -- you're suggesting that the

14   part from "tomorrow I will file income tax" just be redacted?

15          MS. MORENO:  Yes, your Honor.  "How is your plan

16   for tomorrow" starting --

17          THE COURT:  Okay.

18          MS. MORENO:  -- with Basaaly.  I believe the --

19          THE COURT:  That can be redacted, the balance of

20   that call eliminated from the evidence.  Thank you.

21          MS. MORENO:  Thank you, your Honor.

22          MR. GHAPPOUR:  Your Honor, I've got an extra 171

23   here, and we could probably just pass that up, TT-171.

24          THE COURT:  Okay.  Why don't you bring it forward

25   to the CRD.

```
 1              MR. GHAPPOUR:  Should I remove the two pages that
 2    your Honor struck?  Should I remove the two pages that your
 3    Honor struck?
 4              MS. FONTIER:  That were not read, pages 7 and 8.
 5              THE COURT:  Okay.  Yeah.
 6              MS. FONTIER:  Your Honor, the next exhibit that
 7    we'll be reading then is Defense Exhibit TT-140.  This is
 8    dated February 9 of 2008 and is a call between Basaaly Moalin
 9    and Issa Doreh.
10              THE COURT:  And part of that already is in
11    evidence.  You'll be reading the part on page 2, the top half
12    of page 2 or two-thirds of that?
13              MR. GHAPPOUR:  Yes, your Honor.
14              THE COURT:  Okay.
15              MS. FONTIER:  Correct, your Honor.  And beginning
16    with Basaaly.
17         (The transcription was read.)
18              THE COURT:  Okay.  Next?
19              MS. FONTIER:  The next transcript that will be read
20    is Defense Exhibit TT-140-A.  This is February -- this call
21    was not previously in evidence.  This is a call between --
22    dated February -- did I say this already? -- February 18,
23    2008 between Basaaly Moalin, Sahal, and Issa Doreh.
24              MR. GHAPPOUR:  I will read both Sahal and Issa
25    Doreh.  Just make sure everyone is flipped to the correct
```

 1   page.

 2          MS. FONTIER:  It begins with operator, which we

 3   will be skipping, but beginning on the second line on page 2

 4   with Sahal.

 5       (The transcription was read.)

 6          THE COURT:  Next?

 7          MS. MORENO:  Yes.  This would be MMM-2, which I

 8   believe is after TT-144.  This is a call that took place on

 9   February 22, 2008.  This is a new call in evidence.

10          THE COURT:  Okay.  Everyone -- Ms. Lopez, are you

11   missing something?

12          JUROR LOPEZ:  MMM-2.

13          THE COURT:  You're missing the whole thing?  Okay.

14   We need a new MMM-2 for Ms. Lopez.  Anybody have an MMM-2

15   over there?  Well, here --

16          MR. COLE:  Your Honor, we'll give her ours.

17          THE COURT:  I was going to offer mine.  It's --

18          MS. ROBERTS:  I'll give this one, Judge.

19          THE COURT:  How many copies do you have over there,

20   one for each of you or --

21          MR. COLE:  We'll get another copy later.

22          THE COURT:  Thank you, Mr. Cole.

23          MS. FONTIER:  We're keeping notes on all of our

24   errors, and we'll make sure that everyone -- all the copies

25   are complete tomorrow morning.

```
 1                THE COURT:  Well, it's nice to know we're all
 2    human.
 3                MS. FONTIER:  Very much so in this case.  Okay.
 4                THE COURT:  Ms. Lopez, are you ready to go?
 5                JUROR LOPEZ:  Ready to go.
 6                THE COURT:  Ready to go.  Okay.
 7                MS. MORENO:  Thank you.
 8                MS. FONTIER:  This begins with Basaaly.
 9          (The transcription was read.)
10                MS. MORENO:  And, your Honor, I think the rest of
11    it is not relevant; it is about dinner and someone else.
12                THE COURT:  Okay.  Well, all right.  Let's redact
13    that.  Let's redact that right now.  So do you need any of
14    page 6 except the -- do you need the top line there?
15                MS. MORENO:  Just the top line, your Honor.
16                THE COURT:  Just the top line on page 6, beginning
17    reference -- the first reference to unknown male through the
18    rest of page 6 is out, and then page 7 as well --
19                MS. MORENO:  Thank you.
20                THE COURT:  -- has been eliminated.  Okay.  Next?
21                MS. MORENO:  Thank you.
22                MS. FONTIER:  If I just may confer with counsel.
23    We have one additional, your Honor.
24                THE COURT:  Okay.
25                MS. FONTIER:  We are going to Defense Exhibit
```

1    TT-196-A.  This call is not previously in evidence.  It's

2    dated July 22 of 2008.  The participants in the call are

3    Basaaly Moalin and Issa Doreh.

4              THE COURT:  Okay.

5              MS. FONTIER:  The call begins with Basaaly.

6         (The transcription was read.)

