1                    United States District Court

2                  Southern District of California

3

4    UNITED STATES OF AMERICA,        )
                                      )
5                      Plaintiff,     )
                                      )
6        vs.                          ) Case No. 10-CR-4246 JM
                                      )
7    BASAALY SAEED MOALIN,            ) Friday, December 3, 2010
     MOHAMAD MOHAMAD MOHAMUD,         ) Motions/Status Hearing
8    ISSA DOREH,                      )
                                      )
9                      Defendants.    )
     _____)

10

11              Before the Honorable Jeffrey T. Miller
                      United States District Judge

12

13

14

15

16

17

18

19

20   Official Interpreter:    Ahmedei M. Farah, CCI

21   Official Court Reporter: Debra M. Henson, CSR, RPR
                              U.S. Courthouse
22                            333 W. Broadway, Suite 420
                              San Diego, CA  92101
23                            (619) 238-4598

24

25            Record produced by stenographic reporter

1   Appearances

2   For the Government:        Laura E. Duffy
                               UNITED STATES ATTORNEY
3                              William P. Cole
                               Caroline P. Han
4                              ASSISTANT U.S. ATTORNEYS
                               880 Front Street, Suite 6293
5                              San Diego, CA  92101

6   For the Defendants:
    (Mr. Moalin)               Marc B. Geller, Esq.
7                              LAW OFFICES OF MARC B. GELLER
                               1010 Second Avenue, Suite 1820
8                              San Diego, CA  92101

9   (Mr. M. Mohamud)           Mahir T. Sherif, Esq.
                               LAW OFFICES OF MAHIR T. SHERIF
10                             3376 30th Street
                               San Diego, CA  92104
11
    (Mr. Doreh)                Kenneth J. Troiano, Esq.
12                             LAW OFFICE OF KENNETH J. TROIANO
                               P.O. Box 33536
13                             San Diego, CA  92163

14

15

16

17

18

19

20

21

22

23

24

25

1          San Diego, California - Friday, December 3, 2010

2          (Defendants Mr. Moalin and Mr. Mohamud are being

3    assisted by a Somali interpreter.)

4          THE CLERK:  Calling matter 17 on calendar,

5    10-CR-4246, for a motion hearing/trial setting.

6          MR. COLE:  Good morning, your Honor.  William Cole

7    and Caroline Han for the United States.

8          MR. GELLER:  Good morning, your Honor.  Marc Geller

9    appearing on behalf of Mr. Basaaly Moalin, who's personally

10   present before the Court in custody.

11         THE COURT:  Okay.

12         MR. SHERIF:  Good morning, your Honor.  Mahir

13   Sherif appearing on behalf of Mr. Mohamad Mohamad Mohamud.

14   He's in custody also, your Honor.

15         THE COURT:  Thank you.

16         MR. TROIANO:  Good morning again, your Honor.

17   Kenneth Troiano on behalf of Issa Doreh.  He's also present

18   in custody.

19         THE COURT:  Thank you.  Okay.  This is the initial

20   appearance before me.  Counsel, I understand we are utilizing

21   the services of an interpreter.  May I have the identity of

22   the interpreter and a little information about this

23   gentleman?

24         THE INTERPRETER:  Your Honor, my name is Ahmedei

25   Farah.

1          THE COURT:  Welcome, Mr. Farah.

2          THE INTERPRETER:  First name is A-h-m-e-d-e-i, last

3   name is F-a-r-a-h.

4          THE COURT:  Thank you.  And the language -- first

5   of all, who is requiring the services of an interpreter?

6          MR. SHERIF:  My client, your Honor, Mr. Mohamad

7   Mohamad Mohamud.

8          MR. GELLER:  And so is Mr. Moalin, your Honor.

9          THE COURT:  And defendant Doreh?

10         MR. TROIANO:  He is not, your Honor.

11         THE COURT:  And the language being interpreted,

12   please?

13         MR. GELLER:  It should be Somalian, your Honor.

14         THE COURT:  All right.

15         MR. SHERIF:  Your Honor, for the record, my client

16   does understand a lot of English; however, this forum

17   requires the sub interpretation.

18         THE COURT:  All right.  Thank you.

19         MR. GELLER:  The same is true of Mr. Moalin, but I

20   want to say this basically for Mr. Moalin's convenience:  If

21   you find that it's easier to listen in English and you find

22   that it's difficult because you're hearing both Somalian and

23   English, you're welcome to take off the headsets and let the

24   Court know that you're not using the headset anymore and

25   you're listening in English.  Do you understand?

1          DEFENDANT MOALIN:  Yes, I understand.  I will.

2          THE COURT:  All right.  Mr. Moalin, do you

3    understand that, sir, that if at any time you'd like to

4    proceed in English without the services of the Somalian

5    interpreter, just let us know; and as counsel has indicated,

6    you can merely take off your headset and somebody will make a

7    note of that.  Mr. Mohamud -- which gentleman is Mr. Mohamud?

