UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BASAALY MOALIN,<br><br>　　　　　　　　　　Defendant. | Case No.:  10cr4246 JM<br><br>**ORDER ON AMENDED MOTION FOR COMPASSIONATE RELEASE BASED ON EXTRAORDINARY AND COMPELLING REASONS** |

Pending before the Court is Defendant Basaaly Moalin's Amended Motion for Compassionate Release Under 18 U.S.C. 3582(C)(1)(A). (Doc. No. 514.) Upon careful review of the pleadings submitted and after considering the applicable factors provided, IT IS HEREBY ORDERED that the motion is **denied**.

**I.　Background**

Mr. Moalin was charged with conspiring with three other individuals to send money to Somalia to support al-Shabaab, a designated foreign terrorist organization. Between January and August of 2008 thousands of dollars were sent. On February 22, 2013, Mr. Moalin was convicted of five federal crimes of terrorism: (i) conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339(A)(a); (ii) providing and attempting to provide material support to terrorists in violation of 18 U.S.C. § 2339(A)(a), based on his providing his house in Somalia to Aden Ayrow, then the military leader of al-Shabaab; (iii) conspiracy to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1); (iv) providing and attempting to provide material support to a

foreign terrorist organization in violation of 18 U.S.C. §§ 2339(B)(a)(1) and (2); and (v) conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(2)(A) and (h). On November 18, 2013, Mr. Moalin was sentenced to 216 months imprisonment and 3 years of supervised release for each count to run concurrently. (Doc. No. 392.)

Mr. Moalin is currently incarcerated at Terminal Island FCI. He is set to be released on March 2, 2026. (Doc. No. 521-1 at ¶ 3.)

On January 11, 2021, Mr. Moalin, through counsel, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) citing extraordinary and compelling reasons caused by the outbreak of COVID-19. (*See* Doc. No. 503.[1]) In light of the ongoing appeals in this case, the court ordered Defendant to refile his motion to include a section addressing whether it had jurisdiction to entertain Mr. Moalin's motion. (*See* Doc. No. 508.) On March 1, 2021, Mr. Moalin duly filed his Amended Motion for Compassionate Release Based on Extraordinary and Compelling Reasons. (Doc. No. 514.) The Government filed a Response in Opposition to the Amended Motion on March 22, 2021. (Doc. No. 517.) After being granted an extension, Mr. Moalin filed his Reply on April 5, 2021. (*See* Doc. Nos. 518, 519, 522.)

Following the submission of the reply brief, the Government filed an Unopposed Motion to Set Briefing Schedule (Doc. No. 523) that was granted by the court (Doc. No. 524). The Government filed its Surreply in Opposition on March 3, 2021, and Mr. Moalin filed a Response to the Government's Surreply. (Doc. No. 532.) On June 8, 2021, with the court's permission, the Government filed an additional Supplemental Pleading Correcting and Supplementing the Record. (*See* Doc. Nos. 544, 545, 546, 547, 548.)

## II.     Jurisdictional Issue

"The filing of a notice of appeal is an event of jurisdictional significance," because "it confers jurisdiction on the court of appeals and divests the district court of its control

---

[1] In light of the filing of the amended motion, the original motion is **DENIED AS MOOT**. (Doc. No. 503.)

over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982) (per curiam). The principle of exclusive appellate jurisdiction allows the district court to retain jurisdiction to act to preserve the status quo. *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001). This rule applies in criminal cases. *United States v. Ortega-Lopez,* 988 F.2d 70, 72 (9th Cir. 1993).

On November 26, 2013, Mr. Moalin filed a notice of appeal of final judgment challenging his conviction on a handful of evidentiary grounds and also sought a new trial, (Doc. No. 395). On September 2, 2020, the Ninth Circuit affirmed the convictions of Mr. Moalin and the three other defendants. *United States v. Moalin,* 973 F.3d 977 (9th Cir. 2020).[2] Both defendants and the Government have filed Petitions for Rehearing *en banc* (*see* Doc. No. 507); therefore, the appeal is still pending.