7              MS. FONTIER:  Okay.  And that is the end of that

8    recording, your Honor.

9              THE COURT:  Okay.  Any further recordings at this

10   time?

11             MS. FONTIER:  I don't believe so, your Honor, but

12   let me check with everyone, make sure I'm not speaking

13   incorrectly on behalf of others.

14             THE COURT:  Please.

15             MS. FONTIER:  Your Honor, pursuant to the Court's

16   earlier ruling, there are two additional transcripts that

17   were not read.

18             THE COURT:  Okay.

19             MS. FONTIER:  Well, two and a half I'm being

20   informed.

21             THE COURT:  Are they -- you're going to make up

22   separate transcripts for those?

23             MS. FONTIER:  They're in --

24             MR. DRATEL:  Oh, we'll do the third.

25             THE COURT:  Just want to make sure they're in the

1    same format, counsel, so when they're given to the jury, they

2    can just slip them into the notebooks if they're not already

3    there, okay?

4                MR. DRATEL:  They're already there, your Honor.

5                THE COURT:  All right.

6                MS. FONTIER:  Your Honor, the first is Defense

7    Exhibit TT-126, December 29 call between Basaaly and Najib.

8    The beginning portion was entered in evidence already, so we

9    will --

10               MR. DRATEL:  Starting at page 3.

11               MS. FONTIER:  -- begin at the middle of page 3.

12               THE COURT:  Very good.  Let people get there.  It's

13   TT-126, page 3.

14               MR. DRATEL:  I'll be Najib and Ms. Fontier will be

15   Basaaly.

16          (The transcription was read.)

17               MS. FONTIER:  And that is the end of this

18   recording.  The next transcript is Defense Exhibit TT-128,

19   December 30 call between Basaaly and an unknown male.  The

20   beginning portions were introduced into evidence previously.

21   We'll be now introducing beginning at the bottom of page 3.

22               THE COURT:  Okay.

23               MS. FONTIER:  Mr. Dratel will be unknown male 2 and

24   unknown male.

25          (The transcription was read.)

1           MS. FONTIER:  And that's the end of the recording.
2  Your Honor, if we -- the final call will be Defense Exhibit
3  TT-136, which begins January 20 -- which is dated January 20,
4  2008.  The beginning portion, pages 1 -- or 2 and 3 will not
5  be introduced, so we are skipping past those.
6           THE COURT:  Well, all right.  If we're skipping
7  past those and at the bottom of page 2, that part of it is
8  already in evidence, Government's 136, so then it would
9  appear we can -- the jurors can remove pages 1 and 2 from
10 their notebooks.
11          MS. FONTIER:  Yes, your Honor.
12          THE COURT:  Okay.  So may I ask jurors to remove
13 pages 1 and 2 at this time from TT-136.  Very good.  Just
14 drop them on the floor or anywhere you'd like.
15          MS. FONTIER:  Your Honor, I believe that your Honor
16 ruled that the portions by the defense that begins on 4 and
17 goes to 5 --
18          THE COURT:  Yes.
19          MS. FONTIER:  -- was admissible as also pages
20 starting at page 8; is that correct?
21          THE COURT:  I don't have them correlated to what
22 you have here.
23          MR. COLE:  That's fine, your Honor, with the
24 government.
25          THE COURT:  Okay.  Very good.  We'll proceed.

1           MS. FONTIER:  So then in TT-136 --

2           THE COURT:  You're starting on page 4?

3           MR. COLE:  We have a question.

4           JUROR CHANNELL:  You asked us to remove page 1.

5      Page 1's the cover sheet.

6           THE COURT:  Okay.  Well --

7           MR. DRATEL:  Page 2 and 3.

8           THE COURT:  Okay.  Yes, pages 2 and 3.  Very good I

9      appreciate that, Mr. Channell.

10          MR. COLE:  That was number 2.

11          MR. DRATEL:  So 2 and 3.

12          THE COURT:  The first two pages of transcribed

13     material.  Okay.  Thanks, Mr. Channell.

14          MS. FONTIER:  To be clear, we will begin reading on

15     what is numbered as page 4 in the bottom right-hand corner --

16          THE COURT:  Okay.

17          MS. FONTIER:  In deceptively small text.

18          THE COURT:  Very good.

19          MR. DRATEL:  It's January 20, 2008.  I will be

20     Sheikalow, Ms. Fontier will be Basaaly.

21        (The transcription was read.)