8          DEFENDANT MOHAMUD:  (In English) Yes, sir.  Yes, I

9    understand.

10          THE COURT:  All right.  I thought you were

11    Mr. Moalin.  Who's Mr. Moalin?

12          DEFENDANT MOALIN:  (In English) Me.

13          THE COURT:  All right.  Mr. Moalin, did you

14    understand what I said?  Any time you wish to proceed in

15    English or you feel you don't need the services of the

16    interpreter, you may just take off your headset and we'll

17    just assume you're proceeding in English at that time.  Do

18    you understand any English, sir?

19          DEFENDANT MOALIN:  (In English)  I understand a

20    little bit.

21          THE COURT:  A little bit, but obviously your native

22    tongue is Somali?

23          DEFENDANT MOALIN:  (In English)  Yes, my language.

24          THE COURT:  All right.  Fine.  And thank you,

25    Mr. Moalin.  Okay.  This is the initial appearance before me.

1   And we do have motions on file.  May I inquire as to the

2   status of the case with respect to discovery in particular?

3          MR. GELLER:  Well, your Honor, I'm going to defer

4   to Mr. Cole.  He indicated to me that -- at this point we've

5   received nothing.  I'll point this out for the record.  We've

6   received nothing other than the affidavit underlying the

7   search warrant.  And so I filed on behalf of Mr. Moalin a

8   discovery motion, and in speaking with Mr. Cole this morning

9   and actually over the course of the week, I understand he's

10  going to be disseminating a great deal of discovery, and I'm

11  going to let him address that because we would like to enter

12  into a stipulation to ask the Court to declare this matter

13  complex, and after that I want to address an ex parte

14  application for additional funds for investigation.

15         THE COURT:  Well, let's take one thing at a time,

16  Mr. Geller.  I would like to know what the government

17  proposes to provide to the defense so that I can make a note

18  of that, and we can monitor that fairly closely.  Mr. Cole?

19         MR. COLE:  Yes, your Honor.  So far what we've

20  provided to the defense is, as he mentioned, the search

21  affidavit.  We've provided their postarrest statements; to

22  the extent they made any, those have been provided to the

23  defense.  We've also given access to Mr. Moalin to see items

24  seized from him in the search.  What we are still -- the bulk

25  of discovery, however, the large bulk of discovery is ready

1    to turn over next week.

2          THE COURT:  What does it consist of, Mr. Cole?

3          MR. COLE:  It consists of an audio disk of

4    approximately 1200 intercepts, audio intercepts, and it

5    consists of verbatim translations of a subset of those audio

6    disks of about 120 some-odd -- about 120 some-odd calls in

7    which all or a part of those calls have been translated into

8    verbatim translations.

9          We anticipate there will be -- after that large

10   discovery of the 1200-odd audio calls and the 120-odd

11   verbatims, we anticipate over the course of the next several

12   months a much smaller trickle -- we're talking about 10 or 20

13   additional calls -- as we continue to turn over discovery.

14   Just so your Honor is aware --

15         THE COURT:  Are all 1200 conversations on one disk,

16   Mr. Cole?

17         MR. COLE:  Yes, they're all -- wait, I should not

18   say that for sure.  They're on DVDs; it's one or two -- I

19   don't know yet if it's one or two, but they will be produced.

20   That's part of what the delay has been.  We have wanted to

21   not do this piecemeal as much as possible; we wanted to try

22   to get them all in one production.  The reason we can't get

23   them entirely in one production is our discovery obligations

24   as we continue to go on may require some additional trickle

25   of audio calls to comply with discovery obligations.  Also

1   there is -- so your Honor is aware, these calls I'm talking
2   about now came from an intercept on Mr. Moalin's cell phone.
3   There is also going to be discovery of a much smaller
4   number -- I mean about 20 or 30 or 40 intercepts -- from an
5   individual who is in St. Louis, and so that will be a
6   separate production, which we're preparing.  And that will
7   hopefully happen over the course of the next month; within
8   the next month we could have that minor production of the St.
9   Louis coverage provided to the defense as well.
10          That's really the lion's share of discovery.  Once
11   you get beyond that, the discovery world we'll be talking
12   about will be more traditional discovery like 302s or Jencks
13   statements much later on in the proceedings.
14          THE COURT:  Couple of questions for you, Mr. Cole.
15   Are you attempting to -- are the 120 translations of which
16   you made reference the relevant -- the relevant intercepts
17   out of this larger group of 1200?
18          MR. COLE:  Yes.  What we have -- well, we -- I
19   don't know that I would just say -- it depends how you say
20   relevant.  You mean relevant in terms of --
21          THE COURT:  I should say material.
22          MR. COLE:  Yeah.
23          THE COURT:  Just say material.
24          MR. COLE:  Right.  They are -- obviously, in our
25   view, since we've had the trouble of having made

1   translations, they're the most relevant, we believe, most

2   material, we believe.  However, we intend to probably, over

3   the course of time, obtain a little more verbatim translation

4   out of that 1200 calls.  Most of the 1200 calls we don't view

5   as particularly relevant at all, but just to assure that

6   we're being fair with respect to our discovery obligations,

7   we're providing them.  And I think that -- I would be

8   surprised if counsel found more than 200 of the -- or 250 of

9   the calls really to be relevant at all.  But they are the

10  recorded statements of one or more of the clients, and they

11  were pertinent enough that we wanted to turn those over in

12  discovery.