Defense counsel asserts that Mr. Moalin's sentence is not, and has not at any time been, the subject of his appeal. The Government counters that because an appeal from judgment necessarily includes both the conviction and the sentence, this court is relieved of jurisdiction to order a sentence reduction. *See, e.g., United States v. Martin*, 18-CR-834-7 (PAE), 2020 WL 1819961, at *1 (S.D.N.Y. Apr. 10, 2020) (once defendant filed his notice of appeal challenging the court's sentence, "jurisdiction over the questions raised in his § 3582(c) motion transferred to the Second Circuit."). However, the court need not resolve the issue of whether it retains jurisdiction over Mr. Moalin's motion for compassionate release under § 3582(c). Federal Rule of Criminal Procedure 37 provides that if a party moves for relief that a court lacks authority to grant because an appeal is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that

---

[2] The three-judge panel ruled that because the wiretap evidence from Moalin's phone was not fruit of the unlawful metadata collection, its suppression was not warranted. *Moalin*, 973 F.3d at 997. Further, the Ninth Circuit held that the evidentiary rulings challenged by the defendants did not, individually, or cumulatively, impermissibly prejudice the defense. *Id*. at 1003-1006.

the motion raises a substantial issue." Fed. R. Crim. P. 37. Because this court would deny Mr. Moalin's motion if he had not filed an appeal, the court, in the interests of judicial economy, will proceed and consider the merits of the motion. *See, e.g., United States v. Connor*, Criminal Case No. 16-00002, 2021 WL 1257363, at *1, (D. Guam. Mar. 18, 2021) (defendant's appeal divested the court of jurisdiction to order a sentence reduction.); *United States v. Hamlett*, No. 3:18-cr-00024 (VAB), 2021 WL 406440, at * 4 (D. Conn., Feb. 5, 2021) (the question of whether the court lacks jurisdiction is relevant only where the court is inclined to, on the merits, grant defendant's motion.)

### III. The Merits

Generally, a court may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Mr. Moalin seeks modification of his sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat.5194 (Dec. 21, 2018).

#### a. Exhaustion

The First Step Act allows prisoners to bring their own motions for compassionate release after: (1) fully exhausting administrative appeals of the Federal Bureau of Prisons' ("BOP") decision not to file a motion, or (2) "the lapse of 30 days from the receipt ... of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). Thereafter, upon considering the applicable factors set forth in section 3553(a), the court may determine whether "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Initially, Mr. Moalin contended that he has satisfied 18 U.S.C. § 3582(c)(1)(A)(i)'s administrative exhaustion requirement (Doc. No. 514 at 49-50[3]), but in his Reply brief asserted that the exhaustion requirement can and should be waived, (Doc. No. 522 at 7-9). The Government argues that Mr. Moalin has failed to complete the administrative remedy appeal process because he did not submit a Central Office Administrative Remedy Appeal. (Doc. No. 517 at 24-25, Doc. No. 521-1 at ¶ 6.)

Mr. Moalin first submitted a request for compassionate release to the Warden of FCI Terminal Island on May 26, 2020. (Doc. No. 514-1 at 1; Doc No. 521 at 15.) The request was denied on June 3, 2020. (Doc. No. 514-1 at 3; Doc No. 521 at 16.) Mr. Moalin filed a request for administrative remedy on June 22, 2020. (Doc. No. 514-1 at 4.) His request for reconsideration of his compassionate release consideration was denied by the Warden on July 8, 2020. (Doc. No. 514-1 at 5; Doc. No. 521 at 14.) On July 12, 2020, Mr. Moalin filed a Regional Administrative Remedy Appeal. (Doc. No. 514-1 at 6-7; Doc. No. 521 at 18-19.) The Acting Regional Director denied Mr. Moalin's Regional Administrative Remedy Appeal on August 17, 2020. (Doc. No. 521 at 26.) By failing to file a further appeal with the Office of the General Counsel, Mr. Moalin did not exhaust his administrative remedies.