22          MS. FONTIER:  And then the pages -- the following

23     pages 5, 6, and 7, and the top of page 8 were previously

24     introduced, so we'll be continuing at the bottom of page 8.

25     This is Basaaly.

1    (The transcription was read.)

2         MS. FONTIER:  And then the portions on 10, 11 -- 10

3    and 11 were previously introduced, so we'll be continuing on

4    page 12.

5         (The transcription was read.)

6         MS. FONTIER:  And then the portion introduced by

7    the -- previously introduced continues on pages 13 and 14,

8    and the call continues on page 14 with Sheikalow.

9         (The transcription was read.)

10        MS. FONTIER:  And then the call was that was

11   previously introduced resumed, 16, 17, and 18, and then

12   there's just a small portion on the bottom of 18 that is

13   being introduced now.

14        (The transcription was read.)

15        THE COURT:  Is that it?

16        MS. FONTIER:  I believe that at least resolves our

17   reading from our big binder.

18        THE COURT:  All right.  Are there any further

19   transcripts, counsel?  We've got them all?

20        MR. DURKIN:  We'll have two more.  Do you want to

21   do them in the morning or --

22        THE COURT:  Why don't we do them in the morning.

23   It's been along day, and I know the jury's been concentrating

24   very carefully, so we'll stop for today, ladies and

25   gentlemen, recess for your purposes, resume tomorrow at 9

1    a.m.  Please remember the admonition not to discuss the case

2    or make any decisions at this time.  Thank you.

3         (The jury left the courtroom.)

4              THE COURT:  Well, hopefully -- we're outside the

5    presence of all jurors.  Hopefully Ms. Franklin is out --

6              MR. DRATEL:  Shall I go look for her, your Honor?

7              THE COURT:  Mr. Cole, why don't you check it out.

8    In any event, if she is, I'm going to need the courtroom.

9    Mr. Ghappour, if you could stay, however -- you're more or

10   less the representative I think of the defense on this -- and

11   if Ms. Franklin is here with this individual, I'll need to go

12   in camera, but I'd like you to be standing by if you don't

13   mind.

14             MR. GHAPPOUR:  I'll be here.

15             THE COURT:  Okay.  Thank you.  Appreciate it.  I

16   don't know that we need your clients here at this point,

17   ladies and gentlemen; I don't think we're going to be doing

18   anything substantive on the record out of --

19             MR. COLE:  Your Honor, do you want her and her

20   client?

21             THE COURT:  Yes, shortly.  Just have them wait

22   outside if you could.

23             MR. COLE:  Have her wait outside?

24             THE COURT:  Yeah, just for a moment.  Thank you,

25   Mr. Cole.  Okay.  So we have -- tomorrow we have

 1  deposition -- we have more deposition --

 2          MR. DRATEL:  We'll start with a live witness, your

 3  Honor, and then we'll --

 4          THE COURT:  A live witness?

 5          MR. DRATEL:  Yes.

 6          THE COURT:  Okay.  I assume that I don't need --

 7  there's no screening of the witness, I don't need to address

 8  any issues.

 9          MR. DRATEL:  I don't think so.  It's a fact

10  witness, your Honor.

11          THE COURT:  A fact witness, so you have Mister --

12  you have this live witness coming in and then --

13          MR. DRATEL:  And then the Sheikalow deposition.  I

14  have our edits or agreed --

15          THE COURT:  Okay.  Good.

16          MR. DRATEL:  -- to give to the government here.

17          THE COURT:  Good.  And what other evidence are you

18  anticipating at this point?

19          MR. DRATEL:  Oh, yes.  We have that CIPA Section 5,

20  which I think we've resolved, and that should be ready by the

21  morning.

22          THE COURT:  Very good.

23          MR. DRATEL:  And two calls from Bashir.

24          THE COURT:  That's it?  So by your estimate we

25  should finish with the evidence tomorrow, as you predicted?

1            MR. DRATEL:  I think so.  I think so.  I don't know

2    how much cross they'll have of Mr. Guled, but -- two

3    different Guleds; there's Abdi Salam Guled and Hassan Guled,

4    not related.  Hassan Guled is the deposition.

5            THE COURT:  Right.

6            MR. DRATEL:  And I don't know how much

7    cross-examination they'll have.  I think my direct -- I'm not

8    sure, I'm still working on it -- but probably at least an

9    hour, hopefully not much more than that, but I don't know.