13          THE COURT:  Is there any way you can or are trying

14  to place the 120 material translations you've identified thus

15  far on one DVD or disk?

16          MR. COLE:  Those -- now, we can -- what we can

17  do -- those translations will be actually produced as a

18  subset, the translations themselves.  But if it helps the

19  defense, we can also for them move every audio call for which

20  there is a verbatim translation onto a separate disk; so

21  there would be a disk that matches the verbatim translation

22  so they don't have to hunt and peck through the 1200.  We

23  would be happy to do that if that would help the defense.

24          THE COURT:  Okay.  Anything else with respect to

25  what you're anticipating you will provide to the defense

1   either initially with the -- through the disks or at a later

2   time that you've identified in the form of 302 and Jencks?

3          MR. COLE:  I think this covers really the -- really

4   the discovery.  I mean obviously unexpected things can arise,

5   but what we're expecting now is audio verbatim translations

6   and, you know, later Jencks-type statement material.  That's

7   really -- really what there is at this point, and that would

8   encompass at least 99 percent of the discovery we're aware

9   of.

10         THE COURT:  There's been a suggestion by Mr. Geller

11  that the Court order this case complex under 3161 (h).  What

12  is your position with respect to designation of complexity

13  for this?

14         MR. COLE:  I -- we think that it is because of the

15  Somali language issue primarily.  It's not easy to get Somali

16  translators, and these calls are in Somali, and that's going

17  to be somewhat time-consuming for defense counsel.

18         The other complication will be that if there is any

19  suppression issues -- your Honor, we have done all we could

20  to declassify to the greatest extent we could we think so

21  that we avoid as much as possible CIPA litigation, but we

22  anticipate there will likely be a small amount of CIPA

23  litigation in this case.  And when you combined that with

24  just the time-consuming nature that arises from a Somali

25  language issue, I think that the case is complex in terms of

1   needing more time under the Speedy Trial Act to prepare for

2   trial.

3         THE COURT:  It seems like all parties are in

4   agreement that the case should be declared complex, and so

5   what I would suggest --

6         MR. SHERIF:  Your Honor, on behalf of Mr. Mohamud,

7   I'm not in agreement with that, your Honor.

8         THE COURT:  That's fine.  What I would suggest is

9   for those who are agreeing, put together a stipulation and --

10  you can at least enter into a stipulation at this point

11  setting forth what you believe are the grounds for a

12  declaration of complexity; obviously you're dealing with

13  multiple defendants here, you're dealing with foreign

14  language issues, you're dealing with voluminous discovery,

15  including what you've designated as 1200 intercepts with

16  future intercepts to take place, you're dealing with the

17  prospect of CIPA, and there may be other issues as well.  So

18  if you can at least provide in a stipulation what you feel

19  would justify a declaration of complexity, I'll certainly be

20  happy to take a look at it.  If you have any opposition to

21  that, Mr. Sherif, you may certainly file your opposition to

22  any request for a declaration of complexity.

23        MR. GELLER:  There's another factor I'd like to

24  maybe briefly address with respect to the time consumption of

25  this matter.  Mr. Moalin --

 1          THE COURT:  I'm not there yet.  I'm still talking

 2   about complexity and what I -- what I'd like to see from

 3   counsel, and so --

 4          MR. COLE:  Can I --

 5          THE COURT:  -- before we proceed to another

 6   subject, how long do you think, for those of you who are

 7   requesting a declaration of complexity, it would take to

 8   enter into a stipulation setting forth what you believe is

 9   the basis for that, couple of weeks?

10          MR. GELLER:  At least.  I'm going to be out of the

11   district all next week, and based on the Christmas holidays,

12   my calendar in the next two weeks after that is just a mess.

13   But I'll endeavor -- I think we might be able to do it before

14   Christmas, before the holidays.

15          THE COURT:  Well, all right.  I'll give you until

16   January 7, Friday, January 7, to put together a stipulation

17   which you feel -- buttressed by any points and authorities

18   you feel appropriate -- which you feel would justify

19   declaring this case as complex.  And, Mr. Sherif, if you

20   would file any opposition to that by the same date, at least

21   we have a period of time then we can look to to get that

22   squared away.  Obviously pending that, we have motions on

23   file.  And that would exclude the speedy -- or toll the

24   Speedy Trial clock.

25          MR. SHERIF:  Your Honor, do you want the hearing on

1   that date or --

2          THE COURT:  No, not the hearing, no.  I just want

3   to see the papers by that time.  This is just a briefing

4   schedule.