The question, therefore, is whether it would be appropriate to waive § 3582's exhaustion requirements. This case does not provide one of the rare instances where a waiver of the exhaustion requirement is warranted. *See., e.g., United States v. Garcia-Zuniga*, Case No.: 19cr4139 JM, 2020 WL 3403070, at * 1 (S.D. Cal. June 19, 2020) (concluding defendant had "demonstrated a sufficient attempt at exhaustion and the unavailability of any further remedies to exhaust" because defendant was held in GEO although she was committed to BOP custody, there was no BOP warden at GEO to whom

---

[3] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

she could appeal, and yet defendant still attempted to pursue an administrative remedy). Thus, this court sees no reason to depart from the reasoning of the majority of courts in this circuit that have found exhaustion to be mandatory when an inmate is held in BOP custody. *See, e.g. Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1197 (9th Cir. 1998) (citation omitted) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the court."). *See also United States v. Wang*, Case No. 19-cr-01895-BAS-1, 2020 WL 6582685, at * 2 (S.D. Cal. Nov. 10, 2020) (joining the vast majority of courts in this circuit that have found exhaustion of § 3582 mandatory); *United States v. Casanova,* Case No.: 14-CR-0312 L, 2020 WL 5203407, at * 1 (S.D. Cal Sept. 1, 2020) (concluding the court had no authority to consider defendant's motion until the exhaustion criteria of § 3852(c)(1)(A) is met); *United States v. Otero*, Case No.: 17cr879-JAH, 2020 WL 1912216, at * 4 (S.D. Cal. Apr. 20, 2020) ("failure to exhaust administrative remedies is fatal to a compassionate release petition, even in light of the urgency created by COVID-19") ; *United States v. Reid*, Case No. 17- cr-00175-CRB-1, 2020 WL 1904598, at * 3 (N.D. Cal. Apr. 18, 2020) ("The Supreme Court has stated that '[w]here Congress specifically mandates, exhaustion is required.'") (citations omitted); *United States v. Eberhart*, No. 13-cr-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Fuentes*, No. 2:07-CR-0248-11 WBS, 2020 WL 1937398 (E.D. Cal. Apr. 22, 2020); *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020). Mr. Moalin has failed to demonstrate that he has exhausted his administrative remedies. Therefore, the court could, and does, deny Mr. Moalin's request on this ground alone.

### b. Extraordinary and Compelling Reasons

Even if the court were to reach the merits, Mr. Moalin's generalized concerns about (i) the aftereffects he has experienced after contracting COVID-19 while incarcerated at Terminal Island; (ii) the conditions in which he has been incarcerated during the pandemic have been unduly grueling; and (iii) the need for him to care for his aged mother, (*see*

*generally* Doc. No. 514), are insufficient to show an "extraordinary and compelling" reason for release.

Mr. Moalin is eligible for compassionate release only if he can demonstrate "extraordinary and compelling reasons" to justify a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). The Ninth Circuit recently clarified in *United States v. Aruba*, 993 F.3d 797, 802 (9th Cir. 2021) that the United States Sentencing Commission policy statement, section 1b1.13, setting forth several "extraordinary and compelling reasons" standards for early release "is not an 'applicable policy statement[]' for 18 U.S.C. § 3583(c)(1)(A) motions filed by a defendant." Rather, "[t]he Sentencing Commission's statements in U.S.S.G. may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* The commentary to § 1B1.13 lists four circumstances that qualify as "extraordinary and compelling reasons": (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) "Other reasons—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1.

### 1. Defendant's Medical Conditions

First, Mr. Moalin, who is 44 years old, argues that he suffered severe symptoms as a result of contracting COVID-19 in late March 2020. (Doc. No. 514 at 5.) Mr. Moalin claims that he has been classified by BOP at "Care Level II as a result of his continuing symptoms since his infection occurred," (*id.* at 6) and has "other medical conditions that have worsened this year," (*id.*) Further, Mr. Moalin claims he continues to suffer from many of the symptoms he developed in March 2020[4] including joint pain and difficulty

---

[4] Mr. Moalin alleges that his March 2020 symptoms included severe coughing, joint pain, fever, weight loss, loss of appetite, diarrhea, and extreme difficulty breathing. (Doc. No. 514 at 12.)

breathing. Mr. Moalin points to a June 2, 2020, blood panel, (*see* Doc. No. 506 at 7-8[5]), notes a 2018 blood panel, and concludes that, as a result of his Covid-19 infection, his liver function has "diminished significantly." (Doc. No. 514 at 16.) Additionally, Mr. Moalin relies on the same blood panel to claim that his cholesterol, triglyceride, and LDL levels are different following his COVID-19 infection. (*Id.* at 16-17.) Finally, Mr. Moalin claims these conditions add to his pre-existing history of heart problems, including heart valve surgery. (*Id.* at 17.)