10           THE COURT:  And the deposition testimony is --

11           MR. DRATEL:  Two and change.

12           THE COURT:  Even with the edits?

13           MR. DRATEL:  Probably.

14           THE COURT:  Okay.

15           MR. DRATEL:  It's a guess.

16           THE COURT:  Well, sounds like a pretty full day.

17           MR. DRATEL:  That's -- yeah, that's why I always

18   said either Wednesday or early Thursday.

19           THE COURT:  Okay.  All right.  Then why don't we

20   call it a day for all of you.  I know Mr. Ghappour is going

21   to wait around, and if there's nothing else I need to

22   address, I would -- it would be appreciated if you could

23   start working on jury instructions, getting to the

24   substantive instructions, okay?  Mr. Cole, anything further?

25           MR. COLE:  No, so we will -- okay, we'll work with

```
 1    them again this evening on jury instructions, and when do we
 2    want -- when are you -- do you have thoughts on when we'll be
 3    seeing you about jury instructions or when that will come to
 4    a head?
 5             THE COURT:  Well, from what I'm hearing, that would
 6    be Thursday --
 7             MR. COLE:  Okay.
 8             THE COURT:  -- because we're going to be tied up
 9    with evidence all day tomorrow, sounds like, either very
10    close to all day tomorrow or into Thursday.  So I would
11    think -- I would think Thursday morning.  Tell me what your
12    concerns are.  Maybe I can help.
13             MR. COLE:  No, no, no, I don't have any concerns
14    about it.  I think that's as soon as we can start working on
15    that with you, your Honor.  I think that's right.  I don't
16    have any concerns about that.  I was wondering what we were
17    going to do the rest of Thursday, if we could --
18             THE COURT:  Well, there are a couple of
19    possibilities.  I don't know if there will be a rebuttal case
20    that you're contemplating.  If you are, then that could
21    follow on Thursday.  If it looks like -- well, we would be
22    bringing the jury back Thursday morning to complete any
23    evidence that could not be completed tomorrow.  It may be
24    that we'd let the jury go early on Thursday and roll up our
25    sleeves on jury instructions, which means we'd come back on
```

1    Tuesday.

2              MR. COLE:  Okay.

3              THE COURT:  So that's about the best I can predict

4    given the estimates you're giving me.  Anything further we

5    need to cover now?

6              MR. COLE:  Do you need any of us for this issue

7    with Mr. Ghappour?

8              THE COURT:  No, no.  The way to do that -- the way

9    to do that, I need to see him in an in-camera setting.

10             MR. COLE:  Okay.

11             THE COURT:  I need to inquire -- Mr. Ghappour has

12   been kind enough, as I've said earlier, to provide the Court

13   with the proposed examination, and I need to establish on the

14   record that in fact there's an invocation.  I'll see if it's

15   an invocation across the board or if it's something less than

16   that.  And if it's an invocation across the board pursuant to

17   my inquiry, then if I make certain findings, I'll seal that

18   record and it will be preserved, obviously; if there's no

19   invocation or if there's another option, then I will explore

20   that, and I'll certainly advise you.  And it's my intention

21   to issue some kind of a written order on this, assuming that

22   there's an invocation.  I think the preliminary indication

23   from Ms. Franklin through Mr. Ghappour to all of us was that

24   there was going -- he was going to invoke across the board.

25   All right.

1            The only -- well, let me think about this.  The

2    only other thing you can do -- and you might do this in the

3    form of a written submission, Mr. Cole; I'm not asking for

4    any magnum opus here -- but you could put in writing your

5    prosecution against the owner of Shidaal -- I know he wasn't

6    called as a witness in this case, you have no intention of

7    calling him as a witness -- but basically give me a status

8    report on the government's prosecution of Shidaal Express,

9    whether it's still an open case or not.  And you've gotten a

10   copy -- you've gotten a copy of the proposed examination from

11   the defense and how that would impact, if any, decisions on

12   the part of the government.  So at least there will be some

13   record of the government's position vis-a-vis this

14   individual.

15            MR. COLE:  The person you were inquiring about is a

16   different individual.

17            THE COURT:  Yes.

18            MR. COLE:  In other words, the -- you were asking

19   us to state something about the status of the prosecution of

20   Mohamud Ahmed I believe, who's not the individual represented

21   by Ms. Franklin.

22            THE COURT:  I know that.

23            MR. COLE:  Okay.  So all you want is a status of

24   the other individual; that's what you want?

25            THE COURT:  The status of the government's

1  prosecution against --

2          MR. COLE:  This other person.

3          THE COURT:  -- Shidaal, the other person -- wasn't

4  he the owner of Shidaal?

5          MR. COLE:  Yes.

6          THE COURT:  Okay.  -- and whether that case is open

7  or not, under what circumstances it could be reopened, I

8  think that will be helpful.  You can put that in the form of

9  a -- just a straightforward declaration I would think.