5          MR. SHERIF:  When would the hearing be if we filed

6   it by --

7          THE COURT:  If we can hear it next time we're

8   together for the next motion hearing or status hearing, any

9   issues that are ready to be addressed, we can address that.

10  So that might come after January 7.

11         MR. SHERIF:  Your Honor, I don't know if we need

12  that much time to decide if this case is complex.  I mean the

13  government has already told you they have 120 tapes that

14  they've already translated.  Nine hundred of the others

15  they've not even translated.  They are thinking that they may

16  be relevant, which means at this time they're really not

17  relevant as far as we're --

18         THE COURT:  Are you willing to take the

19  government's position as to what's material and what's not

20  material, Mr. Sherif?

21         MR. SHERIF:  Well, they're saying --

22         THE COURT:  Are you willing to take -- are you

23  willing to take the representation of the government as to

24  what is material in this case, or would you like to conduct

25  some kind of an inquiry yourself into that question?

1          MR. SHERIF:  It's my indication, your Honor, that

2    the government is going to use the first set of tapes --

3    that's what their indictment is based on, that's where they

4    claiming that the case is all about.  They're saying that in

5    all fairness out of caution we're turning the others over

6    to -- we're going to be listening to them in Somali, your

7    Honor, and there may not be a need to interpret these into

8    English.  Therefore, if their case is based on the ones of

9    the translations that they already have, I think we can get

10   through this case very quickly.

11         THE COURT:  Well, number 1, I would think you would

12   want to make your own determination as to what's material and

13   what's not material.  And by your own statement just now,

14   it's going to take you some period of time to monitor a

15   representative sampling of the additional 1100 intercepts

16   just to see -- and to test whether the government's

17   assessment is right.  I can pretty much guarantee that you're

18   going to go beyond January 7 with respect to that particular

19   process.  So I'll ask you to get your -- any opposition you

20   have on the Court declaring the case as complex to the Court

21   by January 7.

22         MR. SHERIF:  Fair enough.  Thank you, your Honor.

23         THE COURT:  All right.

24         MR. COLE:  Your Honor, I wanted to amend what I

25   told you about discovery because I thought of one other thing

1   to make your Honor aware and the defense aware of.  We've

2   already turned over to them a disk of the transactions from

3   the Shidaal Express; that was the money transfer business

4   that the government alleges the funds were sent through.

5   That was a disk that covers thousands and thousands of

6   transactions.  Of course, only a handful are relevant, again,

7   out of those, but I wanted to let the Court know and the

8   defense know that we do have the underlying -- we have paper

9   receipts.  When you go to the transfer business, they create

10  an electronic database for the transfer, but they also give a

11  paper receipt, and we will -- those are available for

12  inspection by the defense as well.  There's about five or six

13  boxes of paper receipts, the vast majority of which are not

14  relevant, but -- and we could point out to them the ones we'd

15  rely on --

16          THE COURT:  Out of five or six boxes of paper

17  receipts, Mr. Cole -- I assume you and your colleagues have

18  been through this material, perhaps not -- but how many

19  receipts have you identified as material?

20          MR. COLE:  When you look at the transactions in

21  this case, there are two types of receipts the government

22  alleges are relevant; one are the actual -- well, really the

23  receipts are relevant for this reason, to show that there is

24  no receipt for the transactions that we allege were illegal,

25  that the receipts are missing and weren't prepared, which the

 1   government believes is relevant.  So in a sense, the boxes

 2   are all relevant from the standpoint of showing there is no

 3   receipt.

 4          Beyond that, the only receipts in there that the

 5   government views as relevant at this time are showing other

 6   transactions done by these defendants for other legitimate

 7   purposes where there are receipts.  So in other words, it's

 8   more of a showing of a modus operandi, receipts where it's

 9   just for a family member remittance or another remittance, no

10   receipt where it's to support the terrorist organization.

11   That's the government's allegation of course, but for that

12   reason we're making all receipts available to the defense.

13          THE COURT:  Okay.

14          MR. TROIANO:  I'd like to be heard on that issue at

15   some point, your Honor.

16          THE COURT:  Okay.  Mr. Geller, I think we're done

17   with the issue of complexity here, at least for the time

18   being.  You indicated you wanted to discuss a matter --

19          MR. GELLER:  Yes.

20          THE COURT:  -- relevant to time?

21          MR. GELLER:  One of the things that I'm concerned

22   about is that I'm, quite frankly, unaware of where the

23   co-defendants are being housed.  Mr. Moalin is being housed

24   in segregation at CCA --

25          THE COURT:  There's an orderly way to do that, Mr.

1    Geller, and it's not just on the fly and orally.  If you have

2    any concerns about housing or special needs or anything else,

3    I think you need to put that in the form of a request -- I

4    need to see papers on that -- giving the government and

5    perhaps even BOP an opportunity to be heard on that.