The Government counters that: (i) Mr. Moalin has already contracted COVID-19 and suffered no documented ill effects; (ii) he cannot document a medical condition which increases his risk from the virus, and (iii) he is currently incarcerated at a facility with no current inmate cases that fully implements CDC guidelines for correctional facilities. (Doc. No. 517 at 3-11, 14-16, 29-33). Subsequently, the Government argued that Mr. Moalin's vaccination against COVID-19 provided an additional reason for denial of the motion. (Doc. Nos. 546, 548.)

According to the medical records filed under seal, Mr. Moalin tested negative for COVID-19 on April 24, 2020, and May 3, 2020, before testing positive on May 15, 2020. (Doc. No. 514-4 at 3; Doc. No. 521-2 at 2.) On July 22, 2020, Mr. Moalin complained of "multiple joints hurting since getting the coronavirus" but then stated that he was not in pain at the time of his appointment. (Doc. No. 506 at 3.) An inspection of the area of concern, Mr. Moalin's elbow joints, indicated "[n]o deformity swelling or pain at the time of exam." (*Id.*) Mr. Moalin was instructed to begin taking over the counter ibuprofen. (*Id.*) A further inspection of Mr. Moalin's medical records discloses daily vital checks from April 30, 2020, through June 3, 2020, wherein it is reported that Mr. Moalin "denies cough, SOB, muscle pain, fatigue, sore throat, HA, new loss of taste and smell, and/or

---

[5] The court references Doc. No. 506, which is Exhibit 2 to the original motion, as defense counsel inadvertently failed to refile Mr. Moalin's medical records under seal as part of the amended motion.

chills." (Doc. No. 521-2 at 8-11.) Two other entries for the end of November 2020 contain the same notation. (*Id*. at 8.) And while the court does not wish to diminish Mr. Moalin's concerns regarding the changes evidenced in his 2020 blood panel as compared to its 2018 counterpart, not all of the results can necessarily be blamed on COVID-19. The Government notes that in connection with sentencing, it was disclosed by a family member in 2013 that Mr. Moalin had high cholesterol (*see* Doc. No. 317 at ¶ 121) and his medical records illustrate that this issue was resolved (*see* Doc. No. 521-2 at 17). Finally, despite counsel's assertion to the contrary, nothing in the record suggests that Mr. Moalin's ALT and AST test results "compelled [the] BOP to increase Mr. Moalin's designation to Care Level II." (Doc. No. 514); (*see also* Doc. No. 506 – Medical Duty Status Form, dated August 24, 2020, includes the following notations: designation regarding Mr. Moalin "Allowed to wear soft shoes at all times." In the comments section it reads: "Please provide non-composite medical shoes – size 10.5. Please provide right wrist support. CARE LEVEL 2.").

As to Mr. Moalin's heart condition, the Government does not seem to dispute the fact that in 1996 Mr. Moalin's personal medical history includes an ablation to address tachycardia. (Doc. No. 517 at 17.) But Tachycardia is not directly listed under the Heart Conditions and Other Cardiovascular and Cerebrovascular Diseases category maintained by the CDC (listing heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) as heart conditions that make it more likely that an individual will get severely ill from COVID-19).[6] A generous read of the guidelines may, however, place tachycardia within this category because the condition could increase Mr. Moalin's risk of stroke, heart failure, sudden cardiac arrest, and death. But, except a single

---

[6] The CDC maintains a list of underlying medical conditions that may increase a person's risk of severe illness from COVID-19. Revisions were made on May 13, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#MedicalConditionsAdults

entry on August 21, 2020, wherein Defendant stated, "intermittently approx. once a month notic[ing] a flutter. States this was how afib dev[eloped] in past. [W]ould like further cardiac f[ollow]/u[p]," (Doc. No. 521-2 at 15), nothing in the medical records suggests Mr. Moalin has been diagnosed with any heart-related issues.