10          MR. COLE:  But not addressing -- I would think not

11  in a public format addressing --

12          THE COURT:  No.

13          MR. COLE:  -- this person's status, right?

14          THE COURT:  No.

15          MR. COLE:  Okay.  I just wanted to confirm that.

16          THE COURT:  And if you'd like, you can submit that

17  under seal --

18          MR. COLE:  Okay.

19          THE COURT:  -- because I'll be making findings, and

20  it may be that I'll issue an order, one order, which would be

21  unsealed referring to a sealed order.  So it's got to start

22  somewhere; we'll start with this gentleman coming in.

23          MR. COLE:  Thank you, your Honor.

24          THE COURT:  Okay.  And I'll look forward to your

25  submission when you get a chance, Mr. Cole.

```
 1              MR. COLE:  Okay.

 2              THE COURT:  Okay.  I'm going to need the courtroom,

 3    so I need everyone to clear with the exception of Mr.

 4    Ghappour, who will remain.  Mr. Ghappour, if you can just

 5    remain outside -- well, initially here until I need to go in

 6    camera with Ms. Franklin and her client, okay?

 7              MR. GHAPPOUR:  I understand --

 8              THE COURT:  Did you have a question?  Come on

 9    forward.

10         (Following is a sidebar conference.)

11              MR. GHAPPOUR:  So I should be outside initially,

12    then come back?  I've never done this before.

13              THE COURT:  I know.  Initially why don't you remain

14    here.  I just need to inquire as to the status through Ms.

15    Franklin --

16              MR. GHAPPOUR:  I understand.

17              THE COURT:  -- of what her client -- obviously her

18    client's going to follow her advice; there's no indication to

19    conclude otherwise -- but then I need to inquire a little bit

20    further, and I need to do that in an in-camera setting.  And

21    if you'd just, you know, hang back so that I can get you back

22    in, I can give you a -- the overall status where we are on

23    that, and that would be about it.  And then I would issue an

24    order at some point, two orders, as I indicated previously.

25    But I need to get a few things on the record relative to
```

1    what's going to happen with this gentleman.

2              MR. GHAPPOUR:  I understand.

3              THE COURT:  Okay.

4              MR. GHAPPOUR:  One quick question.  So anything on

5    my end with respect to the validity of the invocation, the

6    waiver based on past interactions with the FBI, interviews,

7    statements given and lack of prosecution is not something --

8    is that something that your Honor would expect of me today

9    or --

10             THE COURT:  No, I wouldn't expect that of you

11   today.

12             MR. GHAPPOUR:  I'm prepared.

13             THE COURT:  Yeah.  Well, that's the second part, as

14   you know, if we get that far.  And if you want to put

15   something on the record, you can put something on the record

16   perhaps if you feel like you're ready to go.  I don't know

17   what kind of a statement you will make, but I may have some

18   questions for you too.  That's pretty much it.  We'll need to

19   play it by ear and see how things evolve.  Okay?

20             MR. GHAPPOUR:  Wonderful.

21             THE COURT:  Okay.  Thanks.

22        (Sidebar conference concludes.)

23             THE COURT:  We are on the record here, and we have

24   Mr. Ghappour present.  No one else is present in the

25   courtroom.  Mr. Ghappour, may I prevail upon you to invite

1    Ms. Franklin and her client into the courtroom?

2              MR. GHAPPOUR:  Yes, your Honor.

3              THE COURT:  Thank you.  Ms. Franklin --

4              MS. FRANKLIN:  Good afternoon, your Honor.

5              THE COURT:  -- it is so good to see you.

6              MR. FRANKLIN:  Thank you.  So good to be here.

7    Good to be seen these days.

8              THE COURT:  Okay.  Would you introduce me, please,

9    to your client.

10             MR. FRANKLIN:  Yes, your Honor.  Before the Court

11   is Mr. Hussen.  How do you spell your first and last name?

12             MR. HUSSEN:  A-b-d-i  A-z-i-z.

13             THE COURT:  Okay.  We have before us Abdi Aziz

14   Hussen.  First name is spelled A-b-d-i  A-z-i-z, last name

15   Hussen, H-u-s-s-e-i-n.  Is that a correct spelling, sir?

16             MR. HUSSEN:  It's e-n.

17             THE COURT:  Oh, there's no "I"?

18             MR. HUSSEN:  There's no "I."

19             THE COURT:  Okay.  So it should be H-u-s-s-e-n?

20             MR. HUSSEN:  Correct.

21             THE COURT:  Okay.  Thank you, sir.  Ms. Franklin,

22   let me explain exactly where we are in this particular matter

23   involving your client.  I assume you're generally aware of

24   this case, the charges in this case against the four

25   defendants and the relationship of the Shidaal Express in

1     this case, specifically Shidaal Express.  There's evidence

2     that Shidaal Express was the entity through which monies were

3     transfered from certain individuals in this case to Somalia

4     via the hawala structure.  You're aware of all of that I

5     assume.