6              MR. GELLER:  Well, the only thing I wanted to say

7    is I've spoken with -- or I've attempted to speak with the

8    warden at CCA, but the reason I wanted to address it now is

9    that if, as I understand it from Mr. Cole, we're going to be

10   given CDs that we need to share with our clients and review

11   the discovery and then I went down to CCA and spoke with the

12   warden's staff as to how we would accomplish that -- and we

13   have to bring our own computers in, we have to bring an

14   interpreter in some cases.  Being in segregation causes all

15   kinds of difficulty because the defendant can't look at the

16   computer if there are visual images, it's difficult with

17   respect to sound, it's a close setting, it's between glass,

18   not to mention it takes an extra hour and a half to even get

19   to speak with my client because he's in segregation.  So the

20   reason I'm pointing it out now is with respect to time

21   consumption and complexity, this exacerbates how much time

22   we -- I anticipate it will spend.

23             THE COURT:  Okay.  I appreciate that.  Thank you.

24   Mr. Troiano?

25             MR. TROIANO:  Yes.  If the government believes the

1   absence of certain records at this Shidaal Express show guilt

2   of the defendants, we would want to have access to whatever

3   electronic record or paper record they have showing that

4   transactions did take place for which forms were not

5   prepared, and I didn't hear that addressed by the --

6           THE COURT:  Well, I think you'd be entitled to

7   that, and I'm sure the government would -- if such did exist,

8   they'd provide it to you.

9           MR. COLE:  We've turned it over.  We gave a disk of

10  all the electronic records; it's already been turned over to

11  the defense.

12          MR. TROIANO:  That's demonstrative evidence, your

13  Honor.  That's an Excel spreadsheet prepared by the FBI.  We

14  would want to look at the actual evidence that they relied on

15  in preparing that.

16          MR. COLE:  Your Honor, actually it's not.  It's the

17  Shidaal's -- it is the evidence.  It is not a spreadsheet

18  created by the FBI.  My knowledge is we gave over the

19  download of the data from the hawala business, but we will

20  double check that and make sure the disks contain what we

21  thought it did.

22          THE COURT:  Okay.  All right.  Anything further on

23  discovery?  Mr. Sherif, anything further from you on

24  discovery?

25          MR. SHERIF:  No, your Honor.

1          THE COURT:  Okay.  Mr. Troiano, anything further on

2    discovery?

3          MR. TROIANO:  Not today, your Honor.

4          THE COURT:  Mr. Geller?

5          MR. GELLER:  No, your Honor.

6          THE COURT:  Okay.  Mr. Cole?

7          MR. COLE:  Nothing on discovery, your Honor.

8          THE COURT:  All right.  What other issues can be

9    addressed today, if any?  Mr. Cole?

10          MR. COLE:  Well, just to the extent that your Honor

11   is considering obviously calendaring and the trajectory of

12   this case, we did want to ask your Honor if you could unseal

13   at this time -- we'd like to unseal at this time the --

14   another indictment in 10-CR-4645 assigned to your Honor.

15   This individual in this indictment -- I won't mention his

16   name until your Honor decides whether to grant the

17   unsealing -- but this individual in this indictment is to

18   make an appearance any moment in Judge Adler's courtroom and

19   would constitute essentially a fourth defendant in this case.

20   We'll be seeking to consolidate these two indictments for

21   trial.

22          THE COURT:  Well, is this the named fourth

23   defendant in this case?

24          MR. COLE:  He was not named in this indictment.  He

25   had to be indicted separately for reasons unrelated to the

1    connection, but he is alleged to have engaged in the exact

2    same conspiracy as these three, and it's these same counts,

3    the same conduct and counts.

4                THE COURT:  Has a notice of related case been

5    filed?

6                MR. COLE:  Yes, your Honor.

7                THE COURT:  I haven't seen it.

8                MR. COLE:  I have it here.  I have the -- if your

9    Honor wants to see --

10               THE COURT:  I think I'd like to take a look at it.

11   I have no reason to doubt any of your representations, but

12   could you submit it to me along with just a brief written

13   explanation -- you can seal that as well -- as to why it is

14   in fact a related case and why the indictment should be

15   unsealed?

16               MR. COLE:  Your Honor, as a practical matter, it

17   will be unsealed probably in about 15 or 20 minutes

18   downstairs --

19               THE COURT:  Okay.

20               MR. COLE:  -- when he makes his appearance, so I

21   just wanted your Honor to be aware there's another one out

22   there in case you're thinking of dates.