In sum, the medical records do not support Mr. Moalin's allegations regarding the lingering symptoms of his COVID-19 illness, his diminished liver function, and tachycardia and are unsupported by any doctors' opinions. Absent from his medical records is any indication that he is currently receiving any treatment for these conditions. Furthermore, Mr. Moalin's position fails to take into account that not only was he adequately treated for COVID-19, the prison medical staff at Terminal Island have consistently been able to, and continue to, adequately treat the various medical conditions which are documented. *See*., *e.g., United States v. Ayon-Nunez,* No. 1:16-CR-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); *United States v. Littrell,* No. 3:18-cr-00123-JO, 2020 WL 3889053, at 3-4 (D. Or. July 10, 2020) (denying motion for compassionate relief from 52 year old Terminal Island inmate with diabetes, hypertension, and severe obesity who "was asymptomatic and has now recovered from his bout with COVID-19").

Moreover, given the fact that Mr. Moalin is now fully vaccinated against COVID-19 (*see* Doc. No. 548), there appears to be no significant cause for concern that he will contract the virus a second time. *See United States v. Eberhard,* Case No. 13- cr- 00313- PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement."); *United States v. Mayorquin*, Case No.18-cr1732-BAS, 2020 WL 7427211, at * 3 (S.D. Cal. Dec. 18, 2020) (defendant "has already had the coronavirus once, and although again not completely dispositive, his weight does not appear to have affected his reaction on the first go-around."). Mr. Moalin has not persuaded

the court that his alleged medical conditions qualify as "extraordinary and compelling" reasons for release within the context of 18 U.S.C. § 3582 (c)(1)(A).

## 2. Ongoing Conditions at Terminal Island

Mr. Moalin's motion dedicates significant pages to the conditions inmates faced during the height of the pandemic at Terminal Island, where he is currently housed, and the BOP's inadequate response. (Doc. No. 514 at 12-15, 24-43.) To support his position, Mr. Moalin refers to the death of Terminal Island inmate Adrian Solarzano after being declared "recovered" from COVID-19, as documented in the May 28, 2020, Los Angeles Times article by Richard Winton (*see* Doc. No. 521 at 20-23), cites to the high infection rate at Terminal Island, refers to the disproportionate affect COVID-19 is having on people of color, and provides information on how new variants present an ongoing threat even with the advent of vaccines. (*Id*. at 26-43.) The crux of defense counsel's arguments is that Mr. Moalin should be released because of the conditions he had to endure while incarcerated because Terminal Island was not prepared for the COVID-19 pandemic.

Mr. Moalin's position, however, ignores the fact that this entire nation, not just BOP, was caught unprepared. While Mr. Moalin has had to endure multiple lengthy quarantines and has been deprived of his classes, work assignments and contact with family, he "overlooks the fact that the BOP has implemented various preventive and mitigating measures to protect inmates and staff at its facilities. More importantly, his conclusions fail to take into consideration the existence and increasing availability of COVID-19 vaccines." *United States v. Iribe*, Case No. 00CR1242 JM, 2021 WL 347692, at *4 (S.D. Cal. Feb. 2, 2020). This is best illustrated by the BOP's website which currently shows that there are 19 confirmed active inmate COVID-19 cases, and 5 active staff COVID-19 cases at Terminal Island. See https://www.bop.gov/coronavirus/ (last visited August 4, 2021)[7]. Currently, the BOP has completed inoculations on 184 full-time staff and 448

---

[7] The website also records 10 inmate COVID-19 deaths, 461 inmates recovered COVID-19 cases, and 51 staff recovered COVID-19 cases.