6              MS. FRANKLIN:  Yes, your Honor.

7              THE COURT:  Okay.  The reason apparently Mr.

8     Ghappour, who represents one of the defendants in this case,

9     defendant Issa Doreh, who is listed as the third defendant,

10    you know, the reason we're here is Mr. Ghappour has

11    subpoenaed your client apparently to testify as a witness in

12    this matter.  And he has been kind enough to prepare for the

13    Court a Notice of Intention to Examine Witness.  He did that

14    after I asked Mr. Ghappour to prepare this document so that I

15    would have a little bit of a roadmap as to the types of

16    questions, if your client were to be called to the stand and

17    agreed to testify, would be asked of your client.  Have you

18    seen this Notice of Intention to Examine Witness?

19             MR. FRANKLIN:  No, your Honor.

20             THE COURT:  Okay.  I'm going to -- this is the way

21    I'd like to proceed at this point.  For the record I'm going

22    to read in the questions that Mr. Ghappour for himself and

23    others -- not just his own client but I'm sure for the

24    co-defendants as well -- would want to ask your client Mr.

25    Hussen, I want both you and Mr. Hussen to listen very

1    carefully, and then I'm going to ask you a couple of
2    questions, Ms. Franklin.  All right?
3              First of all, these are the questions that Mr.
4    Ghappour has proffered.  I would state that several of these
5    questions, particularly at the end, are objectionable because
6    they run afoul of particular rules of evidence, but here we
7    go.
8              Mr. Ghappour would want to question Mr. Hussen's
9    dealings with Mr. Moalin, who is the first defendant in this
10   case, specifically A, whether Mr. Hussen transfered money for
11   Mr. Moalin about once per week; B, whether Mr. Hussen was in
12   contact with Mr. Moalin on a regular basis regarding money
13   transactions from the Shidaal Express; C, whether Mr. Hussen
14   conducted the indictment transactions for Mr. Moalin; D,
15   whether he understood references to "the issue we all know
16   about," to mean "drought relief" and/or "those men" to mean
17   "people that were displaced by the fighting"; E, whether he
18   suggested that Mr. Moalin break his transactions into small
19   amounts and use a fake sender name; and F, whether this was a
20   common practice for all hawalas in the San Diego area.
21             The next group of questions Mr. Ghappour would --
22   has proffered and would ask your client would be as follows:
23   A, whether your client learned that defendant Doreh was
24   sending money to Somalia to support members of the Hawiye
25   tribe, who had been displaced by the ongoing war; whether Mr.

1  Doreh would typically not understand things said to him; C,

2  whether during the height of the Ethiopian occupation of

3  Somalia defendants Issa Doreh and Mohamad Mohamad Mohamud

4  approached your client about sending money to "Yatin" in

5  Somalia; and D, whether Messrs. Doreh and Mohamud used the

6  word "Yatin" to mean those affected by the war in Somalia and

7  those displaced or in need.

8          The third area that Mr. Ghappour has identified in

9  his notice would relate to policy for money transfers at the

10 Shidaal Express, and specifically he would ask the following

11 questions:  A, whether entry of transfers was delayed and/or

12 omitted entirely by your client; B, whether anyone other than

13 your client and Shidaal owner Mohamud Abdi Ahmed had the

14 ability to discount and/or waive transfer fees; C, whether it

15 was Amal Express policy to discount and/or waive transfer

16 fees for charitable donations; D, who worked at the Shidaal

17 Express; E, which employees could log into the Amal Express

18 website to transmit remittances; F, whether all transactions

19 at the Shidaal Express required showing of photo ID; and G,

20 what process was used to transmit and/or log remittances.

21         The fourth area Mr. Ghappour has proffered would

22 relate to instruction and training at the Shidaal, and he

23 specifically would ask the questions as follows:  A, whether

24 Donna Locsin, L-o-c-s-i-n, of Dollar American Exchange, also

25 known as DAX, D-A-X, provided your client with training on

1   money laundering prevention, OFAC, O-F-A-C, regulations

2   and/or FTO designations, foreign terrorist designations; B,

3   whether DAX provided Mr. Hussen, your client, with lists of

4   individuals who were not allowed to transfer money; and C,

5   whether your client or anyone at the Shidaal trained Mr.