23               THE COURT:  All right.  Thank you.  Anything else,

24   Mr. Cole?

25               MR. COLE:  No, your Honor.

1              THE COURT:  All right.  Mr. Geller, anything else

2    we can do today?  What I plan on doing is setting obviously a

3    further date as the first of what I anticipate to be a number

4    of dates so that we can continue to monitor the case, make

5    sure the defense is receiving all discovery to which it is

6    entitled --

7              MR. GELLER:  I would only --

8              THE COURT:  -- and to be able to perform its own

9    investigation, being able to secure translations of all that

10   it deems material to the case.  So what are your thoughts

11   with respect to the timing of the next hearing?

12             MR. GELLER:  Well, your Honor, I would ask that the

13   Court set a status hearing and nothing more at this point

14   because until we receive at least part of this voluminous

15   discovery, I think we're in a position where we can't really

16   anticipate what we're going to need to address at the next

17   court hearing.

18             THE COURT:  Mr. Cole?

19             MR. COLE:  Your Honor, this is -- relates to

20   discovery; I should have brought it up.  We have provided all

21   three defense attorneys with a proposed protective order.

22   They only got this this morning, but I know at least two,

23   maybe all, have had a chance to review it.  The protective

24   order is intended -- we are proposing a protective order

25   simply to cover the FISA information and also financial

1   records that have third parties' financial information in it,

2   not all the other general discovery materials.  But the disks

3   that we have ready to turn over, we need to address

4   protective order first.  And it may be stipulated to by all

5   parties, but if not, we will need to present a motion or have

6   the Court resolve that so we can turn these disks over with

7   the audio calls.  But I want to let your Honor know about

8   that issue.

9           THE COURT:  So you're in the process of preparing

10  the order or you've got it --

11          MR. COLE:  I have prepared one, but -- we've

12  prepared one and given it to counsel this morning.  We were

13  hoping to see that it could be a joint motion for the order

14  or at least a stipulated order, and I think we'll have an

15  answer on that score soon, and then we can give it to your

16  Honor.

17          THE COURT:  All right.  You'd need an order before

18  you feel you can provide the discovery that you've been

19  discussing?

20          MR. COLE:  We do feel -- we do, yes.

21          THE COURT:  Okay.

22          MR. GELLER:  With respect to that proposed

23  protective order, I had an opportunity to go over it along

24  with Alan Stevens, who is my investigator in this case, and

25  we don't have any opposition to it.

```
 1              THE COURT:  Okay.  Anyone else wish to be heard on
 2    that?  Mr. Troiano, Mr. Sherif, did you wish to be heard on
 3    that?
 4              MR. SHERIF:  On the issue of timing, your Honor,
 5    the government has added one person just now.  I think it
 6    would be fair to -- these clients are in custody, and as the
 7    Court has seen, I was objecting to declaring the case complex
 8    because I want to move the case along.  From the indictment
 9    it seems that it's very thin, what the government is saying
10    what my client may have said.  My client is a family man, as
11    the Court knows, he's got obligations out there.  Declaring
12    this case complex and adding further defendants could delay
13    this case two, three years out, which is really not in
14    interest -- in the interest of my client.
15              Now, with that said, your Honor, I think it's only
16    fair to ask the government -- because Somali community, your
17    Honor, is a small community, and we've been hearing that the
18    government has been subpoenaing people into the grand jury.
19    I'm not of course asking him about what they're being asked,
20    but that's what going on.  And it appears that the government
21    may be adding more defendants.  If that's the case, this is
22    going to delay this matter.  So that's what I want to bring
23    to the attention of the Court that, you know, there needs to
24    be some sort of like reins on the case as opposed to, you
25    know, adding defendants as we go along.  That's one matter.
```

1    On the other --

2            THE COURT:  Let me comment on that, Mr. Sherif.  I

3    think everyone probably shares your concern; I know I do.  I

4    think this case will be moved as expeditiously as it can be

5    moved.  And obviously it's not a run-of-the-mill case; it's a

6    case with special circumstances in that it deals with a

7    voluminous amount of discovery, very serious charges,

8    multiple defendants, a need for the defense to do quite a

9    thorough investigation.  You're aware of all of this.  But by

10   the same token, even though it will take some time to get the

11   case ready to proceed to trial, if in fact it is going to

12   trial, we'll move it along as expeditiously as we can, and I

13   think you'll see that.

14           MR. SHERIF:  Fair enough, your Honor, but I needed

15   to point -- to bring that to the Court's attention, your

16   Honor.

17           THE COURT:  I appreciate that.

18           MR. SHERIF:  But from the government's own

19   statements to your Honor, they're telling us that, you know,

20   they have all these boxes of discovery that are really --

21   from their own statement really not relevant but they're just

22   producing them to show that receipts were not there.  Well,

23   it could tell us that, but they tell us that really -- there

24   really isn't much sense in me going over irrelevant stuff

25   when the government's already telling me it's irrelevant.