inmates at Terminal Island. *See* https://www.bop.gov/coronavirus/ (last visited August 4, 2021).[8] While the court is aware of the high number of COVID-19 cases at the facility at the beginning of the pandemic, and the fact that an element of risk still remains, this progress should not be ignored. As of the filing of this order, the court is well aware of the concerns of public health officials over the "Delta Variant" of COVID-19. *See, e.g., United States v. Felts,* Case No.: 13cr2296-JAH, 2020 WL 7181087, at *3 (S.D. Cal. Dec. 4, 2020) (recognizing that "FCI Terminal Island was unable to initially control the outbreak of COVID-19" but that infection rate has since dropped); *United States v. Diaz-Diaz,* No. 17CR3505-BAS, 2020 WL 6161215, at *1 (S.D. Cal. Oct. 21, 2020) ("Terminal Island has made great strides in complying with CDC recommendations for correctional facilities, and, as a result, the number of active cases has drastically decreased."). Consequently, the present conditions at Terminal Island, and the measures taken by the BOP to mitigate the risks of COVID-19 transmission in BOP population, weigh against release under 18 U.S.C. § 3582 (c)(1)(A).

### 3. Defendant's Family Circumstances

Mr. Moalin argues that his need to care for his aged mother provides an additional extraordinary and compelling reason that warrants his release. (Doc. No. 514 at 43-44.) He contends that his mother will be 95 years old in January and her health has deteriorated over the past few years, that she has developed elevated cholesterol and arthritis, and is in chronic pain, is unable to stand up or walk. (*Id.* at 44.) Mr. Moalin claims that upon his release he would be his mother's dedicated caregiver "as well as the only immediate family member to occupy that role." (*Id.*) The Government counters that Mr. Moalin has not

---

[8] The total number of inmates at Terminal Island is 706. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (last visited August 4, 2021).

demonstrated that caring for his mother is an extraordinary and compelling circumstance. (Doc. No. 517 at 34-38.)

While the court is sympathetic to the circumstances regarding Mr. Moalin's mother's noted health condition, it does not provide an extraordinary circumstance that warrants his release. First, Mr. Moalin's mother is not currently living in the United States, she is in Mogadishu, Somalia with his wife and children and being cared for by them. (Doc. No. 522 at 17.) *See, e.g.*, *United States v. Jordan,* Case No.: 3:18-cr-04496-GPC, 2020 WL 6504958, at * 4 (S.D. Cal. Nov. 5, 2021) (recognizing the hardship defendant faced while being separated from his very sick wife, but finding his "motion's complete lack of detail as to [he being] the only available caretaker for her causes the Court to conclude he has not presented extraordinary and compelling reasons for release.") Second, the desire among prison inmates to care for an elderly or sick parent does not, by implication, make this reason either extraordinary or compelling. *See, e.g.*, *United States v. Cortez,* 1:18-CR-00060-NONE, 2020 WL 6875432, at * 4 (E.D. Cal. Nov. 23, 2020) (need to care for mother, grandmother and stepfather not extraordinary and compelling circumstance); *United States v Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at * 2 (S.D. Ohio, July 16, 2019) (court agreeing with other courts that mother's deteriorating condition was "not extraordinary because 'many, if not all inmates, have aging and sick parents.'"). Third, Mr. Moalin has failed to make "a robust evidentiary showing that [he] is the only available caregiver." *United States v. Bragg,* No. 12CR3617-CAB, 2021 WL 662269, at *2 (S.D. Cal. Feb. 19, 2021) (internal quotation marks omitted).

### c. Factors under § 3553(a)

The court finds a sentence reduction is inconsistent with the applicable policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3553(a). The introductory portion of this section instructs courts to "impose a sentence sufficient, but not greater than necessary" to punish, deter, protect the public, and rehabilitate the defendant.

The nature and seriousness of Mr. Moalin's offenses should not be minimized. He provided support for, and buttressed the campaign of terror by, Al-Shabaab in Somalia. Al-Shabaab's terrorist tactics included targeted bombings, assassinations, murder, and mayhem. Mr. Moalin maintained direct and continuing contact with Aden Aryow, the infamous and high-ranking terrorist leader of Al-Shabaab and provided his home in Mogadishu as a haven for Al-Shabaab fighters and a location where bombs and other weapons could be hidden.