6   Doreh with respect to money laundering, OFAC lists, and/or

7   FTO designations.

8           And the last area that Mr. Ghappour identified for

9   questions regards the custom of the Somali community with

10  respect to remittances, and specifically he would wish to ask

11  A, whether your client felt that Somali Americans were

12  generally paranoid about the United States with respect to

13  the transfer of money; and B, whether many Somalis in San

14  Diego would generally divide large remittance transactions

15  into small amounts and/or use fake names and phone numbers.

16  That concludes the Notice of Intention to Examine the

17  Witness.

18          If you have these questions or the subject areas of

19  the proposed examination in mind, I could -- I would be happy

20  to ask you a few questions at this point with Mr. Ghappour

21  present.  If you would like to see the notice itself before I

22  ask you those questions and confer with your client, I would

23  be happy to show you my copy of the notice.

24          MR. FRANKLIN:  No, that's fine, your Honor.  We're

25  prepared.

1            THE COURT:  You're prepared?  Okay.

2            MR. FRANKLIN:  Yes.

3            THE COURT:  Well, first of all, let me ask you

4    this, Ms. Franklin.  Do you have reason to believe that your

5    client is going to follow any advice that you would give him

6    with respect to testifying in this matter?

7            MS. FRANKLIN:  Yes, your Honor.

8            THE COURT:  Is it your understanding that your

9    client would invoke his Fifth Amendment privilege against

10   self-incrimination with respect to any or all of these

11   questions?

12           MR. FRANKLIN:  Yes, your Honor.

13           THE COURT:  With respect to any or all?

14           MR. FRANKLIN:  With respect to all, your Honor.

15           THE COURT:  Is it your recommendation -- would it

16   be your recommendation to your client to answer any question

17   other than his name if called to the witness stand?

18           MR. FRANKLIN:  That would be my advice is for him

19   not to answer any questions other than his name, perhaps age,

20   date of birth, something of that nature.

21           THE COURT:  Okay.  And you've already conveyed this

22   to your client; is that correct?

23           MR. FRANKLIN:  Yes, your Honor.

24           THE COURT:  Okay.  I wanted to ask your client some

25   questions at this point, and this part of the proceedings I

1  would -- I would seal -- I mean not up to this point, but

2  following Mr. Ghappour's departure from the courtroom

3  momentarily and temporarily, I would like to inquire of your

4  client and verify what you have told me and ask any other

5  appropriate question I need to ask at this point.  Okay.

6              MR. FRANKLIN:  Thank you.

7              THE COURT:  Mr. Ghappour, may I ask you to wait

8  outside?

9              MR. GHAPPOUR:  Absolutely.

10             THE COURT:  And we will be with you shortly.

11             MR. GHAPPOUR:  Thank you, your Honor.

12             THE COURT:  All right.

13        (Mr. Ghappour left the courtroom.)

14        (Sealed proceedings omitted from this transcript, page

15  1649, line 15 through page 1659, line 2.)

16  //////////

17  //////////

18  //////////

19  //////////

20  //////////

21  //////////

22  //////////

23  //////////

24  //////////

25  (Pages 1649 through 1658 encompassed on this page.)

1   //////////

2   //////////

3       (Ms. Franklin and Mr. Hussen left the courtroom; Mr.

4   Ghappour entered the courtroom.)

5           THE COURT:  Okay.  Thank you, Mr. Ghappour, for

6   returning.

7           MR. GHAPPOUR:  Yes, your Honor.

8           THE COURT:  I've concluded that in-camera

9   proceeding with Mr. Hussen and his attorney, Ms. Franklin.  I

10  don't know what you have in mind at this particular point in

11  time.  It is my intention to issue an order ultimately as I

12  indicated, at least one order in this matter and perhaps a

13  sealed order as well.  If there's any further statement or

14  argument you'd like to make, anything you'd like me to

15  consider further in addition to your notice of intention to

16  examine witness, please feel free to do so.

17          MR. GHAPPOUR:  Your Honor, just a brief statement.

18          THE COURT:  Sure.  Absolutely.

19          MR. GHAPPOUR:  It is my belief that any invocation

20  of the Fifth with regards to the questions that I proffered

21  would be invalid specifically because these questions were

22  drawn from summary reports of interviews with the

23  authorities, with the FBI in particular, and I believe at

24  least one of these interviews the Assistant U.S. Attorney

25  Cole was present for part of the interview.

1          THE COURT:  So you're referring to interviews

2     between the government and Mr. Hussen?