1    It's a waste of court resources, it's a waste of my time.

2    I'm not going to go sit there, look through six boxes of

3    receipts if the government is telling me it's irrelevant

4    really if the government does not really have any intention

5    of introducing any of those material -- of those documents

6    into evidence.

7            Similarly with the tapes.  The government's also

8    telling me that -- I listen to them, but the government's

9    telling me that's not relevant.  What I want to hear is what

10   is the government going to introduce and does that implicate

11   my client in the conspiracy that they allege.  And like I

12   said, from the indictment it's very thin.  That's why I'm

13   objecting to declaring it complex because I really don't see

14   it as complex at this time.  However, the Court and counsel

15   may disagree on the issue -- on that issue, your Honor.  And

16   I will file my response and my objection on that issue on

17   paper.

18           On the issue of the protective order, your Honor, I

19   have seen it.  It is -- they gave it to me this morning.

20   It's very broad, and I would like to put it on paper to what

21   my objection to the protective order is.  And I would note an

22   objection for the record on that -- on that issue too, Judge.

23           THE COURT:  Okay.  Thank you, Mr. Sherif.

24   Mr. Troiano?

25           MR. TROIANO:  I've read the protective order.  I'm

1  prepared to not object to it.  I don't know to what degree it

2  covers anything we've already been provided, so I would just

3  ask if it does or does not cover anything that's been

4  provided already in discovery.

5          MR. COLE:  Your Honor, the only thing that we would

6  ask defense counsel, if there is going to be a protective

7  order in this case, to have covered by the -- that we've

8  turned over -- is the disk of the Shidaal Express transaction

9  records.  Those are financial transaction records that relate

10 to mostly third parties that have nothing to do with this

11 litigation, has their names, their phone numbers in it.  And

12 so that one disk of financial records from Shidaal Express we

13 would ask be on the protective order once entered.  But other

14 than that, we've been holding the material that we want to be

15 subject to the order.

16          THE COURT:  Can you get the protective order to me

17 with -- sometime by next week --

18          MR. COLE:  Absolutely.

19          THE COURT:  -- Mr. Cole?  All right.  It seems to

20 me that you, Mr. Geller and Mr. Troiano, agree as to the form

21 and the content of this protective order.  Mr. Sherif,

22 apparently you have some concerns about it.  How much time

23 would you like to put your concerns in the form of an

24 opposition to the protective order?  How much time would you

25 like?

1           MR. SHERIF:  Ten days, your Honor.

2           THE COURT:  Would you like ten days?  All right.

3           MR. COLE:  Your Honor, one thing that might

4    expedite discovery that I might suggest is we could simply

5    turn discovery over under the protective order as proposed

6    with the understanding that Mr. Sherif wants to litigate an

7    amendment to it.  I just don't want to hold up discovery to

8    these two gentlemen if -- or we could have orders entered as

9    to them, I could give the discovery over to Mr. Geller and

10   Mr. Troiano, and then hold off until we litigate with Mr.

11   Sherif.

12          THE COURT:  Well, that's another possibility.  I

13   know Mr. Sherif is particularly concerned about time, so that

14   may delay Mr. Sherif's receipt of all of this discovery

15   material that you've suggested.  Mr. Sherif, if you feel you

16   need a couple of weeks to take a look at it and form your

17   opposition, I'm certainly happy to give you that.  I would

18   suggest this, that all of the papers with respect to the

19   issue of the protective order be filed and served no later

20   than Friday, December 17.  That gives you the two weeks

21   you're requesting, Mr. Sherif.  It's not a large amount of

22   time, but I don't want you to feel rushed in that.  And you

23   may -- you may, with further discussion with Mr. Cole or your

24   co-counsel, decide that you have no opposition to it, in

25   which event you can certainly advise us in the form of some

1    kind of a filing, and then I'd be happy to sign off on it if

2    it appears to be in order.

3            But if you can have all of that to me by the 17th,

4    then I can either address it without the necessity of a

5    hearing, or we can calendar that for a matter the next time

6    we are together on a status or a motion hearing.

7            MR. TROIANO:  Your Honor, on the -- regarding

8    counsel's response on the Shidaal Express disk, there was a

9    disk that I had trouble reading on my computer, and someone

10   else will probably be assigned to do that.  So I wasn't

11   certain exactly what was on that disk, but it's my

12   understanding that that would not necessarily be covered by

13   the language of the protective order, and I think that as

14   attorneys in this court, we've shown and are held to a

15   standard where we don't disseminate sensitive material, which

16   we get in every single case, and I don't really think that

17   that's covered by the protective order.  I have no intentions

18   of disseminating it to anybody outside the defense team

19   except maybe a computer expert to sort it out.  But I would

20   have to file an objection only on that ground; otherwise, I

21   would have no objection.

22           THE COURT:  Why would you file an objection to

23   that?