The seriousness of Mr. Moalin's crimes, therefore, does not support the granting of his motion, nor do relevant sentencing purposes such as general and specific deterrence and protection of the public. The court considered Mr. Moalin's lack of prior criminal history when it imposed the original sentence which was but a fraction of the life sentence requested by the government and recommended by the U.S. Probation Office. Releasing Mr. Moalin at this juncture given his support for foreign terrorists would be unwarranted.

As to Mr. Moalin's desire to be afforded educational or vocational training, medical care, or other correctional treatment, the court is not persuaded that the current situation outweighs the aggravating factors outlined above. While Mr. Moalin is to be commended for his absence of a disciplinary record and participation in educational programs, (*see* Doc. No. 514-4 at 3), he has not participated in vocational training despite being counseled to do so, (*see id.*). Understandably, these activities were put on hold while the whole country, including Terminal Island, were in the throes of the pandemic; however, it is likely that as the threat of COVID-19 diminishes Mr. Moalin will once again be able to continue his earlier pursuits. Moreover, the court is not persuaded the medical conditions provide a reason for release. Mr. Moalin was adequately treated for COVID-19, as demonstrated by his recovery, he has since received the vaccine, and his remaining documented medical conditions appear effectively managed.

Considering the relevant circumstances, the factors supporting a denial of Mr. Moalin's motion outweigh the factors supporting a grant of his motion. Consequently, the court finds that even if Mr. Moalin's circumstances qualified under the extraordinary and

compelling reasons standard, a reduction of his sentence would not be justified under 18 U.S.C. § 3553, and denies his motion on this additional, independent ground.

### d. Motion to Amend The Pre-Sentence Report

In his Reply, Mr. Moalin asks the court to amend the Pre-Sentence Report (PSR) to include his history of chewing "khat." (Doc. No. 522 at 20.) He argues that since khat is a controlled substance in the United States, this correction would make Mr. Moalin eligible for placement in BOP's residential drug and alcohol program.

The Government opposes the request on the grounds that: (i) this court lacks jurisdiction to amend a PSR; (ii) if Mr. Moalin has a history of substance abuse, he lied as to a material fact in his interviews with U.S. Probation in 2012; (iii) there is no evidence that Mr. Moalin's claim of substance abuse is real; and (iv) Mr. Moalin waived his right to change the PSR. (Doc. No. 531 at 2-5.)

The court finds the Government's arguments to be persuasive. This court does not have jurisdiction to amend Mr. Moalin's PSR. *See United States v. Catabran*, 884 F.2d 1288, 1289 (9th Cir. 1989) ("once the district court has imposed sentence, the court lacks jurisdiction under Rule 32 to hear challenges to a presentence report."); *United States v. Lee*, 727 Fed. App'x 335, at 336 (9th Cir. 2018) (the district court lacked authority to correct alleged factual inaccuracies in the PSR after defendant's sentence was imposed.). Additionally, the court notes the absence of any mention of Mr. Moalin's addiction in the comprehensive sentencing memorandum he filed with the court at the time of sentencing (Doc. No. 370), and concludes that by failing to challenge the accuracy of the PSR at his sentencing, Mr. Moalin has waived any right to now claim that it should be amended to address his history of khat chewing. *See, e.g., United States v. Keller,* 902 F.2d 1392, 1393-94 (9th Cir. 1990) (rejecting a § 2255 challenge because "[a]t the time of sentencing, Keller's attorney stated to the court that the report was 'factually accurate and we have no challenge to its content.' Keller did not object when the court asked him directly for his comments. Keller did not otherwise raise the issue prior to filing his § 2255 motion."). Accordingly, Mr. Moalin's motion to the amend the PSR is **denied**.

### IV. Conclusion

For the reasons set forth above, Mr. Moalin's Amended Motion for Compassionate Release Based on Extraordinary and Compelling Reasons is **DENIED**.

IT IS SO ORDERED.

Dated: August 4, 2021

_____
Hon. Jeffrey T. Miller
United States District Judge