3          MR. GHAPPOUR:  Yes, your Honor.

4          THE COURT:  Okay.

5          MR. GHAPPOUR:  And so I believe that that would

6     make the invocation invalid because he voluntarily spoke with

7     the authorities back then.  I believe it was voluntary

8     because I don't read otherwise on the 302.  To the extent

9     it's not voluntary -- excuse me -- to the extent it's not

10    invalid, then it would be waived because of the very fact --

11    actually scratch that; I just remembered the law of waiver.

12    So I think that it would be invalid for that reason.

13         THE COURT:  Simply because he made a voluntary

14    statement at some point or may have cooperated in the past,

15    you think that one automatically loses the Fifth Amendment

16    privilege against self-incrimination?

17         MR. GHAPPOUR:  I would need to research that point,

18    but I think the two factors -- the one that as far back as

19    November of 2010, the very same statement has come out from

20    Mr. Abdi Aziz Hussen and there's been no prosecution since,

21    it troubles me, your Honor.  And so I think -- I think that

22    his -- his invocation is invalid because had the government

23    wanted to prosecute him for these statements or for the

24    answers to these questions, they would have already.

25         THE COURT:  So you don't think his invocation is

1    valid because any expectation of prosecution on his part

2    would be unreasonable?

3              MR. GHAPPOUR:  Yes, your Honor.

4              THE COURT:  And that's the basis of your desire to

5    call him at this point, that he could not assert a valid

6    Fifth Amendment claim or privilege?

7              MR. GHAPPOUR:  Yes, your Honor.

8              THE COURT:  Well, I'll consider the argument.  And

9    is there anything else you wish me to consider?

10             MR. GHAPPOUR:  Well, to the extent that -- to the

11   extent he's been offered immunity by the government, to any

12   extent that that may overlap with this investigation, the

13   Shidaal investigation and/or this particular case, that added

14   to the fact that much of his testimony in response to these

15   questions could be directly contradictory to certain

16   testimony that was proffered in the cases -- in the

17   government's case-in-chief, I would like you to take that

18   into consideration as well for defense immunity.

19             THE COURT:  Okay.  In the event that immunity has

20   been offered to him?

21             MR. GHAPPOUR:  Yes, your Honor.  And then

22   finally -- this is something I need to do some research on,

23   but the notion of a -- to the extent that the government has

24   given him immunity, I would have to research the missing

25   witness instruction.

```
 1              THE COURT:  Well, okay.  I don't --
 2              MR. GHAPPOUR:  Far reaching, your Honor.
 3              THE COURT:  I know it's a far-reaching argument
 4    you're making, but I appreciate that.  And it's my
 5    understanding that no immunity has been offered, Mr.
 6    Ghappour; we're not dealing with that kind of a circumstance.
 7    But I'll certainly take your argument into account.  Again, I
 8    appreciate the Notice of Intention to Examine Witness that
 9    you provided earlier.  That gave me a real good template for
10    asking some questions to determine whether or not the
11    assertion of any privilege would be reasonable under the
12    circumstances, and I thank you again for that.
13              MR. GHAPPOUR:  Thank you, your Honor.
14              THE COURT:  Okay.  All right.  We'll close then for
15    today.  And I'll be issuing an order.  I know the government
16    wanted to submit something to me; you'll recall I asked them
17    to give me a short statement of the status of their case
18    vis-a-vis Shidaal, whether it's open, closed, what have you,
19    so they'll be doing that, then I'll issue something.
20              MR. GHAPPOUR:  Thank you, your Honor.
21              THE COURT:  Okay.  Have a good evening, Mr.
22    Ghappour.
23              MR. GHAPPOUR:  You too, your Honor.
24        (There was a break in the proceedings for the evening
25    recess.)
```

1                                    I n d e x

2       Witnesses                                              Page

3       Abukar Dahir (Suryare) Mohamed (Video)                 1596

4       Sheik Abdul Rahman Geedow Qorow (Video)                1597

5       Osman Isse Nuur (video)                                1607

6

7                                  E x h i b i t s

8       Exhibits          Description              For ID    In Evd
        203               WITHDRAWN                1603
9       204               WITHDRAWN                1603
        AN-53-S1          Spreadsheet              1605      1605
10      AN-53-S2          Spreadsheet              1605      1605

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>Certificate of Reporter</u>

I hereby certify that I am a duly appointed, qualified, and acting Official Court Reporter for the United States District Court; that the foregoing is a true and correct transcript of the proceedings had in the mentioned cause on the date or dates listed on the title page of the transcript; and that the format used herein complies with the rules and requirements of the United States Judicial Conference.

Dated January 22, 2014 at San Diego, California.

/s/ Debra M. Henson  (electronic)
Debra M. Henson
Official Court Reporter