24           MR. TROIANO:  Well, if the government -- I don't

25   want to be in violation of the protective order, and if the

1    government thinks that it covers that disk, then I could be.

2         THE COURT:  How so?  If your intention is only to

3    provide it to individuals you're working with, investigators

4    or a forensic computer expert, you'd be entitled to do that

5    in furtherance of the defense of your client.  I don't think

6    you're anticipating disseminating that kind of information

7    beyond your own needs to defend your client.

8         MR. TROIANO:  No, I don't, but as a -- I think it

9    needs to be clarified because other discovery will be given

10   to us, and I don't think that the language of the order

11   should be construed on an ad hoc basis; it should be clear

12   what it applies to.

13        THE COURT:  Okay.  Well, you'll have time to work

14   on that, on the form, the content of the order, what is

15   included, what's not included, and ultimately if there are

16   any issues, we can discuss those issues.  And I'm certainly

17   available anytime on shortened notice to meet with all of you

18   on any of these issues; it doesn't have to be a scheduled or

19   calendared hearing date.  If something comes up where you

20   need to place the matter on calendar in advance of what has

21   been set, then I'd like you to feel free to call chambers so

22   that that can be done.  Okay?  Anything else we can address

23   today or --

24        MR. GELLER:  I'd like, if I could, to submit this

25   ex parte order -- unless the Court wishes me to file it

1    electronically -- for investigation fees.  And the reason for

2    the urgency is that we've pretty well exceeded already the

3    CJA limit for investigation.  Mr. Alan Stevens is in court

4    today, and he can answer any questions the Court might have.

5              THE COURT:  Okay.  Well, if you want to provide a

6    courtesy copy here, you can do that, but I would ask that

7    anything you're going to file be filed under seal, anything

8    related to requests for investigation ultimately be filed

9    under seal, and so there will be a record, court record, of

10   it rather than just providing written requests without them

11   being placed anywhere in the file.

12             MR. GELLER:  I'll do that, for the record, submit

13   to your Honor's CRD a courtesy copy.

14             THE COURT:  Very good.  Just follow it up if you

15   would --

16             MR. GELLER:  I will, your Honor.

17             THE COURT:  -- with a filing.  Mr. Troiano, you as

18   well.  I think I received something from you earlier today.

19   I haven't had an opportunity to look at it.

20             MR. TROIANO:  Right.  It's a similar request.  My

21   understanding from reading the local rules that where it's

22   done ex parte and it's a CJA matter like that, that it should

23   not be done electronically.

24             THE COURT:  Well, it depends on what you have.

25   With it I don't know --

```
 1              MR. TROIANO:  It was a similar --

 2              THE COURT:  Is it a formal motion or just a request

 3    for --

 4              MR. TROIANO:  It's not a formal motion, just a

 5    request for funding.

 6              THE COURT:  Okay.

 7              MR. TROIANO:  So I think that's one of the

 8    exceptions to the electronic filing rule.

 9              MR. GELLER:  I have additional copies if the Court

10    will accept --

11              THE COURT:  That's fine.  Okay.  Anything further

12    today?  Mr. Cole?

13              MR. COLE:  No.  Thank you, your Honor.

14              THE COURT:  Okay.  Mr. Geller, anything further?

15              MR. GELLER:  Just setting another status date.

16              THE COURT:  I understand that.  Mr. Troiano,

17    anything further other than setting a date?

18              MR. TROIANO:  No, your Honor.

19              THE COURT:  Mr. Sherif?

20              MR. SHERIF:  No, your Honor.

21              THE COURT:  Okay.  Well, I think we'll set a date

22    sometime in January, 21st, 28th of January.  Probably the

23    21st would be appropriate.  All of your papers should be in

24    on the issue of whether the Court should declare this as

25    complex.  We can address -- we can address that matter if
```

 1  necessary and any other matters at that time.  It's
 2  approximately six weeks out.  Let's say Friday, January 21 at
 3  1:30.
 4          Your pending motions are continued to that date,
 5  and as a result time is excludable under the Speedy Trial Act
 6  between today and Friday, January 21.  Mr. Geller, did you --
 7          MR. GELLER:  Thank you, your Honor.
 8          THE COURT:  Okay.  Very good.
 9          MR. SHERIF:  Did your Honor say 1:30?
10          THE COURT:  Yes, 1:30, please.  All right.  Thank
11  you, gentlemen.
12      (The proceedings were concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25

                          Certificate of Reporter

I hereby certify that I am a duly appointed, qualified, and

acting Official Court Reporter for the United States District

Court; that the foregoing is a true and correct transcript of

the proceedings had in the mentioned cause on the date or

dates listed on the title page of the transcript; and that

the format used herein complies with the rules and

requirements of the United States Judicial Conference.


Dated February 25, 2014 at San Diego, California.


                              /s/ Debra M. Henson  (electronic)
                              Debra M. Henson
                              Official Court Reporter